ORIGINAL

FILED
DEC - 9 2005
U.S. COURT OF FEDERAL CLAIMS

# United States Court of Federal Claims

| | |
|---|---|
| LINDA ROSENBERG<br>vs.<br>UNITED STATES OF AMERICA | CASE NO.: 05-1272T<br>JUDGE |

## CLASS ACTION COMPLAINT

## I. INTRODUCTION

The Plaintiff, on behalf of herself and all others similarly-situated, files this Class Action Complaint seeking monetary damages or, in the alternative, a refund of federal communication excise taxes against the Defendant United States of America and alleges the following:

1. The Internal Revenue Service ("IRS") is authorized by the United States Congress to collect taxes due and owing to the United States. 26 U.S.C 6201 *et seq.*

2. As a creature of statute, the IRS may not collect taxes that have not been authorized by Congress. Indeed, the IRS is not entitled to create or levy taxes on its own initiative. Moreover, pursuant to the principle of judicial supremacy, the IRS is subject to the orders and findings of the federal judiciary.

3. Since the creation of competition through the break-up of AT&T via the Modified Final Judgment, the IRS has collected a 3% federal communications excise tax on

telecommunications services ("3% Excise Tax") that are explicitly outside the scope of the federal tax statute. 26 U.S.C. 4252.

4. The Telecommunications Act of 1996 created further competition and more services that were taxed by the IRS even though these services fell outside the scope of the 3% Excise Tax.

5. Pursuant to 26 U.S.C. 4252 the 3% Excise Tax is only applicable to telecommunications services that are either billed on the basis of both time and distance or provide unlimited local calls.

6. In eight recent cases, federal courts have held that long distance telephone service which is not billed on both a time and distance basis is not subject to the 3% Excise Tax and that the IRS has unlawfully assessed this excise tax on such service. *Office Max, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004) *aff'd* 2005 WL 2861031 (6th Cir. 2005) ("Office Max"); *Fortis, Inc. v. United States*, 2004 U.S. Dist. Lexis 18686 (S.D.N.Y. 2004) ("Fortis"); *National R.R. Passenger Corp. v. United States*, 338 F. Supp. 2d 22 (D.C. Cir. 2004) ("Amtrak"); *Reese Bros., Inc. v. United States*, 2004 WL 2901579 (W.D. Pa. 2004)("Reese Brothers"); *Honeywell Int'l, Inc. v. United States*, 64 Fed. Cl. 188 (Fed. C1. 2005) ("Honeywell"); *America Online, Inc v. United States*, 64 Fed. C1. 571 (Fed. C1. 2005) ("AOL"); *American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005) ("American Bankers"), and *Hewlett-Packard Co. v. United States*, 2005 WL 1865419 (N.D. Cal. August 5, 2005) ("HP").

7. In each of those cases, either the applicable district court or the court of appeals ruled in the taxpayer's favor finding that under the plain meaning of the statute, charges had to vary in both distance and duration to be taxable.

8. On October 20, 2005 the IRS announced that it will not follow the Courts' decisions, even in those courts' own jurisdictions. Notice 2005-79. The IRS alleges a right to not "acquiesce" in the decisions of any federal court other than the U.S. Supreme Court. Frustrating the possibility of such Supreme Court review, the IRS has refused to appeal the adverse decisions of the United States Courts of Appeal. *Id.*

9. The IRS has ordered telecommunications carriers to continue to assess and collect these taxes without regard to the decisions of the Courts. *Id.*

10. In the same Notice, the IRS announced that it will not even process any requests for refunds so long as any litigation remains. *Id.* The declarations of the IRS are a prospective denial of, and render futile, any requests for refunds. *Id.* Therefore, Plaintiff has not requested such a refund.

11. Because of the IRS' refusal to follow the decisions of the judiciary and its declaration that it will not consider, at this time, any requests for refunds, Plaintiff Linda Rosenberg ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action for damages and, in the alternative, for a refund of federal communications excise taxes unlawfully collected by the Internal Revenue Service under Sections 4251 and 4252 of the Internal Revenue Code. (26 U.S.C. § § 4251 and 4252).

12. The Plaintiff and all others similarly-situated are collectively identified as "Plaintiff and the Class."

13. Plaintiff and the Class request that the Court certify a class of, and render judgment in favor of, Plaintiff and the Class in the amount of unlawfully collected tax, together with interest, fees, costs and any other relief deemed just and proper.

## II. PARTIES

14. Plaintiff is a schoolteacher who resides in La Jolla, California.

15. Plaintiff and the Class are individuals and business entities in the United States which purchased telecommunications services within the last six years which: 1) did not provide unlimited access to a local exchange; and/or 2) were not billed on the basis of time and distance, yet were nonetheless charged the excise tax and paid said tax. Excluded from the class are any employees of the IRS and the Court of Federal Claims.

16. Plaintiff and the Class paid federal excise tax on such telecommunications services and have not received a refund of such taxes.

17. Defendant is the United States of America.

## III. JURISDICTION AND VENUE

18. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1346(a).

19. Venue is proper pursuant to 28 U.S.C. § 1491(a).

## IV. FACTS

### THE FEDERAL COMMUNICATIONS EXCISE TAX

20. The first Federal Communications Excise Tax was enacted in 1898 – just twenty-two years after Alexander Graham Bell's invention of the telephone.

21. In 1965, Congress enacted the Excise Tax Reduction Act repealing most excise taxes and immediately reducing the telephone excise tax from ten percent to three percent. 79 Stat. at 145, Pub.L. No. 89-44.

22. The 1965 Act retained three categories of taxable services: "local telephone service," "toll telephone service" and "teletypewriter exchange service." As to toll telephone service, originally defined in the 1958 legislation as "a telephone or radio

telephone message or conversation for which (1) there is a toll charge, and (2) the charge is paid within the United States," Congress enacted the following definition, unchanged to this day:

> (1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and (B) the charge is paid within the United States, and
>
> (2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

79 Stat. at 146, Pub.L. No. 89-44; 26 U.S.C. § 4252(b).

23. When Congress enacted this legislation (and for many years before and after its passage), the United States had only one provider of long-distance service-AT & T. *See, e.g., Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1333 (11th Cir.2005).

24. Through the 1965 Act, Congress sought to limit the excise tax to the services as AT&T then provided them.

25. AT&T's long distance service at that time charged long distance telephone services on the basis of the elapsed time of each individual call, multiplied by a rate determined through the use of distance mileage bands or for "Wide Area Telephone Service," commonly referred to as WATS, with a periodic charge for unlimited access within a specified area outside of local service.

26. At the time, AT&T's service, which Congress sought to define as taxable toll service, did in fact utilize rates that varied by both elapsed transmission time and distance.

27. In addition, Congress was seeking to modify and narrow the definition and to phase this excise tax out entirely by 1969. *See America Online*, 64 Fed.Cl. at 578 (citing Trans-Lux Corp., 696 F.2d at 966).

28. Congress could have amended the language in 1965 to include broad terms able to adapt to technological changes; instead, Congress specifically defined "toll telephone service" with an eye toward the tax expiring four years later. *See id.*

29. Consequently, the Court of Claims held, forty years later, "if the statutory language no longer fits the infrastructure of the industry, the IRS needs to ask for congressional action to bring the statute in line with today's reality. It cannot create an ambiguity that does not exist or misinterpret the plain meaning of statutory language to bend an old law toward a new direction." *America Online*, 64 Fed.Cl. at 578 (quoting Nat'l R.R., 338 F.Supp.2d at 27-28).

30. Numerous courts have agreed with the Court of Claims and have concluded that the defined scope of the tax is "clear and unambiguous." *See America Online,* 64 Fed.Cl. at 577-78 ("Section 4252(b)(1) unambiguously requires that a toll charge vary in amount according to both the distance and duration of calls."); *Honeywell Int'l, Inc. v. United States*, 64 Fed.Cl. at 199 (finding § 4252(b)(1)'s phrase "distance and elapsed transmission time" unambiguous and noting that "and" can be construed in certain contexts cumulatively, but finding the clearly conjunctive use in § 4252(b)(1) " 'supported by the fact that both distance and time were . . . factors in determining charges for toll telephone service at the time of the 1965 amendments[;] in this context, it is only logical to conclude that when Congress wrote the phrase, . . . it meant for the word "and" to be read conjunctively.' " ) (quoting *Office Max*, 309 F.Supp.2d at 995); *Nat'l R.R. Passenger Corp.*,

338 F.Supp.2d at 27-28 (finding phrase unambiguous; "and" intended conjunctively); *Fortis, Inc.* 2004 WL 2085528, at *6 (same), *Reese Bros., Inc. v. United States*, 2004 WL 2901579, slip op. at *7 (same).

31. "The Court must presume that Congress meant what it said when it tailored the definition of taxable 'toll telephone service' to include distance and time requirements, particularly in light of the overall goal of the Act to reduce and restrict the application of federal excise taxes." *Office Max*, 309 F.Supp.2d at 1000; *see also Honeywell Int'l, Inc.*, 64 Fed.Cl. at 199-200; *America Online*, 64 Fed.Cl. at 578.

32. "While it may have been short-sighted of Congress to define 'toll telephone service' to specifically address the charging scheme used by AT&T in 1965, . . . '[i]t is beyond [the court's] province to rescue Congress from its drafting errors.'" *Honeywell Int'l, Inc.*, 64 Fed. Cl. at 199 (first alteration in original) (*quoting Lamie v. United States Tr.*, 540 U.S. 526, 542, 124 S.Ct. 1023, 1034, 157 L.Ed.2d 1024 (2004) (internal marks and citation omitted)).

**COURTS HAVE UNANIMOUSLY RULED AGAINST THE IRS**

33. Two United States Courts of Appeal have ruled against the IRS. *American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005); *Office Max, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004) *aff'd* 2005 WL 2861031 (6th Cir. 2005).

34. In six other cases, including the Court of Claims, courts have ruled against the IRS and in favor of taxpayers. *Fortis, Inc. v. United States*, 2004 U.S. Dist. Lexis 18686 (S.D.N.Y. 2004) ("Fortis"); *National R.R. Passenger Corp. v. United States*, 338 F. Supp. 2d 22 (D.C. Cir. 2004) ("Amtrak"); *Reese Bros., Inc. v. United States*, 2004 WL 2901579

(W.D. Pa. 2004)("Reese Brothers"); *Honeywell Int'l, Inc. v. United States,* 64 Fed. Cl. 188 (Fed. C1. 2005) ("Honeywell"); *America Online, Inc v. United States*, 64 Fed. C1. 571 (Fed. C1. 2005) ("AOL"); and *Hewlett-Packard Co. v. United States*, 2005 WL 1865419 (N.D. Cal. August 5, 2005) ("HP").

**IRS HAS REFUSED TO FOLLOW THE DECISIONS OF THE JUDICIARY**

35. Although the judiciary has unanimously concluded that the IRS is unlawfully collecting the excise tax, the IRS recently announced that it would not follow the decisions of the courts.

36. In Notice 2005-79, the IRS announced that "government's recent loss in *American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005), *rev'g* 308 F. Supp. 2d 1360 (S.D. Fla. 2004), has caused some to question the continued applicability of the communications excise tax imposed by § 4251 of the Internal Revenue Code."

37. Notice 2005 –79 does not address the government's similar recent loss at the Sixth Circuit in *Office Max, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004) *aff'd* 2005 WL 2861031 (6th Cir. 2005).

38. In *ABIG*, the IRS could have sought a definitive answer from the Supreme Court but did not. The IRS stated that the "government did not seek review by the United States Supreme Court in *American Bankers Insurance Group*. Nevertheless, the government will continue to litigate this important issue. The government is prosecuting appeals in five different circuits." *Id.*

39. Although the judicial branch has determined that the IRS is not permitted to assess the tax against such communications services, the IRS further directed that "this notice confirms that the Service will continue to assess and collect the tax under § 4251 on

all taxable communications services, including communications services similar to those at issue in the cases." *Id.*

40. Even though the *ABIG* decision is the law in the Eleventh Circuit, and the IRS chose not to appeal the *ABIG* Court's decision, the IRS has ordered that "Collectors should continue to collect the tax, including from taxpayers within the jurisdiction of the United States Court of Appeals for the Eleventh Circuit." *Id.*

41. The IRS further demanded under penalty of law that taxpayers "are required to pay the tax to a collecting agent (the person receiving the payment on which tax is imposed), and collecting agents are required to pay over the tax to the United States Treasury and to file the required returns."

**IRS HAS PREEMPTIVELY DENIED, OR IN THE ALTERNATIVE, RENDERED FUTILE, ANY ADMINISTRATIVE REMEDY.**

42. Pursuant to 26 U.S.C. 7422, taxpayers seeking a refund are generally required to file an administrative request or otherwise exhaust administrative remedies. If the IRS fails to grant the refund within six-months, taxpayers are entitled to file claims in court.

43. Here, this requirement has been waived by, *inter alia*, Notice 2005-79, because the IRS has announced that it will not approve any refund requests and will not even begin to process or consider refund requests for the foreseeable future.

44. Taxpayers, including the plaintiff class, are entitled to rely upon the representations of the IRS.

45. In Notice 2005-79, the IRS stated further that "Taxpayers may preserve any claims for overpayments by filing administrative claims for refund with the Service pursuant to § 6511." *Id.*

46. The IRS warned that "Taxpayers are advised, however, that these claims, including claims for which appellate venue would lie in the United States Court of Appeals for the Eleventh Circuit, will not be processed while there are pending cases in other United States Courts of Appeals." *Id.*

47. Thus, administrative requests will not even be considered until the pending cases are resolved.

48. Of the pending cases, the most recent has not even been scheduled for oral argument.

49. In fact, since new cases are continually being filed, it would be difficult to imagine a scenario where there are no appeals pending in the United States Court of Appeals.

50. Notice 2005-79 establishes that refund requests will not be approved within the next six months and that any such efforts are futile.

51. On a class-wide basis, the IRS has prospectively denied all requests for refund of the 3% Excise Tax.

**NON-UNIFORM IMPOSITION OF FEDERAL EXCISE TAX.**

52. The IRS has declared that it will continue to impose excise taxes on some taxpayers. Notice 2005-79.

53. However, on information and belief, at least two families of corporate taxpayers will no longer pay the tax and/or have received refunds of such tax. *See American Bankers Insurance Group, and OfficeMax, supra.* The American Bankers Insurance Group case is concluded as the IRS had decided not to pursue an appeal. As such refunds are due and owing.

54. Here, Plaintiff and the Class paid for telecommunications services that are similar and/or identical to those services at issue in *ABIG* and *OfficeMax*.

55. Plaintiff and the Class are similarly-situated to American Bankers Insurance Group, OfficeMax and their affiliates.

56. Although Plaintiff and the Class are similarly-situated to American Bankers Insurance Group, OfficeMax and their affiliates, they paid federal excise taxes, will continue to pay federal excise tax, and have not received refunds of such tax on service for which ABIG and OfficeMax plaintiffs have not paid, will not pay or will receive refunds.

57. The IRS is imposing the federal communications excise tax in a manner that is not uniform throughout the United States.

**CLASS ALLEGATIONS**

58. Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of a Class consisting of all persons who paid federal communications excise tax on telecommunications services which were not subject to such tax and who have not received a refund of such tax.

59. Excluded from the Class are Defendant's legal representatives; employees of the IRS or the Federal Court of Claims and any judicial officer assigned to this case and his or her immediate family. Also excluded from the Class are persons who have received a full refund of their telecommunications excise tax.

60. Plaintiff John Smith is a member of the Class he seeks to represent.

61. The Class consists of millions of individuals and business entities and therefore is so numerous that joinder is impracticable.

62. Plaintiff's claims are typical of the claims of the Class because he and all of the Class sustained damages as a result of Defendant's collection of federal communications excise tax in violation of the law and in violation of findings and orders of the judiciary.

63. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether the telecommunications services purchased by Plaintiff and the Class provided unlimited access to a local telephone exchange or were billed on the basis of both time and distance;

b. Whether the Defendant has, in violation of the Fifth Amendment to the United States Constitution, taken possession of private property belonging to Plaintiff and the Class and used it for public purposes without providing any compensation to plaintiffs;

c. Whether the Defendant's classification of services and taxpayers is so arbitrary and capricious such that its collection of the 3% Excise Tax from subscribers did not constitute the exertion of taxation but a confiscation of property;

d. Whether the Defendant's actions were so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the conclusion that such actions were not the exertion of taxation but a confiscation of property;

e. Whether, in violation of Article I, to the United States Constitution, the Defendant has collected and continues to collect the 3% Excise Tax in a manner that is not uniform through the United States;

f. Whether the Defendant has received money, directly or in effect, from an illegal action;

g. Whether the Defendant has been unjustly enriched at the Plaintiff's and the Class' expense;

h. Whether Defendant should be enjoined from continuing its unlawful conduct;

i. Whether Defendant is liable to the Plaintiff and the Class in this action, as alleged in the Complaint.

64. All common questions can be resolved through the same factual occurrences as specifically and/or generally alleged herein.

65. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.

66. Plaintiff has no claims antagonistic to those of the Class.

67. Plaintiff has retained competent and experienced counsel in complex class actions and telecommunications litigation. Counsel is committed to the vigorous prosecution of this action.

68. A Class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

69. The expense and burden of litigation would substantially impair the ability of the Class Members to pursue individual cases in order to initiate their rights.

70. In the absence of a class action, the Defendant will retain the benefits of its wrongdoing.

71. Class certification pursuant to Rule 23(b)(3) is appropriate because the common issues of fact and law alleged herein are common to the Class and predominate over any questions affecting only individual members, thereby rendering the class action superior to all other available methods for the fair and efficient adjudication of this controversy.

72. Class certification is also appropriate pursuant to Rule 23(b)(2) because, as set forth in the Complaint, Defendant has acted and/or refused to act on grounds generally applicable to the Plaintiff and the Class; thereby warranting appropriate injunctive and/or declaratory relief.

**UNIQUE CIRCUMSTANCES REQUIRING CLASS CERTIFICATION**

73. It is well-established that it is the province of the courts to "state what the law is," and that all persons are subject to the law as determined by the courts.

74. Citizens are required to obey the decisions of the judiciary, including the decisions of the lower courts.

75. However, under the non-acquiescence doctrine, the IRS claims that is bound by only rulings of the United States Supreme Court, and it is obligated to follow lower court tax rulings only with respect to the party involved in the particular suit, and can disregard these rulings as precedent.

76. Similarly, the IRS is generally exempt from the judiciary's power to issue declaratory or injunctive relief that might otherwise protect U.S. citizens that are not parties to a direct lawsuit. 26 U.S.C. 2201 (declaratory relief generally unavailable); 26 U.S.C. 7421 (injunctive relief generally unavailable).

77. Under the IRS' assertion of its alleged non-acquiescence doctrine, and pursuant to Notice 2005-79, the IRS has ignored the decisions of the courts, has continued to unlawfully collect the excise tax, and can force each taxpayer to individually litigate his right to a refund.

78. Class certification is the only means to prevent the IRS from unlawfully collecting this tax and requiring each individual taxpayer to file a separate lawsuit, waste taxpayer resources, and risk inconsistent verdicts.

79. Without class certification, the IRS can require piecemeal litigation for past collected taxes and can continue to unlawfully collect these taxes into the future.

## COUNT I

80. The Plaintiff and the Class hereby incorporate their allegations in the above paragraphs as if fully rewritten.

81. In violation of the Fifth Amendment to the United States Constitution, the United States government took possession of private property belonging to Plaintiff and the Class and used it for public purposes without providing adequate compensation to Plaintiff or the Class.

82. The "takings clause" of the Fifth Amendment to the United States Constitution is a money-mandating provision.

83. The IRS' classification of services and taxpayers is arbitrary and capricious such that its collection of the 3% Excise Tax from Plaintiff and the Class did not constitute the exertion of taxation but a confiscation of property.

84. The IRS' actions were so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the conclusion that such actions were not the exertion of taxation but a confiscation of property.

85. At all times, the United States was aware that the property in question belonged to Plaintiff and the Class.

86. Plaintiff and the Class have suffered damages from the unconstitutional taking of their property in an amount to be proven at trial.

## COUNT II

87. The Plaintiff and the Class hereby incorporate their allegations in the above paragraphs as if fully rewritten.

88. Article I, § 8 of the U.S. Constitution delegates to Congress the power "to lay and collect Taxes, Duties, Imposts and Excises, . . . but all Duties, Imposts and Excises shall be uniform through the United States."

89. Article I, § 8 of the U.S. Constitution is a money-mandating provision.

90. In violation of Article I, to the United States Constitution, the IRS has collected and continues to collect the 3% Excise Tax from Plaintiff and the Class in a manner that is not uniform through the United States.

91. Plaintiff and the Class have suffered damages from the non-uniform collection of the 3% Excise Tax in an amount to be proven at trial.

**COUNT III**

92. The Plaintiff and the Class hereby incorporate their allegations in the above paragraphs as if fully rewritten.

93. An illegal exaction claim is stated when the United States receives money, directly or in effect, from illegal action, or as federal courts have explained, whenever the United States has the plaintiffs' money.

94. Under applicable laws and regulations, property belonging to Plaintiff and the Class was unlawfully exacted because the IRS acted, inter alia, in violation of 26 U.S.C. 4252, in violation of the orders of the judiciary, and in violation of the Constitutional provisions cited herein.

95. The IRS has an implied contract with Plaintiff and the Class to follow the orders of the judiciary and not collect excise taxes in violation of the orders of the judicial branch of government.

96. Plaintiff and the Class have suffered damages from these actions in an amount to be proven at trial.

**COUNT IV**

97. The Plaintiff and the Class hereby incorporate their allegations in the above paragraphs as if fully rewritten.

98. By reason of the foregoing, Plaintiff and the Class have overpaid their Federal excise tax for all relevant time periods.

99. Plaintiff and the Class have paid all such tax in full.

100. Defendant has refused to refund the Federal excise tax. *See* Notice 2005-79.

101. In the alternative, Defendant has waived the requirements of a prior administrative request by rendering futile all possible current requests for the refund the overpayments. *Id.*

102. Plaintiff and the Class request refunds for federal communications excise taxes improperly paid in the years 2002, 2003, 2004 and 2005. These payments were made at the time of purchase of the telecommunications service, at the location of the vendor, and were remitted to Defendant in Washington, D.C. The name and address of the Plaintiff is set forth in the caption above. The names and addresses of the class members will be determined through discovery. No refund claims have been filed for the reasons explained in this Complaint.

103. Accordingly, Plaintiff and the Class are entitled to a refund of the overpayment, in an amount to be proven at trial, including interest, fees and costs.

WHEREFORE, Plaintiff and the Class pray for judgment against the United States in an amount to be determined at trial, including interest, legal fees and such other relief that this Court deems just and proper.

Respectfully submitted,

COUNSEL OF RECORD:

Sheldon H. Sloan (CA Bar #32334)
Lewis Brisbois Bisgaard & Smith
550 West C Street, 8th Floor
San Diego, CA 92101
Tel: (619) 233-1006
Fax: (619) 233-8627
E-mail: sloan@lbbslaw.com

OF COUNSEL:

Richard F. Scruggs (MS Bar # 6582)
Sidney A. Backstrom (MS Bar # 99890)
Scruggs Law Firm, P.A.
P.O. Box 1136
120A Courthouse Square
Oxford, MS 38655
Tel: (662) 281 1212
Fax: (662) 281 1312
Email: dickscruggs@scruggsfirm.com
Email: sbackstrom@scruggsfirm.com

R. Gaylord Smith (CA Bar #72726)
Lewis Brisbois Bisgaard & Smith
550 West C Street, 8th Floor
San Diego, CA 92101
Tel: (619) 233-1006
Fax: (619) 233-8627
E-mail: smith@lbbslaw.com

Mark Griffin (OH Bar #0064141)
Law Offices of Mark Griffin
175 Honeybelle Oval
Orange, Ohio 44022
Tel: (216) 346-7376
Fax: (216) 861-6679
E-mail: telecomlaw@hotmail.com

Randy J. Hart (OH Bar #0046793)
200 Public Square
Suite 3300
Cleveland, Ohio 44113
Tel: (216) 978-9150
Fax: (216) 241-2824
E-mail: csuosu@msn.com

R. Eric Kennedy, Esq. (OH Bar #0006174)
Daniel P. Goetz, Esq. (OH Bar #0065549)
Weisman, Kennedy & Berris Co., L.P.A
1600 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115
Tel: (216) 781-1111
Fax: (216) 781-6747
Email: ekennedy@weismanlaw.com
Email: dgoetz@weismanlaw.com

Michael Moore
Phelps Dunbar LLP
111 East Capitol Street, Suite 600
Jackson, MS 39102-2122
Tel: (601) 360-9363
Fax: (601) 360-9777
Email: moorem@phelps.com

***Attorneys for Plaintiff***