# United States Court of Federal Claims

| | | |
|---|---|---|
| LINDA ROSENBERG, ET AL. | ) | CASE NO.: 05-1272-T |
| vs. | ) | JUDGE SUSAN G. BRADEN |
| UNITED STATES OF AMERICA | ) | |

## PLAINTIFF'S MEMORANDUM CONTRA DEFENDANT'S MOTION TO DISMISS AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY

# TABLE OF CONTENTS


SUMMARY OF THE ARGUMENT .......... 1

STATEMENT OF UNDISPUTED FACTS .......... 5

A. Parties .......... 5
B. Nature of the Claims .......... 5
C. Origins of the Federal Communications Excise Tax. .......... 6
D. As the Telecom Industry De-Regulated, Telephone Companies Ceased Billing for Services on the Basis of Time and Distance .......... 7
E. The IRS Did Not Conform Its Collection Practices to the Change in Industry Practices. .......... 7
F. Federal Courts Have Unanimously Ruled that the IRS' Collection Practices Are Unlawful. 7
G. The IRS Has Knowingly Violated a Statute that is "Clear and Unambiguous." .......... 8
H. The IRS Has Refused to Follow the Orders of this Court, the Unanimous Opinions of the Other Federal Courts, or the Unambiguous Language Used by Congress. .......... 9
I. The IRS' Self-Asserted Policy of Non-Acquiescence Allows the IRS to Defeat Review by the U.S. Supreme Court and to Continue to Collect Taxes in Violation of Court Orders.... 10
J. The IRS Non-Uniformly Imposes the Federal Excise Tax. .......... 11

LAW & ARGUMENT .......... 12

A. Standards Of Review. .......... 12
  1. Standard of Review on a Motion to Dismiss-RCFC 12(b)(6) .......... 12
  2. Standard of Review on a Motion for Partial Summary Judgment-RCFC 56(c) .......... 12

B. Count One: The Collection of Excise Taxes in Conflict With the Clear and Unambiguous Language of Congress and the Courts is Arbitrary and Capricious and Constitutes an Unlawful Taking. .......... 14
  1. Tucker Act Jurisdiction is Appropriate for Takings Claims. .......... 14
  2. Plaintiff's Complaint States a Takings Claim Because the Taxation at Issue is "Arbitrary And Capricious" or Constitutes a Confiscation of Property. .......... 15
  3. There is No Tax to be Collected. .......... 17
  4. Defendant's Reliance on *Kerrigan* Is Misplaced. .......... 17
  5. Defendant's Cases Confuse the Concepts of Ultra Vires and Unlawful Acts. This Court has Made it Clear that Plaintiff Does Not Need to Concede the Validity of Federal Actions for Tucker Act Jurisdiction. .......... 19
  6. Summary Judgment Should Be Rendered In Favor Of Plaintiff Because The Collection of Taxes in Defiance Of The Clear and Unambiguous Language of Congress and the Courts Is Arbitrary And Capricious. .......... 20

C. Count Two: The Collection of Excise Taxes From Only Some, But Not All Identically-Situated Taxpayers, Is The Imposition of A Non-Uniform Excise Tax. .......... 25
  1. Tucker Act Jurisdiction Is Appropriate Because The Uniform Excise Tax Clause Is A Money-Mandating Provision. .......... 25
  2. Summary Judgment Should Be Rendered In Favor Of Plaintiff Because The Federal Communications Excise Tax is Imposed In A Non-Uniform Manner. .......... 29
  3. Defendant's Cases Are Inapposite .......... 30

D. Count Three: Defendant's Collection of Excise Taxes In Violation of the Clear Language Of Congress and the Judiciary Constitutes An Illegal Exaction. .......... 32
1. Tucker Act Jurisdiction Is Appropriate For Claims Of Illegal Exactions. .......... 32
2. Defendant's Collection of Federal Excise Taxes Constitutes An Unlawful Exaction...... 33

E. Count Four: Plaintiff Is Entitled To A Refund Of Communication Excise Taxes. .......... 35
1. Summary Judgment Should Be Rendered In Favor Of Plaintiff Because There Can Be No Dispute That The Collection of The Excise Tax Is Unlawful. .......... 35
2. Defendant's Conduct Is A Pre-Emptive Denial Of Plaintiff's Refund Request. .......... 36
3. In The Alternative, Defendant Has Waived Plaintiff's Refund Requests. .......... 37

CONCLUSION .......... 39

TABLE OF AUTHORITIES

**Cases**

*Adams v. United States*, 391 F.3d 1212, 1218 (Fed.Cir.2004) .......... 12
*Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed.Cir.1996)) .......... 32
*Aldrich v. Schweiker*, 555 F. Supp. 1080 (D. Vt. 1982) .......... 24
*Allegheny Gen. Hosp. v. NLRB*, 608 F.2d 965, 970 (3d Cir. 1979) .......... 21, 23
*America Online Inc. v. United States*, 64 Fed.Cl. at 578 .......... 7, 8, 21
*American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005) .......... 1, 8, 9, 35
*Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 .......... 13
*Angelus Milling Co. v. Commissioner*, 325 U.S. 293 .......... 38, 39
*Bell v. Hood*, 327 U.S. 682, 66 S. Ct. 776 .......... 34
*Berzon v. Commissioner*, 63 T.C. 601, 606, 1975 WL 3068 (1975) .......... 3, 16
*Branch v. United States*, 69 F.3d 1571, 1577-78 (Fed.Cir.1995) .......... 15
*Brushaber v. Union Pac. RR*, 240 U.S. 1, 24-25, 36 S.Ct. 236, 60 L.Ed. 493 (1916) .......... 3, 16
*Camellia Apartments, Inc. v. United States*, 167 Ct.Cl. 224, 334 F.2d 667 (1964), cert. denied,379 U.S. 963, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965) .......... 34
*Carriso v. United States*, 106 F.2d 707, 712 (9th Cir.1939) .......... 34
*Celotex Corp. v. Catrett* .......... 13
*Clapp v. United States*, 127 Ct.Cl. 505, 512, 117 F.Supp. 576, 580, cert. denied,348 U.S. 834, 75 S.Ct. 55, 99 L.Ed. 658 (1954) .......... 33
*Coleman v. Commissioner*, 791 F.2d 68 (7th Cir. 1986) .......... 15, 17
*Continental Illinois Nat. Bank & Trust Co. v. U.S.*, 39 F. Supp. 620, 623 (Ct. Cl. 1941) .......... 38
*Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958) .......... 22
*Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369 (Fed.Cir.2000), .......... 26, 27, 28
*Dale Distributing Co. v. Commissioner*, 269 F.2d 444 (2d Cir. 1959) .......... 38
*Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed.Cir.1998) .......... 19, 20
*Divine v. Commissioner*, 59 T.C. 152, 159 (1972) .......... 10
*Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967) .......... 4, 32
*Eversharp, Inc. v. United States*, 129 Ct.Cl. 772, 776, 125 F.Supp. 244, 247 (1954) .......... 33
*Fernandez v. Weiner*, 326 U.S. 340 (1945) .......... 31
*Fortis, Inc. v. United States*, 2004 U.S. Dist. Lexis 18686 (S.D.N.Y. 2004) .......... 1, 8, 9, 35
*Hatter v. United States*, 953 F.2d 626 (Fed. Cir. 1992) .......... 28
*Head Money Cases*, 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884) .......... 29
*Henke v. United States*, 60 F.3d 795 .......... 12
*Hewlett-Packard Co. v. United States*, 2005 WL 1865419 (N.D. Cal. August 5, 2005) .......... 1, 8, 36
*Holden v. Heckler*, 584 F. Supp. 463 (N.D. Ohio 1984 .......... 24
*Honeywell Int'l, Inc. v. United States*, 64 Fed. Cl. 188 (Fed. C1. 2005) .......... 1, 8, 9, 36
*Hyatt v. Heckler*, 579 F. Supp. 985, 999 (D.N.C. 1984) .......... 21
*Ithaca College v. NLRB*, 623 F.2d 224, 228 (2d Cir. 1980) .......... 23
*Jones & Laughlin Steel Corp. v. Marshall*, 636 F.2d 32, 33 (3d Cir.1980). .......... 22
*Kerrigan v. United States*, 1997 WL 685275 (Fed. Cl. 1997) .......... 17, 18, 19
*Knowlton v. Moore*, 178 U.S. 41, 106, 20 S.Ct. 747, 44 L.Ed. 969 (1900) .......... 29
*Leider v. United States*, 301 F.3d 1290, 1295 (Fed.Cir.2002) .......... 12

*Lopez v. Heckler*, 572 F. Supp. 26 (C.D. Cal. 1983) .......... 24
*Lopez v. Heckler*, 572 F. Supp. 26, 29 (C.D. Cal. 1983), aff'd in part, 724 F.2d 1489 (9th Cir.)..... 22
*Lopez v. Heckler*, 725 F.2d 1489 (9th Cir.1984), .......... 36
*Mallow v. United States*, 161 Ct.Cl. 446, 450 1963 WL 8503 (1963).......... 33
*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) .......... 21
*Mary Thompson Hosp., Inc. v. NLRB,* 621 F.2d 858, 864 (7th Cir. 1980).......... 23
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).......... 13
*Mayburg v. Heckler*, 574 F. Supp. 922 (D. Mass. 1983).......... 25
*Mayburg v. Sec. of Health & Human Servs.*, 740 F.2d 100 (1st Cir. 1984)..........25
*Mients v. U.S.*, 50 Ct. Cl. 665 (2001).......... 14
*Miniature Vehicle Leasing Corp. v. United States*, 266 F. Supp. 697 (D.N.J. 1967)..........31
*Moden v. United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005) .......... 12, 13
*National Forge & Ordinance Co. V. United States*, 151 F. Supp. 937, 139 Ct. Cl. 204..........39
*National R.R. Passenger Corp. v. United States*, 338 F. Supp. 2d 22 (D.C. Cir. 2004). 1, 8, 9, 11, 34
*National Railroad Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005).......... 1, 8, 35
*Nicol v. Ames,* 173 U.S. 509, 521-522, 19 S.Ct. 522, 527-528, 43 L.Ed. 786 (1899).......... 29
*Novartis Corp. v. Ben Venue Laboratories*, 271 F.3d 1043, 1046 (Fed.Cir.2001).......... 13
*Office Max, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004) *aff'd* 2005 WL 2861031 (6th Cir. 2005).......... 1, 8, 11, 35
*Ogden v. United States*, 61 Fed. Cl. Ct. 44 (2004) .......... 15
*Pan American World Airways v. United States*, 129 Ct.Cl. 53, 55, 122 F.Supp. 682 (1954) .......... 34
*Polaski v. Heckler*, 588 F. Supp. 1004 (D. Minn. 1984) .......... 24
*Preseault v. ICC*, 494 U.S. 1, 11-12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990).......... 14
Qwest v. U.S. 48 Ct. Cl. 672, 680 (2001).......... 15
*Ramirez de Arellano v. Weinberger,* 724 F.2d 143, 151 (D.C.Cir.1983) .......... 19, 20
*Reese Bros., Inc. v. United States*, 2004 WL 2901579 (W.D. Pa. 2004).......... 1, 8, 9, 36
*Riley & Ephraim Const. Co., Inc.*, 408 F.3d 1369 (Fed. Cir. 2005)..........13
*Ringer v. Schweiker*, 697 F.2d 1291 (9th Cir.1983) .......... 36
*Rith Energy, Inc. v. United States,* 247 F.3d 1355, 1365 (Fed.Cir.2001).......... 19
*Rivera v. Heckler*, 568 F. Supp. 235 (D.N.J. 1983).......... 24
*Rosano v. United States*, 9 Ct. Cl. 137, 142 (1985).......... 15
*Roth v. United States*, 378 F.3d 1371, 1384 (Fed.Cir.2004).......... 14
*Scheuer v. Rhodes,* 416 U.S. 232, 236-37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) .......... 12
*Seatrade Corp. v. United States*, 152 Ct.Cl. 356, 360, 285 F.2d 448, 450 (1961) .......... 33
*Skillo v. United States*, 68 Fed. Cl. 734 (2005)..........18
*Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir.2001).......... 12
*South Puerto Rico Sugar Co. Trading Corp. v. United States,* 167 Ct. Cl. 236, 244, 334 F.2d 622 (1964).......... 33
*Stacey Mfg. Co. v. Commissioner*, 237 F.2d 605, 606 (6th Cir. 1956) .......... 23
*Stern v. Commissioner*, 242 F.2d 322 (6th Cir.) .......... 23
*Stieberger v. Heckler*, 615 F.Supp. 1315 (S.D.N.Y.1985) .......... 22, 24
*Suwannee S.S. Co. v. United States*, 150 Ct.Cl. 331, 279 F.2d 874 (1960)..........33
*Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1348 (Fed. Cir. 2005) .......... 32
*Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) .......... 14
*Trans-Lux Corp.*, 696 F.2d at 966 .......... 7

*Tucker v. Alexander*, 275 U.S. 228, 48 S. Ct. 45 ........ 38
*United States v. Emery, Bird, Thayer Realty Co.*, 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825 (1915) 33
*United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980........ 14
*United States v. Ptasynski*, 462 U.S. 74, 80 (1983 ........ 3, 25, 29
*United States v. Security Industrial Bank*, 459 U.S. 70, 77, 103 S.Ct. 407 (1982) ........ 15
*United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)........ 14
*United States v. Winstar Corp.*, 518 U.S. 839, 910, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996)........ 13
*Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)........ 36

**Statutes**

26 U.S.C 6201 ........ 3, 19
26 U.S.C. § 4252(b). ........ 4
26 U.S.C. § 6532(a) ........ 25
28 U.S.C. § 1361 ........ 25
28 U.S.C. § 1491 ........ 14, 25, 30
28 U.S.C. § 1491(a)(1) ........ 14, 30
79 Stat. at 145, Pub.L. No. 89-44. ........ 3

**Other Authorities**

IRS Notice 2005-79 ........ 8, 9, 10, 35

**Rules**

RCFC 12(b)(6). ........ 2, 11
RCFC 56(c) ........ 2, 11

**Constitutional Provisions**

U.S. Constitution, Art. I, § 8, cl. ........ 24

## SUMMARY OF THE ARGUMENT

The Defendant asserts the right to unlawfully collect federal communication excise taxes on services that are not subject to those taxes. Congress has explicitly stated, and three U.S. Courts of Appeals and six U.S. District Courts have unanimously held, that the Defendant may not do so. *American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005); *Office Max, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004) *aff'd* 2005 WL 2861031 (6th Cir. 2005); *National Railroad Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005) *Fortis, Inc. v. United States*, 2004 U.S. Dist. Lexis 18686 (S.D.N.Y. 2004) ("Fortis") (summary judgment); *National R.R. Passenger Corp. v. United States*, 338 F. Supp. 2d 22 (D.C. Cir. 2004) ("Amtrak") (summary judgment); *Reese Bros., Inc. v. United States*, 2004 WL 2901579 (W.D. Pa. 2004)("Reese Brothers") (summary judgment); *Honeywell Int'l, Inc. v. United States,* 64 Fed. Cl. 188 (Fed. C1. 2005) ("Honeywell") (summary judgment); *America Online, Inc v. United States*, 64 Fed. C1. 571 (Fed. C1. 2005) ("AOL") (summary judgment); and *Hewlett-Packard Co. v. United States*, 2005 WL 1865419 (N.D. Cal. Aug. 5, 2005) ("HP") (summary judgment).

These nine courts have held that there is no federal communications excise tax on telecommunications services that are not billed on the basis of distance. No court has held otherwise. Such a tax simply does not exist. Nonetheless, Defendant has announced that it will defy the unambiguous language of Congress and the orders of the courts and will continue to arbitrarily collect a "tax" that it has created on its own initiative. IRS Notice 2005-79.

This is not a tax case which involves intricate accounting issues, questionable deductions, or even, any factual disputes. This case is about the confiscation of property without the authorization of Congress. It will determine whether the administrative branch can continue to ignore and defy the clear and unambiguous instructions of the both the legislative and judicial

branches, seize the property of American taxpayers, and then effectively defeat the taxpayers' ability to be compensated for the Defendants' unlawful acts.

To put the Defendant's conduct in perspective, assume that the IRS issued a "Notice" which ordered that all Americans pay a tax of 3% on the value of their bank accounts as of the end of every calendar year. Assume further that Congress has not authorized any such tax, but that the IRS was acting on a lark in collecting this made-up "tax". This hypothetical is nearly identical to the excise "tax" at issue here. Surely a hundred million refund requests ought not to be required before a court can halt such a usurpation of taxing authority.

It is not enough to claim that Congress has imposed a tax on analogous services -- telephone calls that are both time and distance sensitive -- when the IRS is now claiming that it can impose and collect the tax on calls that clearly do not meet that definition. The fact that the definition of the item being taxed is close to the definition of the tax that was authorized by Congress is irrelevant. Under that reasoning, the IRS would then be empowered to look at the Congressional authorization and apply it to anything that it felt, in its opinion, is close. For example, Congress has imposed a transportation tax of $12 on all persons utilizing international air travel. Under the IRS' reasoning, there would be nothing stopping the IRS from imposing this air travel tax on travelers that use railroads, but not airplanes. "Close" simply is not good enough. Either the IRS is authorized to collect a tax or it is not. If the IRS chooses to collect a tax that is not authorized, the situation constitutes a "taking," if not pure and simple theft.

Every day, Defendant takes approximately $8 million of taxpayers' property without permission or authorization. If the Defendant were not the Federal Government, the issue presented would be the appropriate sentencing guidelines. Instead, the Defendant claims not only that it can continue to take and confiscate property under the guise of a tax that does not

exist but also that it can defy the orders of the U.S. Courts of Appeal, District Courts or other federal courts.

Plaintiff requests that this Court prevent further confiscations and order the return of taxpayers' property by denying Defendant's Motion to Dismiss and granting summary judgment in Plaintiff's favor. Plaintiff's Complaint states three claims for damages under the Tucker Act and, separately, a fourth claim for the refund of taxes unlawfully collected. 28 U.S.C. 1491 ("Tucker Act").

Count One states a claim for an illegal taking. The general rule is that the routine collection of authorized taxes is not typically a "taking." The exception to the general rule is that taxation will constitute an unlawful taking where, as here, the taxation is "arbitrary and capricious." *Berzon v. Commissioner*, 63 T.C. 601, 606, 1975 WL 3068 (1975); *Brushaber v. Union Pac. RR*, 240 U.S. 1, 24-25, 36 S.Ct. 236, 60 L.Ed. 493 (1916). This case is far from the general rule. Here, the collection of taxes is in direct violation of the clear and unambiguous language of Congress and the Courts and, as such, is both "arbitrary and capricious." Complaint at ¶ 83-84.

Count Two states a claim for the violation of the Uniform Excise Tax Clause of the United States Constitution. U.S. Const. Art. I, §8, cl.1. The Uniform Excise Tax Clause bars any excise tax that is not collected with "the same force and effect in every place where the subject of it is found." *United States v. Ptasynski*, 462 U.S. 74, 82 (1983). Presently, the IRS is not collecting excise tax on telecommunications services purchased by American Bankers Insurance Group, OfficeMax or Amtrak while collecting the tax on identical services purchased by Plaintiff. The IRS has lost these cases and has chosen not to appeal. The judgments in these cases are final. Thus, some taxpayers do not have to pay this excise tax, while other taxpayers

who purchased the same services at the same time are forced to payheld liable. This unequal assessment violates the Uniform Excise Tax Clause.

Count Three states a claim for an "illegal exaction." An "illegal exaction" occurs when "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum" that "was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). Here, the IRS' intentional collection of federal communication excise taxes on services that are not subject to those taxes is in contravention of both the Constitution and the authorizing statute.

Count Four states a claim for a tax refund. Defendant has unlawfully collected taxes from Plaintiff. Defendant continues to retain these taxes. Defendant has announced that it will not refund these taxes or obey the courts. Notice 2005-79. Plaintiff is entitled to a refund, and the Court has jurisdiction to award it where Defendant has, in bad faith, relied upon the discredited doctrine of administrative "non-acquiescence."

Defendant justifies its refusal to follow the judiciary's nine determinations that no such excise tax exists for these services on a particularly extreme, almost cynical, application of the "non-acquiescence" doctrine. Under that doctrine, agencies sometimes do not change their conduct after a single court decision in an effort to seek more definitive judicial guidance elsewhere. What IRS has done here is different. It has refused to seek review of the Circuit Court decisions which it has lost, and instead has announced its intent to require hundreds of millions of taxpayers to file refund requests, which it will ignore. The refund procedure was never intended by Congress to be used as a sword to allow the IRS *de facto* to collect "taxes" not

authorized by Congress. This case graphically illustrates the proper use of the exception to the refund requirement.

This case will test whether the Defendant can retain the benefits of its unlawful acts. This case will test whether the Courts or the Defendant have the final authority to state what the law is. In order to protect the taxpayers and the Constitution, this Court should deny Defendant's Motion to Dismiss and grant Plaintiff's Motion for Summary Judgment for the reasons set forth below.

## STATEMENT OF UNDISPUTED FACTS

### A. Parties

Plaintiff, Linda Rosenberg, ("Plaintiff") is a schoolteacher who resides in La Jolla, California. Declaration of Linda Rosenberg at ¶ 1 ("Rosenberg Aff.")(attached as Exhibit A). Plaintiff represents a putative class of similarly-situated individuals and business entities.

Defendant is the United States. The Internal Revenue Service ("IRS") is authorized by Congress to collect taxes due and owing to the United States. 26 U.S.C 6201 *et seq.*

### B. Nature of the Claims

For at least the last six years, Plaintiff has purchased telecommunications services which did not provide unlimited access to a local exchange; and/or were not billed based on both time and distance. Rosenberg Aff. at ¶ 2. Plaintiff nonetheless was charged, and paid, federal excise tax for these services. *Id.* at ¶ 3. Plaintiff has paid this tax in full. *Id.* at ¶ 3. Plaintiff and the Class paid federal excise tax on such telecommunications services and have not received a refund of such taxes. *Id.* at ¶ 3.

**C. Origins of the Federal Communications Excise Tax.**

The first Federal Communications Excise Tax was enacted in 1898 – just twenty-two years after Alexander Graham Bell's invention of the telephone. In 1965, Congress enacted the Excise Tax Reduction Act repealing most excise taxes, immediately reducing the telephone excise tax from ten percent to three percent and requiring the complete elimination of the tax within five years. 79 Stat. at 145, Pub.L. No. 89-44.

The 1965 Act retained three categories of taxable services: "local telephone service," "toll telephone service" and "teletypewriter exchange service." As to toll telephone service, Congress enacted the following definition:

> (1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and (B) the charge is paid within the United States, and
>
> (2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

79 Stat. at 146, Pub.L. No. 89-44; 26 U.S.C. § 4252(b).

When Congress enacted this legislation (and for many years before and after its passage), the only provider of long-distance service in the United States was AT & T. *See, e.g., Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1333 (11th Cir.2005). Through the 1965 Act, Congress sought to limit the excise tax to the services as AT&T then provided them.

AT&T's long distance charges at that time were based on the elapsed time of each individual call, multiplied by a rate determined through the use of distance mileage bands or for "Wide Area Telephone Service," commonly referred to as WATS, with a periodic charge for

unlimited access within a specified area outside of local service. At the time, AT&T's service, which Congress sought to define as taxable toll service, did in fact utilize rates that varied by both elapsed transmission time and distance. *See America Online*, 64 Fed.Cl. at 578 (citing *Trans-Lux Corp.*, 696 F.2d at 966).

**D. As the Telecom Industry De-Regulated, Telephone Companies Ceased Billing for Services on the Basis of Time and Distance.**

Deregulation of the telecommunications industry began with the break-up of the Bell System via the Modified Final Judgment in 1982. Deregulation accelerated in the 1990s with the passage of the Telecommunications Act of 1996. By 2000, there were over one thousand competing providers of telecommunication services in the United States. Virtually none of these new providers sold telecommunications service on the basis of both time and distance. Carriers have almost entirely eliminated "mileage bands". Instead, calls are simply billed on the basis of whether they begin and end within the same local access telephone area ("LATA"). Any calls that crossed the borders of the LATA were billed as long-distance, regardless of the distance in miles of the call.

**E. The IRS Did Not Conform Its Collection Practices to the Change in Industry Practices.**

Although carriers had changed their billing methods, the IRS did not change its collection practices. The IRS continued to assess, enforce and collect the federal excise tax on telecommunications services without regard to whether the services were billed on the basis of both time and distance.

**F. Federal Courts Have Unanimously Ruled that the IRS' Collection Practices Are Unlawful.**

Over that last three years, nearly a dozen major American companies have challenged the IRS' attempts to collect federal communications excise tax on services that are not billed on the

basis of distance. To date, three United States Courts of Appeal have ruled against the IRS. *American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005); *Office Max, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004) *aff'd* 2005 WL 2861031 (6th Cir. 2005); *National Railroad Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005)

In six other cases, including the Court of Claims, courts have ruled against the IRS and in favor of taxpayers. *Fortis, Inc. v. United States*, 2004 U.S. Dist. Lexis 18686 (S.D.N.Y. 2004) ("Fortis") (awarding summary judgment for plaintiffs); *National R.R. Passenger Corp. v. United States*, 338 F. Supp. 2d 22 (D.C. Cir. 2004) ("Amtrak") (awarding summary judgment for plaintiffs); *Reese Bros., Inc. v. United States*, 2004 WL 2901579 (W.D. Pa. 2004)("Reese Brothers")(awarding summary judgment for plaintiffs); *Honeywell Int'l, Inc. v. United States*, 64 Fed. Cl. 188 (Fed. C1. 2005) ("Honeywell") (awarding summary judgment for plaintiffs); *America Online, Inc v. United States*, 64 Fed. C1. 571 (Fed. C1. 2005) ("AOL") (awarding summary judgment for plaintiffs); and *Hewlett-Packard Co. v. United States*, 2005 WL 1865419 (N.D. Cal. August 5, 2005) ("HP") (awarding summary judgment for plaintiffs).

**G. The IRS Has Knowingly Violated a Statute that is "Clear and Unambiguous."**

In awarding summary judgment for plaintiffs, the Court of Claims held that "if the statutory language no longer fits the infrastructure of the industry, the IRS needs to ask for congressional action to bring the statute in line with today's reality. **It cannot create an ambiguity that does not exist** or misinterpret the plain meaning of statutory language to bend an old law toward a new direction." *America Online*, 64 Fed.Cl. at 578 (Emphasis added)(quoting *Nat'l R.R.*, 338 F.Supp.2d at 27-28). The other federal courts have agreed with the Court of Claims and have concluded that the defined scope of the tax is "**clear and unambiguous.**" *See America Online,* 64 Fed.Cl. at 577-78 ("Section 4252(b)(1) **unambiguously** requires that a toll

charge vary in amount according to both the distance and duration of calls."); *Honeywell Int'l, Inc. v. United States*, 64 Fed.Cl. at 199 (finding § 4252(b)(1)'s phrase "distance and elapsed transmission time" unambiguous ) (quoting *Office Max*, 309 F.Supp.2d at 995); *Nat'l R.R. Passenger Corp.*, 338 F.Supp.2d at 27-28 (finding phrase unambiguous; "and" intended conjunctively); *Fortis, Inc.* 2004 WL 2085528, at *6 (same), *Reese Bros., Inc. v. United States*, 2004 WL 2901579, slip op. at *7 (same).

**H. The IRS Has Refused to Follow the Orders of this Court, the Unanimous Opinions of the Other Federal Courts, or the Unambiguous Language Used by Congress.**

On October 20, 2005 the IRS announced that it will not follow the courts' decisions, even in those courts' own jurisdictions. Notice 2005-79. The IRS alleges a right to not "acquiesce" in the decisions of any federal court other than the U.S. Supreme Court. The IRS has ordered telecommunications carriers to continue to assess and collect these taxes without regard to the decisions of the courts. *Id.*

In Notice 2005-79, the IRS conceded that "government's recent loss in *American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005), *rev'g* 308 F. Supp. 2d 1360 (S.D. Fla. 2004), has caused some to question the continued applicability of the communications excise tax imposed by §4251 of the Internal Revenue Code." However, the "government did not seek review by the United States Supreme Court in *American Bankers Insurance Group*. Nevertheless, the government will continue to litigate this important issue. The government is prosecuting appeals in five different circuits." *Id.*

Although the judicial branch has determined that the IRS is not permitted to assess the tax against such communications services, the IRS further directed that "this notice confirms that the Service will continue to assess and collect the tax under § 4251 on all taxable communications services, including communications services similar to those at issue in the

cases." *Id.* The IRS further demanded under penalty of law that taxpayers "are required to pay the tax to a collecting agent (the person receiving the payment on which tax is imposed), and collecting agents are required to pay over the tax to the United States Treasury and to file the required returns." *Id.*

In Notice 2005-79, the IRS stated further that "Taxpayers may preserve any claims for overpayments by filing administrative claims for refund with the Service pursuant to § 6511." *Id.* The IRS warned that "Taxpayers are advised, however, that these claims, including claims for which appellate venue would lie in the United States Court of Appeals for the Eleventh Circuit, will not be processed while there are pending cases in other United States Courts of Appeals." *Id.* Thus, administrative requests will not even be considered until the pending cases are resolved.

## I. The IRS' Self-Asserted Policy of Non-Acquiescence Allows the IRS to Defeat Review by the U.S. Supreme Court and to Continue to Collect Taxes in Violation of Court Orders.

The IRS claims that it has the right to "non-acquiesce" in the decisions of any court other than the U.S. Supreme Court. *Divine v. Commissioner*, 59 T.C. 152, 159 (1972). Under this doctrine, the IRS will apply a Court's decision only to the specific plaintiff in a case decided by a federal court and will decline to apply the holdings to other identical taxpayers. *Id.* The IRS will, therefore, continue to assess unlawful taxes against all other citizens. That is the case here.

Moreover, the IRS claims the power to frustrate any review of its non-acquiescence policy by the U.S. Supreme Court. Obviously, only a party that loses in a United States Court of Appeals has standing to appeal to the U.S. Supreme Court. A party that prevails cannot appeal. Here, the IRS has lost in three separate U.S. Courts of Appeals. It has chosen to not appeal these decisions to the U.S. Supreme Court. The plaintiffs are barred from any further appeal because

they are the prevailing parties. The result is that by losing in the appellate courts, the IRS can continue its unlawful practices.

This is a cynical abuse of the non-acquiescence doctrine. By refusing to seek certiorari, the IRS is trying to ensure that its strategy of non-acquiescence will allow it to collect an illegal tax *de facto* for the simple reason that most citizens have neither the knowledge nor resources to seek refunds. Whatever limited merit the non-acquiescence policy has where an agency is in good faith seeking higher review, the doctrine is nothing more than lawless usurpation on these facts.

**J. The IRS Non-Uniformly Imposes the Federal Excise Tax.**

The IRS has declared that it will continue to impose excise taxes on some taxpayers. Notice 2005-79. However, on information and belief, at least three families of corporate taxpayers will no longer pay the tax and/or have received refunds of such tax. *See American Bankers Insurance Group, OfficeMax,* and *Amtrak supra.* The *American Bankers Insurance Group* case is concluded as the IRS had decided not to pursue an appeal. As such refunds are due and owing.[1] As a result, for the time period October 1, 1998 to the present, the American Bankers Insurance Group is not liable for the federal excise tax. Thus, at the present time, the excise tax is not being collected in a uniform manner on identical services from identically situated taxpayers.

Here, during the same time periods, Plaintiff and the Class paid excise taxes on telecommunications services that are identical to those services at issue in *ABIG* and *OfficeMax.* Plaintiff and the Class are similarly-situated to American Bankers Insurance Group, OfficeMax and their affiliates. For the same services, over the same time period, ABIG was not required to

[1] The IRS is seeking *en banc* review of the *OfficeMax* case. The *Amtrak* Case is still pending.

pay this tax while Plaintiff is so required. Thus, the IRS is imposing the federal communications excise tax in a manner that is not uniform throughout the United States.

## LAW & ARGUMENT

### A. Standards Of Review.

#### 1. Standard of Review on a Motion to Dismiss-RCFC 12(b)(6).

In ruling on a motion to dismiss, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 ; *Scheuer v. Rhodes,* 416 U.S. 232, 236-37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir.2001) (citations omitted) ("When reviewing a dismissal for failure to state a claim upon which relief can be granted under . . . Rule 12(b)(6) . . . [the court] must accept as true all the factual allegations in the complaint, and . . . indulge all reasonable inferences in favor of the non-movant."). Dismissal for failure to state a claim under Rule 12(b)(6) "is proper only when a plaintiff can 'prove no set of facts in support of his claim which would entitle him to relief." *Adams v. United States*, 391 F.3d 1212, 1218 (Fed.Cir.2004) (*quoting Leider v. United States,* 301 F.3d 1290, 1295 (Fed.Cir.2002)); *see also* RCFC 12(b)(6).

#### 2. Standard of Review on a Motion for Partial Summary Judgment-RCFC 56(c).

On a motion for summary judgment, if there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. *See Moden v. United States*, 404 F.3d 1335, 1342 (Fed.Cir.2005) *see also* RCFC 56(c). In the United States Court of Federal Claims, summary judgment, albeit interlocutory in nature, may be rendered on the issue of liability alone, even if a genuine issue of fact exists as to the amount of damages. *See United*

*States v. Winstar Corp.*, 518 U.S. 839, 910, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (affirming grant of partial summary judgment on contract liability and remanding the determination of the appropriate measure or amount of damages, if any.); *see also* RCFC 56(c).

The burden of demonstrating the absence of any genuine issue of material fact is on the party moving for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding the moving party must meet its burden "by 'showing'--that is pointing out to the [trial court] that there is an absence of evidence to support the nonmoving party's case"); *see also Riley & Ephriam Constr. Co., Inc.*, 408 F.3d 1369, 1371 (Fed.Cir.2005) ("The moving party bears the burden of demonstrating the absence of a genuine issue of material fact."). A summary judgment may be made without supporting affidavits and rely "solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

Once the moving party demonstrates the absence of a genuine issue of material fact, however, the burden shifts to the non-movant to establish the existence of a genuine issue that can only be resolved at trial. *Novartis Corp. v. Ben Venue Laboratories*, 271 F.3d 1043, 1046 (Fed.Cir.2001) Therefore, a trial court is required to resolve all doubt over factual issues in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). And, all reasonable inferences and presumptions must be resolved in favor of the non-moving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505*; see also Moden,* 404 F.3d at 1342 ("[A]ll justifiable inferences [are drawn] in favor of the party opposing summary judgment.").

**B. Count One: The Collection of Excise Taxes in Conflict With the Clear and Unambiguous Language of Congress and the Courts is Arbitrary and Capricious and Constitutes an Unlawful Taking.**

**1. Tucker Act Jurisdiction is Appropriate for Takings Claims.**

Pursuant to the Tucker Act, the United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (*quoting United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Therefore, in order to come within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed.Cir.2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act."); *see also Roth v. United States*, 378 F.3d 1371, 1384 (Fed.Cir.2004) ("Because the Tucker Act itself does not provide a substantive cause of action, . . . a plaintiff must find elsewhere a money-mandating source upon which to base a suit.").

Here, the Takings Clause of the Fifth Amendment is a money-mandating provision of the Constitution for purposes of the Tucker Act, *Preseault v. ICC*, 494 U.S. 1, 11-12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990); *Mients v. U.S.*, 50 Ct. Cl. 665 (2001), "It is well established that the

takings clause of the Fifth Amendment to the U.S. Constitution . . . is a money-mandating provision on which a claim may be based in this court." *Qwest v. U.S.*, 48 Ct. Cl. 672, 680 (2001). The "Court of Federal Claims has clear jurisdiction [over takings claims]." *Ogden v. United States*. 61 Fed. Cl. Ct. 44 (2004) *citing Rosano v. United States*, 9 Ct. Cl. 137, 142 (1985).

**2. Plaintiff's Complaint States a Takings Claim Because the Taxation at Issue is "Arbitrary And Capricious" or Constitutes a Confiscation of Property.**

The Takings Clause of the Fifth Amendment to the U.S. Constitution provides that "nor shall private property be taken for public use, without just compensation." A "classic taking" occurs whenever the government acquires for itself the property of another. *United States v. Security Industrial Bank*, 459 U.S. 70, 77, 103 S.Ct. 407, 412 (1982). *Branch v. United States*, 69 F.3d 1571, 1577-78 (Fed.Cir.1995) (discussing why, "when addressing constitutional challenges to new rules of liability, the Supreme Court has regarded the Takings Clause as a first cousin of the doctrine of substantive due process . . . .")

Although there is no question that Congress has the power to lay and collect taxes, it does not necessarily follow that the Sixteenth Amendment grants Congress the power to appropriate private property from citizens beyond the taxes it has constitutionally imposed. That is, Congress cannot use its taxation power to accomplish indirectly what would constitute a taking under the Fifth Amendment. While "the general tax levied by the Internal Revenue Code does not offend the Fifth Amendment," the government may <u>not</u> use its taxation power "to achieve... what the Takings Clause of the Fifth Amendment forbids if done directly." *Coleman v. Comm'r*, 791 F.2d 68, 70 (7th Cir. 1986).

The general rule is that "a Federal tax law is not violative of the Due Process Clause of the Fifth Amendment of the U.S. Constitution **unless the statute classifies taxpayers in a manner that is arbitrary and capricious.**" *Berzon v. Commissioner*, 63 T.C. 601, 606, 1975 WL 3068 (1975)(Emphasis added).. Similarly, taxation will constitute a taking if "the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation but a confiscation of property, that is, a taking of the same in violation of the Fifth Amendment, or what is equivalent thereto, was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion." *Brushaber v. Union Pac. RR*, 240 U.S. 1, 24-25, 36 S.Ct. 236, 60 L.Ed. 493 (1916).

Here, Plaintiff has alleged that her claims meet the exception for a "taking" through taxation. Quoting almost directly from *Berzon* and *Brushaber*, *supra*, Plaintiff's Complaint alleges:

> 83. The IRS' classification of services and taxpayers is arbitrary and capricious such that its collection of the 3% Excise Tax from Plaintiff and the Class did not constitute the exertion of taxation but a confiscation of property.
>
> 84. The IRS' actions were so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the conclusion that such actions were not the exertion of taxation but a confiscation of property.

Complaint at ¶¶83-84. Plaintiff has also alleged that: the IRS' refusal to obey the mandates of the judiciary, and its continued collection of the tax, is so arbitrary that it amounts to confiscation; the IRS' unequal collection of the excise tax is a gross and patent inequality; and that its exertion of taxation without statutory authority is a confiscation of property. Thus, Plaintiff's Complaint states a takings claim.

**3. There is No Tax to be Collected.**

The issue is very simple: the IRS is confiscating money from the public without any authorization. There simply is no valid tax on these telecommunications services. Instead, the IRS is confiscating this money even after the courts have said it may not do so. This is not a dispute over accounting niceties. This is a dispute over whether the IRS can collect a "tax" that does not exist.

Consider the situation that would exist if there were simply no telecommunications excise tax at all. Nonetheless, the IRS decides to invent a "tax" and declares that every telephone user must pay this $200 "tax". Then consider that, in the face of judicial prohibitions, that the IRS continues to demand under penalty of law that every citizen pay this "tax". This is not taxation. It is confiscation. It is a taking. No one would seriously contest that citizens have a constitutional right to be protected from unapproved taxation and have a constitutional right to the return of these monies. That is the case here.

**4. Defendant's Reliance on *Kerrigan* Is Misplaced.**

Defendant's Motion to Dismiss cites *Kerrigan*[2] for the proposition that: "Taxes do indeed 'take' income, but this is not the sense in which the Constitution used 'takings.'" This language is more correctly cited to *Coleman*[3], in which the court discusses the authority of the federal government to collect income tax and the limitations on taxpayers to challenge the validity of the income tax system. (*Coleman* was a non-meritorious tax protester case where the plaintiff contended that wages did not constitute income). Thus the *Kerrigan* case cited in Defendant's Motion to Dismiss is simply citing language used to describe a taxpayers' inability to challenge valid income tax laws under the Takings

[2] *Kerrigan v. United States*, 1997 WL 685275, at 5 (Fed. Cl. 1997).
[3] *Coleman v. Commissioner*, 791 F.2d at 70 (7th Cir. 1986).

Clause. It does not stand for the proposition that Congress's constitutional taxation power dispositively insulates the IRS from the unauthorized imposition and collection of *all* "taxes" from scrutiny under the Takings Clause.

This reasoning is evident when one considers the entire relevant passage in *Kerrigan* Immediately following the quote included in Defendant's Motion to Dismiss the court writes, "The Government's actions were a result of its authority to tax *income* granted to Congress under Article I, §8, clause 1 of the United States Constitution."[4] This language clearly shows that the Court was only discussing the Takings Clause as it relates to general income taxes. The federal communication excise taxes imposed under IRC § 4251 are not analogous to general income taxes. The judicial branch has already determined in a series of cases that the IRS is not permitted to assess the tax. By the multiple judicial invalidations of the IRS' attempts to levy a communications excise tax, the issue is properly evaluated under the Fifth Amendment Takings Clause. *Kerrigan* does not hold otherwise. Rather, *Kerrigan* holds that only lawful taxes are not takings: "This Court and other courts have routinely held that the *lawful* exercise of the Government's collection powers does not amount to a prohibited Fifth Amendment 'taking.'"[6]

Defendant also relies upon *Skillo v. United States*, 68 Fed.Cl. 734 (2005) in which a taxpayer, proceeding *pro se*, brought suit against the United States alleging numerous claims, including a Fifth Amendment takings claim, for improperly issuing a notice of deficiency. The Court, in its brief discussion of the Fifth Amendment, relied

---

[4] *Kerrigan*, 1997 WL 685275, at 5 (emphasis added).

[5] *Id.* (emphasis added).

on language used in *Kerrigan* and *First Atlas*. "This Court and other courts have routinely held that the **lawful** exercise of the Government's collection powers does not amount to a prohibited Fifth Amendment 'taking.'"[6] (Emphasis added). Here, in contrast, the Defendant is not collecting any tax that has been authorized by Congress. Defendant is not engaged in the lawful exercise of its collection powers. Thus, Defendant's confiscation of taxpayers' property through the continued assessment of non-existent and *illegal* excise "taxes" amounts to a prohibited Fifth Amendment taking.

**5. Defendant's Cases Confuse the Concepts of Ultra Vires and Unlawful Acts. This Court has Made it Clear that Plaintiff Does Not Need to Concede the Validity of Federal Actions for Tucker Act Jurisdiction.**

Contrary to Defendant's claims, the Plaintiff need not concede the validity of the Government's actions. Motion to Dismiss at 2; Compare *Del-Rio Drilling Programs, Inc. v. United States,* 146 F.3d 1358, 1362 (Fed.Cir.1998) *see also Rith Energy, Inc. v. United States,* 247 F.3d 1355, 1365 (Fed.Cir.2001) Defendant confuses actions that are *ultra vires* with actions that are illegal. The Federal Circuit has "drawn an important distinction between conduct that is 'unauthorized' and conduct that is authorized but nonetheless unlawful." *Del-Rio,* 146 F.3d at 1362. The "mere fact that a government officer has acted illegally does not mean he has exceeded his authority for Tucker Act purposes, even though he is not 'authorized' to break the law." *Id.* at 1362 (quoting *Ramirez de Arellano v. Weinberger,* 724 F.2d 143, 151 (D.C.Cir.1983), *rev'd,* 745 F.2d 1500 (D.C.Cir.1984) (*en banc*), *vacated on other grounds,* 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985)). Plaintiff thus may bring a takings claim, "as long as the government's action was authorized, even if the government's action was subject to legal challenge on some other ground." *Rith,* 247 F.3d at 1365.

[6] *Kerrigan*, 1997 WL 685275 at 5 (citing *First Atlas Funding Corp.*, 23 Cl.Ct at 141).

The *Del Rio* Court held that:

> As Judge (now Justice) Scalia explained for the panel in *Ramirez de Arellano v. Weinberger,* 724 F.2d 143, 151 (D.C.Cir.1983), *rev'd,* 745 F.2d 1500 (D.C.Cir.1984) (in banc), *vacated on other grounds,* 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985), "the mere fact that a government officer has acted illegally does not mean he has exceeded his authority for Tucker Act purposes, even though he is not 'authorized' to break the law." A Tucker Act remedy lies if a taking occurs while the government officer "is acting within the normal scope of his duties . . . unless Congress has expressed a positive intent to prevent the taking or to exclude government liability." *Id.*
>
> * * *
>
> Accordingly, a court's conclusion that government agents acted unlawfully does not defeat a Tucker Act takings claim if the elements of a taking are otherwise satisfied.

*Del Rio,* 143 F.3d at 1362-63

Here, the very first allegation of Plaintiff's Complaint states that the "Internal Revenue Service ("IRS") is authorized by the United States Congress to collect taxes due and owing to the United States." 26 U.S.C 6201. Complaint at ¶1. It is clearly within the 'normal scope of the official's duty' to collect taxes. However, it is also illegal to collect taxes in violation of the decisions of the Federal Courts. Here, for the purposes of Tucker Act jurisdiction, although the IRS' actions are not *ultra vires*, they are flagrantly illegal. In its Motion to Dismiss, the IRS has set forth no basis for its authority to collect this exaction. Defendant's argument that Plaintiff must concede the validity of the Government's action is simply incorrect.

**6. Summary Judgment Should Be Rendered In Favor Of Plaintiff Because The Collection of Taxes in Defiance Of The Clear and Unambiguous Language of Congress and the Courts Is Arbitrary And Capricious.**

The IRS' unlawful collection of federal excise tax is an arbitrary and capricious taking for five reasons. First, it violates the clear language of the statute. Every court, including the

Court of Claims, which has considered the issue has determined that, as a matter of law, Section 5452 is clear and unambiguous. Where Congress has been clear, the IRS' decision to "create an ambiguity" is arbitrary and capricious. *America Online*, 64 Fed.Cl. at 578 Second, the IRS is violating the clear holdings of the judiciary. It is beyond dispute that it is the province of the judiciary "to say what the law is." As a matter of law, once the judiciary states "what the law is" any transgression of the law is arbitrary and capricious.

Third, the IRS' strategic practice of refusing to appeal adverse decisions is purely arbitrary and capricious. If the IRS believes that the Courts of Appeals are in error, there can be no good faith reason to refuse an appeal while simultaneously defying the holding of the court. The IRS' responsibility is to apply the law as written by Congress and interpreted by the Courts. If it disagrees with the interpretations of the Courts, the IRS has an obligation to act in good faith by either appealing those adverse decisions or acquiescing to them.

Fourth, the IRS has no good faith basis for distinguishing between the Plaintiff here and ABIG. These taxpayers are identically-situated: they paid for identical services over the identical time frame. Yet one is liable for the tax, and the other is not. The IRS' failure to articulate a distinction between these taxpayers is arbitrary and capricious.

Fifth, and perhaps, most importantly, the IRS' policy of non-acquiescence is arbitrary and capricious. Administrative agencies are not permitted to violate the clear and unambiguous language of Congress and the Courts. *See Allegheny Gen. Hosp. v. NLRB*, 608 F.2d 965, 970 (3d Cir. 1979) (After citing the provisions of the NLRA authorizing judicial review of agency decisions and *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), the court said, '[f]or the Board to predicate an order on its disagreement with this court's interpretation of a statute is for it to operate outside the law.'); *Hyatt v. Heckler*, 579 F. Supp. 985, 999 (D.N.C. 1984), vacated and

remanded, 757 F.2d 1455 (4th Cir. 1985) (Under 'the principle of separation of powers . . . federal courts retain the ultimate authority to interpret the law.'); *Lopez v. Heckler*, 572 F. Supp. 26, 29 (C.D. Cal. 1983), aff'd in part, 724 F.2d 1489 (9th Cir.), vacated and remanded, 105 S. Ct. 583 (mem. 1984).

Circuits which have considered the question have rejected the IRS' practice here that a federal agency can legitimately ignore federal appeals court precedents. *See, e.g., Jones & Laughlin Steel Corp. v. Marshall*, 636 F.2d 32, 33 (3d Cir.1980).[7] Several courts have questioned the constitutionality of intracircuit nonacquiescence with broad references to *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958), and *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). *See, e.g., Stieberger v. Heckler*, 615 F.Supp. 1315, 1356-58 (S.D.N.Y.1985), *prelim. inj. vacated sub nom. Stieberger v. Bowen*, 801 F.2d 29 (2d Cir.1986); Lopez, 725 F.2d at 1497 n. 5.

In *Cooper*, the Supreme Court said that its interpretations of the Constitution are binding on state officials, even on those who were not parties to the case or bound by a court order. *Marbury*, according to the Cooper Court, "declared the basic principle that the federal judiciary is supreme in the exposition of the law of the Constitution"; therefore, the Court concluded, judicial interpretations of the Constitution are the "supreme law of the land," and state officials are bound by oath to follow them. 358 U.S. at 18, 78 S.Ct. at 1410. Circuit courts, for their part, have emphasized the outrageous nature of the non-acquiescence doctrine by comparing the

[7] *See also ITT World Communications v. FCC*, 635 F.2d 32, 43 (2d Cir.1980); *Ithaca College v. NLRB*, 623 F.2d 224, 228-29 (2d Cir.), cert. denied, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); *Mary Thompson Hospital, Inc. v. NLRB*, 621 F.2d 858, 864 (7th Cir.1980); *Allegheny General Hospital v. NLRB*, 608 F.2d 965, 970 (3d Cir.1979). *See also Chee v. Schweiker*, 563 F.Supp. 1362, 1364-65 (D.Ariz.1983); *Siedlecki v. Schweiker*, 563 F.Supp. 43, 46-48 (W.D.Wash.1983); *Hillhouse v. Harris*, 547 F.Supp. 88, 93 (W.D.Ark.1982). See, also., Coenen, The Constitutional Case Against Intracircuit Nonacquiescence, 75 MINN.L.REV. 1339, 1348 (1991).

actions of federal agencies to the defiance of Governor Faubus at Little Rock, noting that "[w]hat the [ Cooper ] Court said with regard to the Constitution applies with full force with regard to federal statutory law." *Lopez*, 725 F.2d at 1497 n. 5.

The IRS' right to "non-acquiesce" in judicial decisions has been rejected with regard to tax litigation. *Stacey Mfg. Co. v. Commissioner*, 237 F.2d 605, 606 (6th Cir. 1956) ("[T]he Tax Court of the United States is not lawfully privileged to disregard and refuse to follow, as the settled law of the circuit, an opinion of the court of appeals for that circuit."). The Court of Appeals in *Stacey* noted that the Tax Court operated in a similar fashion to the district courts that handle taxpayer suits for refunds and was equally bound by Courts of Appeals precedent. *Id.* at 606. *See also Stern v. Commissioner*, 242 F.2d 322 (6th Cir.), (quoting Stacey), aff'd on other grounds, 357 U.S. 34 (1958). *Allegheny Gen. Hosp. v. NLRB*, 608 F.2d 965, 970 (3d Cir. 1979) ("[O]ur judgments . . . are binding on all inferior courts and litigants in the Third Judicial Circuit, and also on administrative agencies . . .. [T]he Board is not a court nor is it equal to this court in matters of statutory interpretations. Thus, a disagreement by the NLRB with a decision of this court is simply an academic exercise that possesses no authoritative effect."); *Mary Thompson Hosp., Inc. v. NLRB*, 621 F.2d 858, 864 (7th Cir. 1980) ("Such flagrant disregard of judicial precedent must not continue . . .. [T]he Board [is] obligated under the principles of stare decisis . . .."); *Ithaca College v. NLRB*, 623 F.2d 224, 228 (2d Cir. 1980). The Ithaca College court addressed the Board's 'nonacquiescence' and stated emphatically that '[t]he position of the Board is one in which we cannot acquiesce.' *Id.* Noting the Board's 'consistent practice of refusing to

follow the law of the Circuit unless it coincides with the Board's views,' the court wrote, '[t]his is intolerable if the rule of law is to prevail.' *Id.*[8]

Non-acquiescence has also been specifically rejected in the context of class-action cases. *Lopez v. Heckler*, 572 F. Supp. 26 (C.D. Cal. 1983), (class action plaintiffs sought and obtained preliminary injunction requiring SSA to abide by Ninth Circuit decision), aff'd in part, 725 F.2d 1489 (9th Cir.), vacated and remanded, 105 S. Ct. 583 (mem. 1984); *Stieberger v. Heckler*, 615 F. Supp. 1315 (S.D.N.Y. 1985) (class action plaintiffs obtained preliminary injunction requiring SSA to follow Second Circuit precedent). Other cases attack nonacquiescence in the context of specific issues. E.g., *Holden v. Heckler*, 584 F. Supp. 463 (N.D. Ohio 1984) (plaintiffs sought and obtained injunction against the secretary's refusal to follow Sixth Circuit precedent, which adopted a 'medical improvement' standard for terminating disability recipients); *Polaski v. Heckler*, 588 F. Supp. 1004 (D. Minn. 1984) (class action plaintiff obtained preliminary injunction requiring agency to follow Eighth Circuit precedents concerning evaluation of pain); *Aldrich v. Schweiker*, 555 F. Supp. 1080 (D. Vt. 1982) (court certified class and denied motion to dismiss for lack of subject matter jurisdiction in action challenging the SSA's refusal to follow Second Circuit precedents) In *Rivera v. Heckler*, 568 F. Supp. 235 (D.N.J. 1983), the court certified a class and found subject matter jurisdiction in an action challenging the Secretary's refusal to follow Third Circuit precedents that (1) required the agency to give substantial weight

---

[8] *See also PPG Indus., Inc. v. NLRB*, 671 F.2d 817, 820-21, 23 (4th Cir. 1982) (Rejecting the hearing officer's 'feeble attempt to distinguish' the court's prior case, the court said, '[T]he Hearing Officer was obliged by law to recognize that [prior precedent] was binding authority in the Fourth Circuit and as such he was not free to disregard it.'); *Kitchen Fresh, Inc. v. NLRB*, 716 F.2d 351, 357 n.12 (6th Cir. 1983) ('the Board is bound to apply the law of the circuit in which a case arises'); *Lopez v. Heckler*, 572 F. Supp. 26, 29 (C.D. Cal. 1983) (Plaintiffs 'demonstrated probable success on the merits by making a strong argument that agencies are bound by the laws of the circuit.'), aff'd in part, 724 F.2d 1489 (9th Cir.), vacated and remanded, 105 S. Ct. 583 (mem. 1984).

to the opinion of a treating physician when that opinion was not contradicted by substantial evidence, and (2) required the agency to consider the claimant's subjective complaints of pain in evaluating disability. In evaluating plaintiffs' claim that mandamus jurisdiction was available under 28 U.S.C. § 1361 (1982), the court found 'more than colorable' the plaintiffs' claim that fifth amendment due process 'requires the Secretary to follow controlling judicial precedent.' 568 F. Supp. at 243; *see also Mayburg v. Heckler*, 574 F. Supp. 922 (D. Mass. 1983) (defining class to include persons who will meet class definitions in the future is appropriate because otherwise Department of Health and Human Services will 'persist in [its] course of conduct despite repeated adjudications that it is contrary to law.'), modified sub nom. *Mayburg v. Secretary of Health and Human Servs.* 740 F.2d 100 (1st Cir. 1984).

Thus, the IRS' non-acquiescence policy is clearly illegal. The IRS' continued confiscation of property in defiance of the orders of the federal judiciary is "arbitrary and capricious." Consequently, Plaintiff is entitled to summary judgment because the IRS's unauthorized acts are "takings."

**C. Count Two: The Collection of Excise Taxes From Only Some, But Not All Identically-Situated Taxpayers, Is The Imposition of A Non-Uniform Excise Tax.**

**1. Tucker Act Jurisdiction Is Appropriate Because The Uniform Excise Tax Clause Is A Money-Mandating Provision.**

The Uniform Excise Tax Clause, U.S. Constitution, Art. I, § 8, cl. 1 provides:

> The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States.

The Uniform Excise Tax Clause "conditions Congress' power to impose indirect taxes." *United States v. Ptasynski*, 462 U.S. 74, 80 (1983)(upholding tax on Alaskan oil, but not other oil, and reversing lower court holding that uniformity requirement necessarily requires geographic

uniformity). The Uniformity Clause is an independent basis for Tucker Act jurisdiction because, like the Takings Clause, it is a money mandating provision.[9]

The Federal Circuit has made it clear that plaintiffs who pay certain excise taxes may seek either damages or tax refunds under the Tucker Act. In *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369 (Fed.Cir.2000), cert. denied, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001), the Federal Circuit held that the Court of Claims had jurisdiction under the Tucker Act, 28 U.S.C. § 1491, over a suit filed by a taxpayer seeking monetary damages stemming from its payment of an excise tax found violative of the Export Clause of the Constitution, art. I, § 9, cl. 5. The court held that such a suit for damages could proceed even though the taxpayer had not complied with the provisions of the Internal Revenue Code of 1986 (26 U.S.C.) requiring it to exhaust administrative remedies as a precondition to filing a tax refund suit.

In *Cyprus Amax*, *supra*, a group of producers, sellers, and exporters of coal brought action in the Court of Claims seeking return of Coal Tax payments. 205 F.3d at 1371. They alleged that the tax violated the Export Clause, as well as the Fifth Amendment's Takings Clause. The plaintiffs in Cyprus comprised two subgroups that seemingly ran afoul of section 7422(a) of the Code: (i) those who did not file a claim for refund with the IRS; and (ii) those who filed a claim for refund but failed to wait the requisite period before commencing suit, see 26 U.S.C. § 6532(a).

---

[9] The Tax Clause vests exclusive taxing authority in Congress. U.S. Constitution, Art. I, § 8, cl. 1. The IRS cannot collect "taxes" that are not authorized by Congress. If Congress authorizes taxes on "oranges", the IRS cannot on its own initiative assess a tax on "apples." Here, Congress has authorized taxes only on communications services that vary by both time and distance. In violation of the taxing clause, the IRS is "laying and collecting" a tax on services that do not vary by distance. This is a money-mandating provision that also creates Tucker Act jurisdiction and for Plaintiff asserts a claim.

The Court of Claims, in fact, treated both subgroups as having failed to comply with the Code's prerequisites for filing a proper tax refund suit and dismissed their complaint for lack of jurisdiction, stating:

> [The] language [of Section 7422(a)] does not permit an exception for cases in which taxpayers may believe that they are entitled to a refund because the statute on which the tax is based is unconstitutional. For that reason, we must hold that those of plaintiffs' claims that have not been submitted to the appropriate agency pursuant to [the] statute are barred.

*Cyprus Amax Coal Co. v. United States*, Nos. 97-68T, 97-310T, 97-311T, 97-317T, 97-521T, 97-522T (Fed.Cl. Feb.2, 1999). Subsequently, the Court of Claims dismissed the action, with prejudice. The plaintiffs appealed.

The Federal Circuit reversed and held that Tucker Act jurisdiction exists where there is a money-mandating provision and that the "substantive right must be fairly interpreted as mandating compensation by the Federal Government for the damages sustained." 205 F.3d at 1373. Building on this framework, the court indicated that "[t]his appeal therefore turns on whether the Export Clause, when fairly interpreted, affords an independent cause of action for monetary remedies." *Id.* It answered the latter question affirmatively, stating:

> The necessary implication of the Export Clause's unqualified proscription is that the remedy for its violation entails a return of money unlawfully exacted. Indeed, just as Congress's power to lay taxes enables it to collect money, see U.S. Const. art. I, 8, cl. 1, the Export Clause's restriction on taxing power requires Congress to refund money obtained in contravention of the clause . . . . Thus, given a fair textual interpretation, the language of the Export Clause leads to the ineluctable conclusion that the clause provides a cause of action with a monetary remedy.

*Id.* Accordingly, the Federal Circuit held that the Export Clause was, like the Takings Clause and the Compensation Clause, a money-mandating constitutional provision, the invocation of which gives rise to jurisdiction under the Tucker Act.

The court next turned to the question whether, absent compliance with the refund claim provisions, such a suit for monetary damages was prohibited by section 7422(a) of the Code. It found that such a suit need not comply with the refund provisions, stating, "the cause of action based on the Export Clause is self-executing; that is, similar to the Compensation Clause, a party can recover for payment of taxes under the Export Clause independent of the tax refund statute." *Id.*[10] Put differently, *Cyprus* had two alternative avenues through which to obtain relief-a tax refund action or a cause of action based on the Export Clause-and either one is sufficient to invoke the Court of Federal Claims jurisdiction under the Tucker Act. 205 F.3d at 1375.

The court reemphasized the money-mandating nature of its analysis, stating that "the touchstone of our analysis in *Hatter* and in this case is that the constitutional provision relied on by plaintiffs provides for money damages," concluding further that "given that both the Compensation Clause and the Export Clause provide for money damages, there is no principled reason why a plaintiff challenging an IRS collection may sue independently of the tax refund statutes if proceeding under the Compensation Clause but is bound to follow those statutes if proceeding under the Export Clause." *Id.* Thus, taxpayers can bring a Tucker Act suit if they can state a claim under the Takings Clause or any other "money-mandating" provision.

---

[10] In so concluding, the court relied on *Hatter v. United States*, 953 F.2d 626, 627 (Fed.Cir.1992), in which it found that the plaintiffs could seek to recover social security taxes collected by the IRS allegedly in violation of the Compensation Clause without having to file a claim for refund. The court indicated that the refund provisions were not implicated in *Hatter* because "the Compensation Clause's mandatory and unconditional language presuppose[s] damages as the remedy for a governmental act violating the compensation clause." 205 F.3d at 1374. Summarizing the application of Hatter to the case at hand, the court surmised: "Thus, like the plaintiffs in *Hatter*, Cyprus was not required to pursue an administrative refund claim before filing suit because the Export Clause provides a self-executing cause of action that is not subject to compliance with the tax refund statute.

Here, the Uniform Excise Tax Clause is a money-mandating provision. Like the Export Clause, the Uniform Excise Tax Clause is structurally part of the "Spending Clauses" of the Constitution. Moreover, as a tax clause, it is inherently money-mandating just like the Export Clause. As the *Amax Cyprus* Court explained *supra* "just as Congress's power to lay taxes enables it to collect money, see U.S. Const. art. I, 8, cl. 1, the Export Clause's restriction on taxing power requires Congress to refund money obtained in contravention of the clause." Here, the Uniform Excise Tax Clause "enables [Congress] to collect money" and its "restriction on taxing power requires Congress to refund money obtained in contravention of the clause." Thus, the Uniform Excise Tax Clause is a money-mandating provision for which Tucker Act jurisdiction is appropriate.

**2. Summary Judgment Should Be Rendered In Favor Of Plaintiff Because The Federal Communications Excise Tax is Imposed In A Non-Uniform Manner.**

As "the Court stated in the *Head Money Cases,* 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884), a 'tax is uniform when it operates with the same force and effect in every place where the subject of it is found.'" *Ptasynski,* 462 U..S. at 82. The Framers of the U.S. Constitution "intended only that the tax apply wherever the classification is found." *Id. citing Knowlton v. Moore,* 178 U.S. 41, 106, 20 S.Ct. 747, 44 L.Ed. 969 (1900); *Nicol v. Ames,* 173 U.S. 509, 521-522, 19 S.Ct. 522, 527-528, 43 L.Ed. 786 (1899). In the *Head Money Cases*, Congress passed a tax on each immigrant entering the United States. The State of New York sued on the grounds that this excise tax required New York to pay higher taxes than other states with fewer immigrants. The Supreme Court held that the tax was uniform because the subject of the tax was taxed in every place it was found. Thus, uniformity depends on the similarity of the item being taxed, not upon the total amount paid by any state or any individual.

Here, the Federal Excise Tax is not being applied "wherever the classification is found." It is beyond dispute that American Bankers Insurance Group, from 1998 to the present, is not liable for the payment of federal communications excise tax on telecom services that do not vary by distance. The excise tax does not apply to ABIG for these services. However, the tax is being applied to Plaintiff for the exact same services during the same time period. Thus, the law does not "operate with the same force and effect" when it is applied to identical telecommunications services. Accordingly, the IRS' collection of the federal communications excise tax violates the Uniformity Clause. As to this, there is no dispute. Summary judgment should be awarded in favor of Plaintiff.

**3. Defendant's Cases Are Inapposite**

The error of the IRS' argument can be seen in its claim that the "statute in question in this case §4251 draws no distinction and applies to <u>anyone</u> who uses long distance." Motion to Dismiss at 5 (original emphasis). This statement is not true. Identical telecommunications services are not taxed identically. Section 4251 does **not** apply to identical communications services purchased by ABIG. Section 4251 does not apply to identical communications services purchased by OfficeMax. Section 4251 does not apply to identical communications services purchased by Amtrak. Each of these entities is not liable for the excise tax for telecommunications services purchased during time periods dating back to 1998. Contrary to IRS' claims, the excise tax provision does not apply to "<u>anyone</u> who uses long distance." Or, more correctly, using the holding in *Ptasynski,* it does not apply "wherever the classification is found." The unique problem for the IRS in this case is that there is a Constitutional guarantee of uniformity on this particular type of tax. Moreover, the IRS cannot condition this Constitutional guarantee of uniformity on any statutory or litigation-based preconditions.

Ironically, Defendant cites *Fernandez v. Weiner* 326 U.S. 340, 360 (1945). In fact, *Fernandez* supports the Plaintiff's claims. *Fernandez* holds that the Uniformity Clause "requires only that what Congress has properly selected for taxation must be identically taxed in every state where it is found." *Id.* at 361. This is the crux of Plaintiff's argument. The identical telecommunications services are not identically taxed in every state where they are found. These identical services in Florida, for example, are taxed differently based upon whether they belong to ABIG, OfficeMax, or, on the other hand, an innocent consumer. The IRS could have protected and resolved this uniformity by seeking an appeal of the *ABIG* case to the U.S. Supreme Court. Once the IRS exercised its discretion to refrain from an appeal of the ABIG case, the IRS forfeited its right to non-acquiesce and to continue to collect this tax in an arbitrary and non-uniform manner.

*Fernandez* is part of a line of cases holding that the excise taxes are "uniform" based upon the item taxed, not based upon the state where the item is or the person buying the item. Thus, if New York buys more three times more cigarettes than California, the uniformity provision is not violated simply because New York pays three times the excise tax. Similarly, if one person buys three times more cigarettes than someone else, they will pay three times the tax. Individual taxpayers do not have a "uniformity" claim simply because they are of a similar class to other taxpayers. The key issue is that the excise tax on the **item** purchased must be uniform. Thus, Defendant's reliance on *Miniature Vehicle Leasing Corp. v. U.S.*, 266 F.Supp. 697 (D.N.J. 1967)(holding that 10% excise tax is uniform) is also in error. Defendant cites *Miniature Vehicle* for the proposition that the uniformity clause does not assure equality of "individual taxpayers of a similar class." This is of course true. The similarity of the **taxpayers** is irrelevant. It is the similarity of the **items taxed** that is critical. The purchase of telecommunications services must

be taxed the same everywhere the item is found. Individuals will bring claims – but their claims are based upon the similarity of the items taxed, not whether **they** are similar to other taxpayers. The Court will not examine whether the Plaintiff is similar to ABIG. The Court will examine whether the telecommunications services are the same. Here, the taxed items are the same, but the tax assessment is not. That is why the tax is not "uniform."

### D. Count Three: Defendant's Collection of Excise Taxes In Violation of the Clear Language Of Congress and the Judiciary Constitutes An Illegal Exaction.

#### 1. Tucker Act Jurisdiction Is Appropriate For Claims Of Illegal Exactions.

The Tucker Act also provides the court with jurisdiction to entertain an illegal exaction claim, based on an asserted statutory power. *See Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1348 (Fed.Cir.2005) (quoting *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed.Cir.1996)) (stating that "[t]he Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power."). The Tucker Act "assigns to the Court of Federal Claims jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id.* at 1572 citing 28 U.S.C. § 1491(a)(1).

Tucker Act claims may be made for recovery of monies that the government has required to be paid contrary to law. *Id.* The Court of Claims explained that an illegal exaction claim may be maintained when "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum" that "was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Eastport S.S. Corp. v.*

*United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). The Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power. 178 Ct. Cl. at 605, 372 F.2d at 1007-08; *See South Puerto Rico Sugar Co. Trading Corp. v. United States,* 167 Ct. Cl. 236, 244, 334 F.2d 622, 626 (1964), cert. denied,379 U.S. 964, 85 S.Ct. 654, 13 L.Ed.2d 558 (1965) (recovery of "exactions said to have been illegally imposed by federal officials (except where Congress has expressly placed jurisdiction elsewhere)"); *United States v. Emery, Bird, Thayer Realty Co.,* 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825 (1915) (tax refund suit).

In *Eversharp, Inc. v. United States*, 129 Ct.Cl. 772, 776, 125 F.Supp. 244, 247 (1954) the Court of Claims held that on the allegation that the government had illegally exacted money by enforcement of a regulation that was contrary to statute, the court had jurisdiction under the Tucker Act to render judgment against the United States for recovery of that money. Similarly in *Mallow v. United States*, 161 Ct.Cl. 446, 450 1963 WL 8503 (1963), the court held that the Tucker Act provided jurisdiction in the Court of Claims for recovery of money that the government illegally collected from the plaintiff as fines under void convictions and sentences. *See also Suwannee S.S. Co. v. United States,* 150 Ct.Cl. 331, 335-36, 279 F.2d 874, 876 (1960) (ship owner may recover payment illegally exacted as a condition of receiving permission to sell ship to a foreign purchaser); *Seatrade Corp. v. United States*, 152 Ct.Cl. 356, 360, 285 F.2d 448, 450 (1961) (same). Thus, Tucker Act jurisdiction is appropriate for claims of an illegal exaction.

2. **Defendant's Collection of Federal Excise Taxes Constitutes An Unlawful Exaction.**

As the Court of Claims held in *Clapp v. United States*, 127 Ct.Cl. 505, 512, 117 F.Supp. 576, 580, cert. denied,348 U.S. 834, 75 S.Ct. 55, 99 L.Ed. 658 (1954), an illegal exaction occurs

when "the Government has the citizen's money in its pocket." Suit can then be maintained under the Tucker Act to recover the money exacted. 127 Ct.Cl. at 513, 117 F.Supp. at 580; *Pan American World Airways v. United States*, 129 Ct.Cl. 53, 55, 122 F.Supp. 682, 683-84 (1954) ("the collection of money by Government officials, pursuant to an invalid regulation" is an illegal exaction and not a tort); *Carriso v. United States,* 106 F.2d 707, 712 (9th Cir.1939) (when a government agent construes a statute as remaining in effect after it has been repealed and uses it as a basis to collect fees, a claim to recover the fees is "founded upon a law of Congress" and "does not sound in tort").

An illegal exaction claim may lie if the government required payment to it "directly or in effect," *Eastport,* 178 Ct.Cl. at 605, 372 F.2d at 1007. The amount exacted and paid may be recovered whether the money was paid directly to the government, or was paid to others at the direction of the government to meet a governmental obligation. In *Camellia Apartments, Inc. v. United States*, 167 Ct.Cl. 224, 334 F.2d 667 (1964), cert. denied,379 U.S. 963, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965), the Federal Housing Administration required the plaintiffs to pay private mortgagees a charge on behalf of the FHA, allegedly in violation of statute and by misconstruction of a regulation; the Tucker Act provided jurisdiction to determine whether the charges were illegally exacted by the government.

If a plaintiff fails "to establish that the exaction was contrary to law, that failure does not deprive the court of jurisdiction, but serves as an adjudication on the merits. *Bell v. Hood*, 327 U.S. at 682, 66 S.Ct. at 776. We thus turn to the question of whether the authorization on which the Service relies was misinterpreted, misapplied, or invalid, in determining whether 'the plaintiff has paid money over to the Government, directly or in effect, in contravention of [law].' *Eastport*, 178 Ct.Cl. at 605, 372 F.2d at 1007." *Aerolineas Argentinas*, 77 F.3d at 1574.

Here, Plaintiff has alleged a claim for illegal exaction. Complaint at ¶¶ 92-96. Specifically, Plaintiff alleged that "property belonging to Plaintiff and the Class was unlawfully exacted because the IRS acted, *inter alia*, in violation of 26 U.S.C. 4252, in violation of the orders of the judiciary, and in violation of the Constitutional provisions cited herein." Complaint at ¶94. Plaintiff has also alleged that she has paid money over to the government. Complaint at ¶16. Plaintiff has further alleged that this tax was unauthorized or otherwise in contravention of the law. Complaint, *passim*.

Here, summary judgment is appropriate. There is no genuine dispute that the Plaintiff and the Class have paid federal communications excise tax for services that are not billed on the basis of time and distance. Rosenberg Decl. at ¶ 2. It is also clear that Defendant's collection of this tax is unlawful. *ABIG, supra; OfficeMax, supra*; and *Amtrak, supra*. Finally, it is not disputed that Defendant retains this money. In short, the Defendant "has the citizen's money in its pocket." Accordingly, the Court should award summary judgment in favor of Plaintiff on Count Three alleging illegal exactions.

**E. Count Four: Plaintiff Is Entitled To A Refund Of Communication Excise Taxes.**

**1. Summary Judgment Should Be Rendered In Favor Of Plaintiff Because There Can Be No Dispute That The Collection of The Excise Tax Is Unlawful.**

As a matter of law, the IRS is not entitled to collect federal excise tax on telecommunications services that are not billed on the basis of both time and distance. *American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005); *Office Max, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004) *aff'd* 2005 WL 2861031 (6th Cir. 2005); *National Railroad Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005); *Fortis, Inc. v. United States*, 2004 U.S. Dist. Lexis 18686 (S.D.N.Y. 2004); *Reese Bros., Inc. v. United States*, 2004

WL 2901579 (W.D. Pa. 2004); H*oneywell Int'l, Inc. v. United States,* 64 Fed. Cl. 188 (Fed. C1. 2005); *America Online, Inc v. United States*, 64 Fed. C1. 571 (Fed. C1. 2005) and *Hewlett-Packard Co. v. United States*, 2005 WL 1865419 (N.D. Cal. August 5, 2005).

Plaintiff purchased telecommunications services. These services were not billed on the basis of distance. Nonetheless, Plaintiff was assessed federal excise tax on these services. Plaintiff fully paid these taxes even though they are unlawful. The IRS retains these funds. Summary judgment should be granted in Plaintiff's favor because there is no genuine dispute of material fact that Plaintiff paid federal excise tax which was unlawfully assessed.

2. **Defendant's Conduct Is A Pre-Emptive Denial Of Plaintiff's Refund Request.**

Requiring all long distance users to request a refund individually would be futile in the face of the IRS' announced intention to collect the tax. Notice 2005-79. Courts have recognized a futility exception where an agency like the IRS has announced, and followed, a policy of judicial non-acquiescence. In *Lopez v. Heckler*, 725 F.2d 1489 (9th Cir.1984), vacated on other grounds and remanded,469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984), the court noted that: "The district court evaluated the Secretary's arguments and decided that the plaintiffs' failure to exhaust their administrative remedies was excusable because it would have been futile to require plaintiffs to pursue administrative remedies in the face of the Secretary's announced policy of nonacquiescence. The district court's analysis finds strong support in two decisions that were thoroughly considered and discussed by Judge Gray in his opinion: *Weinberger v. Salfi*, 422 U.S. 749, 765-66, 95 S.Ct. 2457, 2466-67, 45 L.Ed.2d 522 (1975); and *Ringer v. Schweiker*, 697 F.2d 1291 (9th Cir.1983)."

*Lopez* also noted that there is "additional support for the district court's conclusion that the section 405(g) exhaustion requirement does not apply in this case. First, plaintiffs have raised

constitutional challenges to the Secretary's nonacquiescence policies. The Second Circuit has held that the exhaustion requirement should be waived where constitutional challenges similar to the ones in this case are raised. *See Jones v. Califano,* 576 F.2d at 18-19. *See also Mathews v. Eldridge*, 424 U.S. at 330, 96 S.Ct. at 900, 47 L.Ed.2d at 30 ("It is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context. The Secretary would not be required to even consider such a challenge.")."

*Lopez* held further that "the Third Circuit has decided that, even as to statutory rather than constitutional issues, the exhaustion requirement can be waived whenever the Secretary has taken a "final position" on a question. *See Liberty Alliance for the Blind v. Califano*, 568 F.2d at 346 ("The test for exhaustion of a statutory issue in an individual case ··· should be whether the Secretary has taken a final position on that issue. In the class context the test should be no different."). *See also Jones v. Califano*, 576 F.2d at 19 (waiver of exhaustion requirement when "the Secretary had had ample opportunity . . . to modify his position.")."

Here, the IRS' Notice 2005-79 announces its non-acquiescence and reaffirms that it will not grant, and will not even process any refund requests from taxpayers. This notice operates as an anticipatory denial of taxpayer refund requests. Thus, to the extent that Plaintiff is required to exhaust administrative remedies, this condition is satisfied under the well-settled futility exception.

**3. In The Alternative, Defendant Has Waived Plaintiff's Refund Requests.**

In the alternative, the IRS' policy of non-acquiescence operates as a waiver of any requirement of an administrative refund request. The IRS waives the formal refund requirements where it has investigated the issue and has made a decision on the merits.

In *Dale Distributing Co. v. Commissioner*, 269 F.2d 444 (2d Cir. 1959), the Court held that the IRS could waive technical requirements relating to the prior filing of a refund request.

Moreover, in *Continental Illinois Nat. Bank & Trust Co. v. U.S.*, 39 F. Supp. 620, 623 (Ct. Cl. 1941) the Court refused to dismiss a request for a refund where the IRS' "defense is wholly technical and, in view of the facts disclosed, is base on a matter of form rather than substance." Here, the IRS makes absolutely not substantive claim that is has any right to collect the taxes at issue.

In *Dale, supra*, the Court noted that it "is clear from decisions of the Supreme Court that formal requirements of Treasury Regulations as to claims for refund of taxes may be waived by the Commissioner through his agents by investigating the merits of the claim." *Id.* at 446. The *Dale Court* observed that in *Tucker v. Alexander*, 275 U.S. 228, 231, 48 S.Ct. 45, 46, 72 L.Ed. 253, the Court held:

> If the Commissioner is not deceived or misled by the failure to describe accurately the claim, as obviously he was not here, it may be more convenient for the government and decidedly in the interest of an orderly administrative procedure that the claim should be disposed of upon its merits * * * We can perceive no valid reason why the requirements of the regulations may not be waived for that purpose.

In *Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 65 S.Ct. 1162, 89 L.Ed. 1619, the Court held that the Commissioner may be shown to have waived the formal requirements of the regulations, if the merits of the claim have been examined and the "attention of the Commissioner's agents have been focused on the merits of the dispute, but the evidence must be clear that they understood the specific claim that was made even though there was a departure from form in its submission." *Cited in Dale, supra.* "Even tax administration does not as a matter of principle preclude considerations of

fairness." *Angelus Milling*, 325 U.S. at 297; *See also W. K. Buckley, Inc. v. Commissioner*, 2 Cir., 158 F.2d 158, 161; *National Forge & Ordnance Company v. United States,* 151 F.Supp. 937, 941, 139 Ct.Cl. 204, 222.

Here, the IRS cannot compel a futile act. The IRS is fully aware of the merits of Plaintiff's claims. The Commissioner has not been deceived, and his agents have fully investigated the merits of the claim. Indeed, the Commissioner has investigated and litigated the merits of this case in numerous federal courts. The IRS' declaration that it will not follow the law, waives the requirement that Plaintiff file a futile administrative request.

## CONCLUSION

For all the foregoing reasons, this Court should deny Defendant's Motion to Dismiss and grant Plaintiff's Cross-Motion for Summary Judgment.

March 20, 2006

Respectfully submitted,

/s/ Sheldon H. Sloan

COUNSEL OF RECORD:

Sheldon H. Sloan (CA Bar #32334)
Lewis Brisbois Bisgaard & Smith
550 West C Street, 8th Floor
San Diego, CA 92101
Phone: (619) 233-1006
Fax: (619) 233-8627
E-mail: sloan@lbbslaw.com

OF COUNSEL:

Richard F. Scruggs (MS Bar # 6582)
Sidney A. Backstrom (MS Bar # 99890)
Scruggs Law Firm, P.A.
P.O. Box 1136
120A Courthouse Square
Oxford, MS 38655
Tel: (662) 281 1212
Fax: (662) 281 1312
Email: dickscruggs@scruggsfirm.com
Email: sbackstrom@scruggsfirm.com

R. Gaylord Smith (CA Bar #72726)
Lewis Brisbois Bisgaard & Smith
550 West C Street, 8th Floor
San Diego, CA 92101
Phone: (619) 233-1006
Fax: (619) 233-8627
E-mail: smith@lbbslaw.com

Mark Griffin (OH Bar #0064141)
Law Offices of Mark Griffin
175 Honeybelle Oval
Orange, Ohio 44022
Phone : (216) 346-7376
Fax : (216) 861-6679
E-mail : telecomlaw@hotmail.com

Randy J. Hart (OH Bar #0046793)
200 Public Square
Suite 3300
Cleveland, Ohio 44113
Phone: (216) 978-9150
Fax: (216) 241-2824
E-mail: csuosu@msn.com

R. Eric Kennedy, Esq. (OH Bar #0006174)
Daniel P. Goetz, Esq. (OH Bar #0065549)
Weisman, Kennedy & Berris Co., L.P.A
1600 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115
Tel: (216) 781-1111
Fax: (216) 781-6747
Email: ekennedy@weismanlaw.com
Email: dgoetz@weismanlaw.com

***Attorneys for Plaintiff***

LEWIS BRISBOIS BISGAARD & SMITH LLP
550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

**DECLARATION OF LINDA ROSENBERG**

I, Linda Rosenberg, declare as follows:

1. I am a school teacher residing in La Jolla, California. I have personal knowledge of the facts set forth herein, and if called upon as a witness to testify thereto, I could competently and truthfully do so.

2. For at least the last six years I have purchased telecommunication services, including long-distance communications which did not provide unlimited access to a local exchange; and/or were not billed based on both and time and distance.

3. I was charged and paid Federal excise tax for these services which I have paid in full. I have never received any refund of the Federal excise tax that I paid on such telecommunications services.

4. I have through my attorneys caused a copy of the complaint in this matter to be served on the IRS.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on March 17, 2006, at San Diego, California.

[signature]
Linda Rosenberg



EXHIBIT A