**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| LINDA ROSENBERG, | ) CASE NO.: 05-1272-T |
| | ) JUDGE SUSAN BRADEN |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant | ) |
| | ) |

---

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

---

# TABLE OF CONTENTS

Page

Table of Authorities . . . . -ii-

I. SUMMARY OF ARGUMENT . . . . 1

II. STATEMENT OF FACTS . . . . 3

A. Parties . . . . 3

B. The IRS Is Defying the Courts By Collecting Revenue Not Authorized by Congress. . . . . 4

C. All Class Members Have the Same Claim and the Same Futility Argument . . . . . 6

D. Nature of The Claims . . . . 8

III. CLASS CERTIFICATION IS APPROPRIATE . . . . 9

A. The Requirements of Rule 23 of the Court of Federal Claims Are Satisfied. . . . . 9

B. The Class Satisfies All of the Criteria Of Rule 23(a). . . . . 11

1. The Class Is So Numerous That Joinder of All Members is Impracticable . . . . 11

2. There Are Common Questions of Law and Fact Shared by the Class . . . . 12

3. Plaintiff's Claims Are Typical . . . . 13

4. Plaintiff Will Adequately Represent the Interests of the Proposed Class . . . . 14

C. The Class Satisfies All of the Criteria of Rule 23(b). . . . . 14

1. The IRS Has Acted or Refused to Act on Grounds Generally Applicable to the Class. . . . . 14

2. The Class Satisfies the Criteria of Rule 23(b)(2). . . . . 15

a. Common Legal Issues Predominate Over Questions Affecting Only Individual Members . . . . . . . . . . . . . . . . . . . . . . 15

b. A Class Action is Superior to the Other Available Methods for the Fair and Efficient Adjudication of the Controversy. . . . . 18

(1) A Class Action is Necessary for Complete Relief. . . . . . . 18

(2) Only a Class Action Can Put An End to Continued Non-Acquiescence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

(3) Only a Class Action Protects Claims from Statute of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

(4) The Class is Manageable. . . . . . . . . . . . . . . . . . . . . . . . 20

(5) A Class Action Is Superior Because It Avoids The Expense, Errors And Fraud Of Processing Individual Refund Requests. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

**Federal Cases**

*Abrams v. United States*, 57 Fed. Cl. 439 (2003) . . . . . . . . . . 13

*Allegheny General Hospital v. NLRB*, 608 F.2d 965 (3d Cir. 1979) . . . . . . . . . . 8

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) . . . . . . . . . . 14

*America Online, Inc. v. United States*, 64 Fed. Cl. 571 (2005) . . . . . . . . . . 5, 12

*American Bankers Insurance Group v. United States*, 408 F.3d 1328 (11th Cir. 2005) . . . . . . . . 4

*Barnes v. United States*, 68 Fed. Cl. 492 (2005) . . . . . . . . . . 9, 10, 12, 14, 16

*Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657 (E.D. Pa. 1980) . . . . . . . . . . 11

*Berkley v. United States*, 45 Fed. Cl. 224 (1999) . . . . . . . . . . 9, 12, 13

*Brushaber v. Union Pac. Railway*, 240 U.S. 1 (1916) . . . . . . . . . . 16

*Cf. Hanover Bank v. Commissioner*, 369 U.S. 672 (1962) . . . . . . . . . . 7

*Chee v. Schweiker*, 563 F. Supp. 1362 (D. Ariz. 1983) . . . . . . . . . . 8

*Childress v. Secretary of Health & Human Services*, 679 F.2d 623 (6th Cir. 1982) . . . . . . . . . . 7

*Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, [3 L.Ed.2d 5] (1958) . . . . . . . . . . 8

*Divine v. Commissioner*, 59 T.C. 152 (1973) . . . . . . . . . . 7

*In re: Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992) . . . . . . . . . . 13

*Favreau v. United States*, 48 Fed. Cl. 774 (2000) . . . . . . . . . . 12

*Fisher v. United States*, 69 Fed. Cl. 193, 198 (2006) . . . . . . . . . . 9, 10

*Fisher and Sanvooke v. United States,* 8 Cl. Ct. 327 (1985) . . . . . . . . . . 17, 19

*Fortis, Inc. v. United States*, --- F.Supp.2d ----, 2005 WL 356827,
(S.D.N.Y. Feb 14, 2005) . . . . . . . . . . 4, 5

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . . 13

*Golsen v. Commissioner*, 54 T.C. 742 (1970),
aff'd, 445 F.2d 985 (10th Cir. 1971), cert. denied, 404 U.S. 940 (1971) . . . . . . . . . . . . . 7

*Hannon v. United States*, 31 Fed. Cl. 198 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 18

*Hewlett-Packard Co. v. United States*, 2005 WL 1865419 (N.D. Cal. August 5, 2005) . . . . . . . 5

*Hillhouse v. Harris*, 547 F. Supp. 88 (D. Ark. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Honeywell Int'l, Inc. v. United States*, 64 Fed. Cl. 188 (2005) . . . . . . . . . . . . . . . . . . . . . . . 5, 12

*Hyatt v. Heckler*, 807 F.2d 376 (4th Cir. 1986),
cert. denied, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987) . . . . . . . . . . . . . . . . . . . 7

*ITT World Communications v. FCC*, 635 F.2d 32 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . 8

*Ithaca College v. NLRB*, 623 F.2d 224 (2d Cir. 1980),
cert. denied, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980) . . . . . . . . . . . . . . . . . 8

*Jones & Laughlin Steel Corp. v. Marshall*, 636 F.2d 32 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . 7

*Lopez v. Heckler*, 725 F.2d 1489 (9th Cir.1984), vacated on other grounds
and remanded, 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984) . . . . . . . . . . . . . . 8

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mary Thompson Hospital, Inc. v. NLRB*, 621 F.2d 858 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . 8

*Moore v. United States*, 41 Fed. Cl. 394 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 19

*National R.R. Passenger Corp. v. United States*, 338 F. Supp. 2d 22 (D.D.C. 2004) . . . . . . . . . 5

*National Railroad Passenger Corp. v. United States*, 431 F.3d 374 . . . . . . . . . . . . . . . . . . . . . 4

*Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*OfficeMax, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004) aff'd
428 F.3d 583, 96 A.F.T.R.2d 2005-6824, 2005 Fed. App. 0435P (6th
Cir.(Ohio) Nov 02, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Orantes-Hernandez v. Smith*, 541 F. Supp. 351 (C.D. Cal. 1982) . . . . . . . . . . . . . . . . . . . . . . 11

*Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Quinault v. Allottee Association v. United States*, 19 Ct. C, 453 F.2d 1272 (1972) . . . . . . 10, 13

*Reese Bros., Inc. v. United States*, 2004 WL 2901579 (1985) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Siedlecki v. Schweiker*, 563 F. Supp. 43 (W.D. Wash. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Stieberger v. Bowen*, 801 F. 2d 29 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Stieberger v. Heckler*, 615 F. Supp. 1315 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Taylor v. United States*, 41 Fed. Cl. 440 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20

**Federal Statutes**

26 U.S.C. § 4252 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

26 U.S.C. § 6201 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

26 U.S.C. § 7430 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2(a)(1) . . . . . . . . . . . . . . . . . . . . . . 10

**Other Authorities**

U.S. Dept of Treasury, *The Budget for FY 2007* at p. 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

1 Newberg on Class Actions § 3.10, at 3-50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

U.S. Const., art. 1, § 8, cl. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## I. SUMMARY OF ARGUMENT

Plaintiff Linda Rosenberg requests that this Court certify a class of taxpayers who Defendant has unlawfully forced to pay a purported federal excise tax ("FET") on certain telecommunications services. Despite the unambiguous language of Congress and the unanimous orders of the Judiciary, the Internal Revenue Service ("IRS") continues to defy the law and illegally exact the purported FET even after all courts have held it does not apply to modern telecommunication charges. By refusing to follow those judicial decisions, the IRS is effectively evading judicial review and managing to collect large amounts of revenue for which there is no congressional authorization.

Certification of this class is an appropriate response to the IRS' defiance of law. As a practical matter, class certification is the only way millions of consumers can ever recover these illegal exactions. The IRS has announced in writing that refund requests for the FET "will not be processed,"[1/] making any agency demands for refunds an exercise in futility. The IRS refuses to be bound by the two decisions of this court (and the many decisions of other federal courts), instead relying upon a cynical application of the doctrine of agency "non-acquiescence." Thus, absent class certification, there is no remedy whatsoever for over 100 million ordinary consumers unless they make 100 million futile refund applications, wait six months to file suit, and then file 100 million lawsuits to litigate *de novo* the legality of the FET. The only effective remedy for this agency mis-conduct is class certification.

In 2005, the IRS took approximately $3 billion from American taxpayers under the guise of this putative FET. The size of this illegal extraction supplies IRS' motive for defying the law:

---

[1/] Notice 2005-79, discussed *infra* at 5-6.

by forcing consumers to make refund requests, refusing to "process" them, and relegating consumers to individual taxpayer lawsuits, IRS is able to collect revenue *de facto* which *de jure* is not permitted. The rules regarding refund requests were never intended to be used to engineer such "off the statute books" revenue collection. Only IRS' reliance on the "non-acquiescence" doctrine makes this illegal revenue scheme possible and – unless a class is certified – effectively immune from judicial review.

A class action is the only means of assuring that Americans will get their money back, and remove Defendant's incentive to ignore the law. The proposed class fulfills all of the requirements of RCFC 23. The class will be so numerous that joinder is impractical. Indeed, the class exceeds one hundred million taxpayers. Commonality is satisfied because every class member has the same claim: that Defendant improperly collected the FET on services that did not vary by time and distance.

Typicality is satisfied because Plaintiff has the same claim as each proposed class member. The IRS has acted on grounds generally applicable to the class because it has followed a policy of collecting the FET and refusing to acquiesce to the decisions of the United States Courts. *See, e.g.,* Notice 2005-79. Adequacy of representation is satisfied because Plaintiff has no conflicts with the class and because Plaintiff has experienced legal counsel.

Common issues predominate over individual issues because all plaintiffs share the same legal claims that Defendant's actions constitute an unlawful taking that Defendant has committed an illegal exaction; and that Defendant has waived any refund requirement. The only relevant individual issue is simply a ministerial calculation of damages – a factor that Courts generally agree will not defeat class certification.

Finally, class certification is superior to individual adjudication for numerous reasons. For example, only class certification will provide complete relief to the class. Class certification will best prevent continued defiance of the Courts by Defendant. Class certification will best allow the efficient volume-utilization of the telephone carriers' databases to reduce costs, assure cross-checking with billing records, reduce fraud, reduce mistakes, and reduce paper processing costs. Because all of these records are computerized, it makes no sense to proceed on an individual basis.

Defendant asserts that no court has the ability to prevent its illegal takings or to order complete relief. Plaintiff disagrees. Plaintiff believes that the only way to uphold the law and to provide a remedy is to grant class certification. For these reasons, as set forth in further detail below, the Court should certify this class.

## II. STATEMENT OF FACTS

### A. Parties

Plaintiff, Linda Rosenberg, is a schoolteacher who resides in La Jolla, California. Plaintiff represents a putative class of similarly-situated individuals and business entities.

The proposed class is defined as: Individuals and business entities in the United States which paid the FET in the United States on telecommunications services they purchased which: 1) did not provide unlimited access to a local exchange; and 2) were not billed on the basis of time and distance. Excluded from the class are individuals and business entities that have requested or received a refund of the FET, any employees of the IRS, and any employees of the Court of Federal Claims.

Defendant is the United States. The Internal Revenue Service ("IRS") is authorized by the

United States Congress to collect taxes due and owing to the United States. 26 U.S.C 6201 et seq.

**B. The IRS Is Defying the Courts By Collecting Revenue Not Authorized by Congress**.

For years, the IRS has been collecting the federal communications excise tax on telecommunications services that are not billed on the basis of distance. Section 4252 of the Internal Revenue Code clearly and unambiguously requires that for the tax to be applicable, the telecommunications carrier must provide unlimited service to a local exchange or the charge must vary based upon both time *and* distance. 26 U.S.C. §4252(b).

Over the last three years, nearly a dozen major American companies have successfully challenged the IRS's attempts to collect federal communications excise tax on telecommunications services that are not billed on the basis of distance. In those cases, three United States Courts of Appeals have ruled against the IRS. *American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005); *OfficeMax, Inc. v. United States*, 428 F.3d 583 (6th Cir. 2005), rehearing and rehearing en banc denied (Mar 30, 2006); *National Railroad Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005). Notably, the IRS chose not to seek review in the U.S. Supreme Court in any of these cases. Instead, it has elected to fight a war of attrition with taxpayers, utilizing procedural rules to collect an unauthorized FET. Because the IRS' refusal to seek *certiorari* precludes Supreme Court review, this illegal exaction will continue until this Court stops it by certifying the class and resolving this issue on the merits once and for all.

The IRS has lost on the merits of every other case deciding the validity of the FET, including two cases before the Court of Claims. *Fortis, Inc. v. United States*, --- F.Supp.2d ----, 2005 WL 356827, 95 A.F.T.R.2d 2005-1121 (S.D.N.Y. Feb 14, 2005) ("*Fortis*"); *National R.R.*

*Passenger Corp. v. United States*, 338 F. Supp. 2d 22 (D.C. Cir. 2004) ("*Amtrak*"); *Reese Bros., Inc. v. United States*, 2004 WL 2901579 (W.D. Pa. 2004) ("*Reese Brothers*"); *Honeywell Int'l, Inc. v. United States*, 64 Fed. Cl. 188 (Fed. Cl. 2005) ("*Honeywell*"); *America Online, Inc. v. United States*, 64 Fed. Cl. 571 (Fed. Cl. 2005) ("*AOL*"); and *Hewlett-Packard Co. v. United States*, 2005 WL 1865419 (N.D. Cal. August 5, 2005) ("*HP*"). Every one of these Courts awarded or upheld summary judgments for the plaintiffs.

In awarding summary judgment for plaintiffs, this Court held that "if the statutory language no longer fits the infrastructure of the industry, the IRS needs to ask for congressional action to bring the statute in line with today's reality. It cannot create an ambiguity that does not exist or misinterpret the plain meaning of statutory language to bend an old law toward a new direction." *America Online*, 64 Fed.Cl. at 578 (quoting *Nat'l R.R.*, 338 F.Supp.2d at 27-28). Other federal courts have agreed with the Court of Claims and have concluded that the defined scope of the tax is "clear and unambiguous." *See America Online*, 64 Fed.Cl. at 577-78 ("Section 4252(b)(1) unambiguously requires that a toll charge vary in amount according to both the distance and duration of calls."); *Honeywell Int'l, Inc. v. United States*, 64 Fed.Cl. at 199 (finding § 4252(b)(1)'s phrase "distance and elapsed transmission time" "unambiguous" ) (quoting *Office Max*, 309 F.Supp.2d at 995); *Nat'l R.R. Passenger Corp*., 338 F.Supp.2d at 27-28 (finding phrase unambiguous; "and" intended conjunctively); *Fortis, Inc*. 2004 WL 2085528, at *6 (same), *Reese Bros., Inc. v. United States*, 2004 WL 2901579, slip op. at *7 (same).

Notwithstanding all of these adverse rulings, as recently as October 20, 2005, the IRS announced that it will not follow these Courts' decisions, even in these courts' own jurisdictions. Notice 2005-79. In fact, the IRS has ordered telecommunications carriers to continue assessing

and collecting these taxes without regard to the decisions of the Courts. *Id*. The IRS further demanded under penalty of law that taxpayers "are required to pay the tax to a collecting agent (the person receiving the payment on which tax is imposed), and collecting agents are required to pay over the tax to the United States Treasury and to file the required returns." *Id.*

This year, Defendant expects to collect a total of approximately $5 billion in FET on telecommunications services. Of this gross $5 billion, approximately $2 billion is properly levied on unlimited local exchange services or is otherwise taxable. Thus, Plaintiff estimates that Defendant will take $3 billion from taxpayers in violation of Congressional authorization and a statute that is "clear and unambiguous."

Clearly, $3 billion is a significant sum to this class, although it may be a small portion of the total federal budget. Next year, the Federal government will spend $2.77 trillion. U.S. Dept of Treasury, *The SFY 2007* at p. 54. It is no defense to lawless agency action that its error is too egregious to remedy.[2/] Unless the class is certified, there will be no adequate remedy, as the IRS will be able to continue to parlay its mis-use of the “non-acquiescence” doctrine into an enormous revenue scheme entirely outside the law.

**C. All Class Members Have the Same Claim and the Same Futility Argument.**

All class members have in common the fact that they have paid the same illegal tax. The FET is illegal for the same reasons for all class members. Defendant’s primary defense – that the class members have not made individualized refund requests – is common to all the class members, and overcome by the identical response: that any effort to seek a refund would be

---

[2/] Although this is a large amount of revenue, it is a small part of the national budget. The annual revenue collected by the FET is one-tenth of one percent of next year’s federal budget ($3 billion divided by $2.77 trillion).

futile because those requests "will not be processed," and the IRS will invoke “non-acquiescence in all taxpayer lawsuits. Class treatment is necessary to address these uniform issues which impact millions of consumers identically (except as to amounts paid). The only judicial antidote to this unlawful adoption of a policy of "non-acquiescence" is class certification.

The IRS continues its actions of collecting an invalid tax based on its asserted right to not "acquiesce" in the decisions of any federal court other than the United States Supreme Court. *See, e.g., Divine v. Commissioner*, 59 T.C. 152, 159 (1972). (government has right to relitigate issues which have been decided against it in one or more courts of appeals). *Cf. Hanover Bank v. Commissioner*, 369 U.S. 672, 675-76 (1962) (government relitigated where four circuit courts decided issue in favor of taxpayer); *Golsen v. Commissioner*, 54 T.C. 742, 756 (1970) (government relitigated issue despite circuit court's previous ruling in favor of taxpayer), aff'd, 445 F.2d 985 (10th Cir.), cert. denied, 404 U.S. 940 (1971). Under the "non-acquiescence" doctrine, the IRS will apply a Court's decision only to the specific plaintiff in a case decided by a federal court and declines to apply said holdings to other identical taxpayers, thus, continuing to assess unlawful taxes against all other citizens.[3/] Such a "right" to not acquiesce is being

---

[3/] The “non-acquiescence” doctrine has been condemned by almost every circuit court of appeals that has confronted it. *See, e.g., Hyatt v. Heckler*, 807 F.2d 376, 379 (4th Cir.1986), cert. denied,484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987); *Stieberger v. Bowen*, 801 F.2d 29, 36-37 (2d Cir.1986); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); *Lopez v. Heckler,* 725 F.2d 1489 (9th Cir.1984), vacated on other grounds and remanded,469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984) (mem.); *Childress v. Secretary of Health & Human Servs.*, 679 F.2d 623, 630 (6th Cir.1982). Circuits which have considered the question have already rejected the Commissioner’s argument that a federal agency can legitimately ignore federal appeals court precedents. *See, e.g., Jones & Laughlin Steel Corp. v. Marshall*, 636 F.2d 32, 33 (3d Cir.1980). *See also ITT World Communications v. FCC*, 635 F.2d 32, 43 (2d Cir.1980); *Ithaca College v. NLRB*, 623 F.2d 224, 228-29 (2d Cir.), cert. denied, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); *Mary Thompson Hospital, Inc. v. NLRB*, 621 F.2d 858, 864 (7th Cir.1980); *Allegheny General Hospital v. NLRB*, 608 F.2d 965, 970 (3d Cir.1979). *See also Chee v.*

employed with respect to the instant "tax." While at least two families of corporate taxpayers no longer have to pay the "tax" because the cases are concluded and the IRS has chosen not to appeal (see *American Bankers* and *OfficeMax, supra*), the instant Plaintiff and those she seeks to represent do. Thus, for the same services, over the same time period, ABIG was not required to pay this tax while plaintiffs are so required.

**D. Nature of The Claims**

For at least six years, Plaintiff has purchased telecommunications services. Those telecommunications services did not provide unlimited access to a local exchange; and were not billed on the basis of both time and distance. Plaintiff nonetheless was charged federal excise tax for these services. Plaintiff has paid this tax in full. Plaintiff and the Class paid federal excise tax on such telecommunications services and have not received a refund of such taxes.

On December 9, 2005, Plaintiff filed the instant class action Complaint alleging claims for constitutional violations of an unlawful taking and non-uniform imposition of an excise tax, illegal exaction and a refund.

## III. CLASS CERTIFICATION IS APPROPRIATE

**A. The Requirements of Rule 23 of the Court of Federal Claims Are Satisfied.**

---

*Schweiker*, 563 F.Supp. 1362, 1364-65 (D.Ariz.1983); *Siedlecki v. Schweiker*, 563 F.Supp. 43, 46-48 (W.D.Wash.1983); *Hillhouse v. Harris*, 547 F.Supp. 88, 93 (W.D.Ark.1982). Several courts have even questioned the constitutionality of intracircuit nonacquiescence with broad references to *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958), and *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). *See, e.g., Stieberger v. Heckler*, 615 F.Supp. 1315, 1356-58 (S.D.N.Y.1985), *prelim. inj. vacated sub nom. Stieberger v. Bowen*, 801 F.2d 29 (2d Cir.1986); *Lopez*, 725 F.2d at 1497 n. 5.

Pursuant to RCFC 23, Plaintiff requests that this court certify a class defined as:

> Individuals and business entities which paid the FET in the United States on telecommunications services they purchased which: 1) did not provide unlimited access to a local exchange; and 2) were not billed on the basis of time and distance. Excluded from the class are individuals and business entities that have requested or received a refund of the FET, any employees of the IRS, and any employees of the Court of Federal Claims.

This matter satisfies all of the requirements of RCFC 23. Although some earlier opinions suggested that class actions were disfavored in this Court, it is now apparent that the disfavored status of class actions was a "legal fiction" and that class actions are a vital element in this court's arsenal for handling these types of cases. "At the outset it appears that there was never any basis for language in these cases indicating that class actions are 'disfavored'." *Fisher v. United States*, 69 Fed. Cl. 193, 198 (2006). "Research reveals the quoted language [about class actions being disfavored] to be a full-fledged shibboleth, and, as is generally true of legal fictions, there are a host of problems with this often-reiterated, but little analyzed, proposition." *Barnes v. United States*, 68 Fed. Cl. 492, 501 (2005). This Court now correctly realizes that class actions provide it "with the opportunity to promote good litigation management by balancing among a variety of competing interests, including time, efficiency, cost, and the right of individual plaintiffs to file complaints to redress perceived wrongs, preventing a multiplicity of suits based on a common wrong." *Berkley v. United States*, 45 Fed. Cl. 224, 226 (1999).

In similar fashion in its consideration of class actions, Congress recently declared that: "Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing claims to be aggregated into a single action against a defendant that has allegedly caused harm." Class Action

Fairness Act of 2005, Pub. L. No. 109-2, §2(a)(1) (2005).

RCFC 23 provides that a class action is proper when: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims, and (4) the representative parties will fairly and adequately protect the interests of the class." Additionally, the Court must find that "the United States has acted or refused to act on grounds generally applicable to the class" and that common questions predominate over questions affecting only individual class members. The Rules Committee Notes for RCFC 23 recognizes that "in the main" the criteria set forth in *Quinault v. Allottee Ass'n v. United States*, 19 Ct. Cl. 134, 453 F.2d 1272 (1972) were adopted in RCFC 23. *Quinault* set forth the following requirements for certifying a class:

> " (1) members must constitute a large but manageable class; (2) there is a question of law common to the whole class; (3) a common legal issue overrides separate factual issues affecting the individual members; (4) the claims of the present plaintiffs are typical of the claims of the class; (5) the government must have acted on grounds generally applicable to the whole class; (6) the claims of many claimants must be so small that it is doubtful they would otherwise be pursued; (7) the party plaintiffs must adequately and fairly protect the interests of the class without conflicts of interest; and (8) the prosecution of individual lawsuits must create a risk of inconsistent or varying adjudications."

*Fisher v. United States*, 69 Ct. Cl. at 197 citing *Quinault*, 197 Ct. Cl. at 140-141. The *Quinault* factors illuminate the requirements of FCRC 23 but where the two conflict, RCFC 23 controls. *Barnes v. United States*, 68 Fed. Cl. at 495.

**B. The Class Satisfies All of the Criteria Of Rule 23(a).**

**1. <u>The Class Is So Numerous That Joinder of All Members is Impracticable</u>**

The proposed class consists of all persons who paid federal communications excise tax on

telecommunications services who were not subject to the tax, did not file for a refund of said tax and did not receive a refund of said tax. The proposed class literally consists of more than a hundred of million people. In 1997, 94% of all U.S. households had telephone service. There were 194 million access lines across the country.[4/] In 2003, residential customers paid approximately $28,564 million in long distance tolls.[5/] Considering that the average long distance charge for residential customers was $192.00 for 2003[6/] yields an approximate class size of 148.7 million people for residential use only.

Clearly, so many people cannot be joined in one lawsuit. "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 31, 370 (D.C. Cal. 1982). *See also Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657, 657 (E.D. Pa. 1980) ('[w]here the exact size of the class is unknown, but it is common knowledge or common sense that it is large, courts … have taken judicial notice of this fact and assumed that joinder is impractical.").

With millions of potential class members, the numerosity requirement is easily satisfied. *See Taylor v. United States*, 41 Fed. Cl. 440, 445 (1998) (proposed class of 230 persons was sufficient to meet numerosity requirement); *Berkley*, 45 Fed. Cl. at 231 (proposed class of

---

[4/] Telephone Excise Tax, IRS, Statistics of Income Bulletin, Publication 1136, Spring 2000. Found at www.IRS.gov/pub/irs-soi/99extele.pdf.

[5/] For 2003, toll service revenues equaled $77.2 Billion. *Trends In Telephone Service*, Federal Communications Commission, §9.1; Further, 37% of cell toll service revenue was for residential use. *Id.* Table 9.3.

[6/] *Id.* Table 3.2.

approximately 1,595 was sufficient to meet numerosity requirement); *Abrams v. United States*, 57 Fed. Cl. 439 (2003) (proposed class of approximately 1,800 was sufficient to meet numerosity requirement); *Hannon v. United States*, 31 Fed. Cl. 198 (1994) (340 potential plaintiffs is sufficiently numerous); *Barnes*, 68 Fed. Cl. 492 (numerosity established at 5,000 plaintiffs); *Favreau v. United States*, 48 Fed. Cl. 774 (2000) (numerosity established at over 500 plaintiffs).

**2. <u>There Are Common Questions of Law and Fact Shared by the Class</u>**

Rule 23(a)(2) is satisfied even if there is only "one core legal question that is likely to have one common defense." *Taylor v. United States*, 41 Fed. Cl. at 446. *Neal v. Casey*, 43 F.3d 48, 56 (1994) citing H. Newberg & A. Conte, 1 Newberg on Class Actions §3.10, at 3-50 (1992). ("Because the requirement may be satisfied by a single common issue, it is easily met, as at least one treatise has noted.")

This case presents only a few overarching legal issues: The first is whether or not the communications excise tax applies to long distance charges that are not billed based upon time and distance. This inquiry is definitively answered in the decisions of the Claims Court in *Honeywell* and *America Online*, as well as in decisions issued by six other courts. Additionally, the other issues common to the entire class are: Is the IRS' collection of an invalid tax a constitutional violation which is actionable under the Tucker Act? Do the Defendant's actions constitute an illegal exaction which is actionable under the Tucker Act? Does the Defendant's conduct constitute an affirmative and pre-emptive denial thus establishing futility and eliminating the requirement of filing a refund request? In fact, each and every legal issue presented in this action is common to all members of the proposed class. There are no issues as to liability that are individual to any of the members of the class.

**3. <u>Plaintiff's Claims Are Typical</u>**

Rule 23(a)(3) requires that "the claims of the representative parties are typical of the claims of the class." Courts interpret typicality liberally and, even when classes are not certified, rarely find the criteria unsatisfied. "[T]he typicality requirement in the *Quinault* test has not been found to be unusually restrictive." *Berkley*, 45 Fed. Cl. at 232. "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Southwest v. Falcon*, 457 US 147, 157 (1982).

In order to establish typicality, the named plaintiff need only establish that "each class members' claims arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re: Drexel Burnham Lambert Group, Inc*., 960 F.2d 285, 291 (1992). Here, plaintiff's claims are not only typical, they are identical to the claims of the members of the class. The liability of the Defendant for its conduct relative to each class member is absolutely identical. No claims that are unique to this plaintiff are presented. All defenses to be raised against this plaintiff are identical to defenses that could be raised against all class members. Indeed, the defense raised in the motion to dismiss – whether the absence of a pre-suit administrative demand for a refund precludes this claim in light of the IRS' invocation of the "non-acquiescence" doctrine – is common to every member of the class. Thus, typicality is present as to both the *prima facie* case and the principal defense.

**4. <u>Plaintiff Will Adequately Represent the Interests of the Proposed Class</u>**

In order to satisfy the adequacy requirement of Rule 23(C)(4), the court must be satisfied that the named plaintiff is part of the class and possess[es] the same interest and [has] suffer[ed] the same injury as the class members. *Amchem Products Inc. v. Windsor*, 521 US 591, 594 (1997). Additionally, selected counsel must be competent, qualified and able to handle the litigation. *Barnes*, 68 Fed. Cl. at 499 (Internal citations omitted).

No factual distinctions exist between any class member for the purposes of liability because all class members were forced to pay the same FET and none of them filed agency demands for refunds. The named plaintiff is a part of the class and she has suffered the exact same type of injury as all other members of the class. This named Plaintiff's interests are not in conflict with or antagonistic to those of the class. Each claim will rise or fall together.

Moreover, Plaintiffs are represented by competent and experienced counsel. Counsel of record have experience in litigating complex cases, class actions, and telecommunications issues and has specialized tax experience. (Declaration of R. Gaylord Smith, ¶ 3).

**C. The Class Satisfies All of the Criteria of Rule 23(b).**

Rule 23(b) requires that the Defendant acted or refused to act on grounds generally applicable to the class. We address each of the elements of Rule 23(b) as follows.

**1. <u>The IRS Has Acted or Refused to Act on Grounds Generally Applicable to the Class</u>.**

Rule 23(b)(1) requires that the "United States has acted or refused to act on grounds generally applicable to the class." The IRS' national policy of collecting the FET as to all class members, despite unanimous judicial rejection of this revenue collection effort, satisfies this element. Notice 2005-79 issued by the IRS admits these facts. Despite three appellate courts and

six other courts holding that the communica-tions excise tax does not apply to the current method of charging for long distance, the IRS has ordered telecommunications carriers to continue to assess and collect these taxes. "[T]his notice confirms that the service will continue to assess and collect the tax under §4231 on all taxable communications services similar to these at issue in the case." *Id.*

The IRS continues to collect this tax from all class members in defiance of both courts and Congress. It is axiomatic that this element is satisfied given the IRS' conduct and its public pronouncement making refund requests an exercise in futility.

**2. <u>The Class Satisfies the Criteria of Rule 23(b)(2)</u>.**

**a. <u>Common Legal Issues Predominate Over Questions Affecting Only Individual Members</u>**

The proposed class satisfies the requirements of 23(b)(2) because the common issues of law and predominate. The major common issues of law and fact include:

- Whether the collection of excise taxes in conflict with the clear and unambiguous language of congress and the courts is arbitrary and capricious and constitutes an unlawful taking?
- Whether the collection of excise taxes on identical services from some, but not all identically situated taxpayers constitutes the imposition of a non-uniform excise tax?
- Whether the collection of excise taxes in violation of the clear language of Congress and the Judiciary constitutes an illegal exaction?
- Whether any requirement to file an administrative request has been waived?
- Whether the collection of excise taxes is unlawful and thus a refund is due?

The common issues of law and fact in this class decide all of the issues relevant to this matter for all of the counts of the Complaint except for the simple calculation of the amount due

and owing to each taxpayer after liability is established. Individual determination of damages, however, does not defeat the finding of predominance. *Hannon v. United States*, 31 Fed. Cl. 98, 103 (1994).

For all four claims as pled in the Complaint, each and every issue is common to all class members except for the simple calculation of damages. In examining the predominance requirement, "the court must, where necessary, look beyond the pleadings, and seek to develop and understanding of the relevant claims, defenses, facts and substantive law." *Barnes*, 68 Fed. Cl. at 496. An examination of the substantive law in this matter highlights that the claims presented are identical, both factually and legally for all class members. In order to succeed in the takings claim, the plaintiff and the class need prove that their property was taken for public use and that the taking was arbitrary and capricious. *Brushaber v. Union Pac. Ry.* 240 US 1, 24-25 (1916). In the present claim, the property taken from the plaintiff and the entire class is identical. Further, proving whether or not the taxation constitutes a taking because it was arbitrary and capricious is identical for each class member. Although it is true that "takings are ordinarily fact-intensive inquiries," *Moore v. United States*, 41 Fed Cl. 394, 398 (1998), such is not true here because the property is identical and the only acts that are relevant to the determination are the acts of the defendant.

The Plaintiff's claims regarding the non-uniform imposition of the excise tax is likewise identical for all class members. The Uniform Excise Tax Clause provides that all "Excises shall be uniform throughout the United States." U.S. Constitution, Art. 1, §8, cl. 1. The relevant inquiry to prove a violation of the uniformity requirement is whether certain people paid the excise tax when others were not required to pay it on the same item. The claims for all class members are

identical because all have paid this tax, the services are the same, and all have not requested or received refunds from the Defendant. Again, the factual and legal inquiry is identical for all class members.

The analysis for the exaction claim and refund claim are also identical. No factual or legal differences exist. Each and every class member is identically situated. The only issues to be decided relates to the Defendant's conduct and it is identical for each and every class member.

This case involves telecommunications excise taxes and not income taxes. Any reliance upon other Claims Courts cases involving non-excise taxes is inapplicable to the class certification issue. For example, in *Fisher* the Claims Court held that common issues did not predominate because each class member's income tax return would have to be examined to determine damages. In this refund action, the taxpayer's entire tax liability under the particular tax return at issue is open for redetermination." *Id.* at 202. *Fisher and Sanvooke v. United States*, 8 Cl. Ct. 327 (1985) both included tax refunds that are based on the individual's tax returns – thus requiring that the class member prove an overpayment of taxes on their entire return. In the present matter, no tax returns exist. The only issue to be decided in calculating class members' refund is the amount of the telecommunications excise tax that was wrongfully collected. The class members' tax returns are not relevant to this determination and need not be considered.

The common issues of law and fact decide each and every issue in this matter except for damages. Further, unlike *Fisher*, the damages issue in this matter is easy to determine. As the claims court states in *Moore, supra*, 41 Fed Cl. at 398: "[T]he computation of damages, although necessarily individualized, should be relatively formulaic."

**b. <u>A Class Action is Superior to the Other Available Methods for the</u>**

**Fair and Efficient Adjudication of the Controversy.**

**(1) A Class Action is Necessary for Complete Relief.**

A class action is superior to all other methods of handling this issue. Every factor examined in considering this element cuts in favor of certifying the class. Without a class action, millions of people will continue to be wronged by the Defendant's conduct and never have the money wrongfully taken from them. Additionally, courts could be overwhelmed if even 5% of all wronged individuals filed lawsuits to enforce their rights. A class action is the only way to assure comprehensive relief.

The Claims Court often considers the amount of damages suffered by individual members of the class in order to determine superiority. Cases should be certified if it appears that "the claims of the potential plaintiffs [are] so small that it is doubtful that they would be pursued other than through a class action." *Hannon*, 31 Fed. Cl. at 103. Here 148.7 million potential class members suffered average annual damages of $35. Although many commercial account class members have larger damages, some 150 million class members have such relatively small damages that pursuing their claims in millions of individual taxpayer lawsuits would be cost-prohibitive and practically impossible. Allowing the IRS to continue its wrongful collection of "taxes" from millions with virtual immunity in the teeth of unanimous judicial disapproval, cries out for the remedy of a certified class.

**(2) Only a Class Action Can Put An End to Continued Non-Acquiescence.**

While the Claims Court sometimes refuses to certify a class because of a belief that a decision in an individual case is binding upon the government for all class members, e.g.,

*Sanvooke v. United States*, 8 Cl. Ct. 327 (1985), just the opposite is the case here. This Court has already issued two decisions finding the FET illegal. The IRS has evidently not considered those decisions binding on it because it has publicly announced it will not acquiesce in them.. That is precisely why class certification is necessary.

Piecemeal litigation will permit Defendant to continue to collect the tax in violation the law. A class action will prevent Defendant from violating the law and the Constitution. Enforcing the law is a value worth supporting.

**(3) <u>Only a Class Action Protects Claims from Statute of Limitations.</u>**

Another factor that militates in favor of the superiority of a class is that class certification tolls the statute of limitations. The statute of limitations is a legitimate concern in deciding to certify a class. *Moore v. United States*, 41 Fed. Cl. 394, 400 (1998) (internal citation omitted). Assuming that the Defendant wrongfully collects $3 Billion in excise taxes per year as has been reported in the decisions referenced, every day that passes without this court certifying a class reduces the classes damages by approximately $8.2 million. Because few, if any, class members have filed lawsuits, it is critically important to certify this class in order to stop damages to the class from the Defendant's actions and to preserve these claims from being lost due to the statute of limitations.

**(4) <u>The Class is Manageable</u>.**

Although this class is large, it is manageable. "In determining whether a class is manageable, the court considers whether the members of the class are readily identifiable, easily reachable, and whether there are factual distinctions that would interfere with resolution of the

issues and thus undermine the manageability of the class." *Taylor*, 41 Fed Cl. 445. Here, potential class members are easily and readily identifiable by the Defendant and/or by the carriers who collect the tax on their behalf.

This class is unusually manageable because virtually all plaintiffs pay their bills through computerized billing systems. These systems collect into electronic formats the class members' names, addresses, telephone numbers, services purchased, date of purchase amounts paid and taxes paid. It is simply a matter of running the proper search request into the database. The telephone carriers' computer databases are able to identify the class members, calculate the amount of damages, and indicate the last known address of the class member. Every month, the carriers already perform a similar task when they calculate and delivering subscriber bills. Here, managing the class will only be slightly more difficult than the carriers' current monthly billing process. Courts do not find classes that are much more manageable than this.

Due to the sheer size and the universality of the class, it is also easily reachable. Notice given through conventional publications, IRS mailings and television would notify and reach the overwhelming majority of the class. Further, notice could be given in the telecommunications carriers' bills. (Such would be only proper since the telecommunications carriers provided the bill bearing the fraudulent tax and collected the tax for the IRS.) Lastly, there are no relevant factual distinctions between the named plaintiff and all other members of the class that would render this class action unmanageable.

**(5) A Class Action Is Superior Because It Avoids The Expense, Errors And Fraud Of Processing Individual Refund Requests.**

Proceeding on a case-by-case basis is unworkable. Without the systematic and national

use of the carriers' billing databases, the mere processing of these claims will be expensive and haphazard. The labor costs of simply handling individual requests on paper will be extremely costly. Moreover, the Defendant will not be able to electronically cross-check the refund requests with the billing databases. With a class action, the class will submit the data based upon the carriers' electronic records without the possibility of fraud, innocent human error or wasted personnel time. In a digital age, it makes no sense to insist upon piecemeal analog paper proceedings.

Finally, Defendant is liable for legal fees and court costs under 26 U.S.C. §7430. As noted above, the average consumer’s claim will be approximately $35. The filing fee alone in most federal courts exceeds $150. Under Defendant's preferred procedure, the government will pay three times as much in court costs as it does in damages to the taxpayers. Defendant is also liable for attorneys fees where, as here, the government's position is unjustified. Attorneys are entitled to a minimum billing increment of 15 minutes and minimum hourly rates. After including legal fees for preparing, filing, and litigating such an unnecessary complaint, Defendant's liability for legal fees will easily exceed its $150 court costs per case. In short, Defendant's procedure will multiply its per case liability by a factor between five and ten. Defendants will turn a $35 case into a $350 case - all while increasing its own internal costs, increasing mistakes and violating the law. A class action is superior because it reduces costs, ensures accuracy, reduces fraud, and ensures complete relief.

## IV. CONCLUSION

This case should be certified as a class action. This class satisfies all of the requirements of RCFC 23. Moreover, the actions of the IRS in this matter illustrate why a certified class action

is so important here.

The IRS is collecting a federal communications excise without any enabling legislation in the face of numerous rulings against it on the very same issue. Rather than simply terminating the tax, the IRS has chosen to continue to collect it by hiding behind the alleged refund request requirement and banking on the fact that the amounts at issue are too small to spur individual action. The IRS knows that without a class action that complete relief is impossible and that it will be allowed to retain billions of dollars of illegal "taxes."

Class actions exist in our judicial system to remedy such universal wrongs that lead to unjustified losses to significant numbers of individuals. Class certification is the only way to put money that rightfully belongs to taxpayers back in their pockets, and to put an end to the disreputable practice of agency "non-acquiescence."

April 10, 2006 Respectfully submitted,

COUNSEL OF RECORD: /s/ R.Gaylord Smith

R. Gaylord Smith, Esq. (CA Bar #72726)
Lewis Brisbois Bisgaard & Smith
550 West C Street, 8th Floor
San Diego, CA 92010
619-233-1006/619-233-8627 Fax
smith@lbbslaw.com

\

Richard F. Scruggs, Esq. (MS Bar #0382)
Sidney A. Backstrom, Esq. (MS Bar #99890)
Scruggs Law Firm, PA
P.O. Box 1136
120A Courthouse Square
Oxford, MS 38655
662-281-1212/662-281-1312 Fax
dickscruggs@scruggsfirm.com

sbackstrom@scruggsfirm.com

Mark Griffin, Esq. (OH Bar #0064141)
Law Office of Mark Griffin
175 Honeybelle Oval
Orange, Ohio 44022
216-346-7376/216-861-6679 Fa x
telecomlaw@hotmail.com

Randy J. Hart, Esq. (OH Bar #0046793)
200 Public Square, Suite 3300
Cleveland, Ohio 44113
216-978-9130/216-241-2824 Fax
csuosu@msn.com

R. Eric Kennedy, Esq. (OH Bar #0006174)
Daniel P. Goetz, Esq. (OH Bar #0065549_
Weisman Kennedy & Berris Co, LPA
1600 Midland Building
Cleveland, Ohio 44115
216-781-1111/216-781-6747 Fax
ekennedy@weismanlaw.com
dgoetz@weismanlaw.com

Sheldon H. Sloan, Esq. (CA Bar #32334)
Lewis Brisbois Bisgaard & Smith
550 West C Street, 8th Floor
San Diego, CA 92010
619-233-1006/619-233-8627 Fax
sloan@lbbslaw.com

**Attorneys for Plaintiff**