No. 05-1272 T
**(Judge Susan G. Braden)**

***IN THE UNITED STATES COURT OF FEDERAL CLAIMS***

LINDA ROSENBERG,

Plaintiff

v.

UNITED STATES,

Defendant.

DEFENDANT'S REPLY BRIEF TO PLAINTIFF'S
OPPOSITION OF DEFENDANT'S MOTION TO DISMISS

EILEEN J. O' CONNOR
Assistant Attorney General

DAVID GUSTAFSON
STEVEN I. FRAHM
BENJAMIN C. KING, JR.
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office Station
Washington, D.C. 20044
(202) 307-6506

**Page**

**TABLE OF CONTENTS**

Defendant's Reply Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Collection of the Excise Tax Is Not a Taking . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A. The Excise tax does not constitute a taking . . . . . . . . . . . . . . . . . . . . . . . . 1

B. This Court's Takings Jurisdiction is preempted by § 7422 . . . . . . . . . . . . 5

C. There was no illegal exaction here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. There Is No Uniformity Clause Violation Here . . . . . . . . . . . . . . . . . . . . . . . . . 11

III. The Requirements of § 7422 Have Not Been Waived . . . . . . . . . . . . . . . . . . . . . 13

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

**Cases:**

*Allegheny General Hospital v. NLRB*, 608 F.2d 965 (3rd Cir. 1979) . . . . . . . . . . . . . . . . 8

*American Bankers Insurance Group v. United States*, 408 F.3d 1328 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 9-11

*Atlas Corp. v. United States*, 895 F.2d 745 (Fed.Cir. 1990), *cert. denied*, 498 U.S. 811 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*Banner v. United States*, 428 F.3d 303 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Berzon v. Comm.*, 63 T.C. 601 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

*Blanchette v. Connecticut General Insurance Corp.*, 419 U.S. 102 (1974) . . . . . . . . . . 12

*Boston Edison Company v. United States*, 64 Fed. Cl. 167 (2005) . . . . . . . . . . . . . . . 8, 13

**Page**

**Cases (Continuation):**

*Brown v. United States*, 35 Fed. Cl. 258 (1996), *aff'd*, 105 F.3d 621 (Fed.Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 10

*Brushaber v. Union Pacific R.R.*, 240 U.S. 1 (1916) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*CF Industries, Inc. v. United States*, 2002 WL. 31662265
(Ct. Int'l. Trade 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Clintwood Elkhorn Mining Co, v. United States,* Fed.Cir. Nos. 04-51255-5156 . . . . . . . 7

*Commonwealth Edison Company v. United States*, 271 F.3d 1327
(Fed.Cir. 2001) (en banc), *cert denied*, 535 U.S. 1096 (2002) . . . . . . . . . . . . . . . . 2, 4

*Cyprus Amax Coal Co. v. United States*, 369 F.3d 1369 (Fed.Cir. 2000) . . . . . . . . . . . 6, 7

*Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131,
141 L.Ed.2d 451 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*First Atlas Funding Corp. v. United States*, 23 Cl.Ct. 137, 141 (1991), *aff'd*,
954 F.2d 733 (Fed.Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Folden v. United States*, 379 F.3d 1344 (Fed.Cir. 2004),
*cert denied*, 125 S.Ct. 2935, 162 L.Ed.2d 862 (2005) . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Forrest Products Northwest, Inc. v. United States*, 62 Fed. Cl. 109 (2004) . . . . . . . . . . . 5

*Hammitt v. United States*, 69 Fed. Cl. 165 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Holden v. Heckler*, 584 F. Supp. 463 (N.D. Ohio 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hunsaker v. United States*, 66 Fed. Cl. 129 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ithaca College v. NLRB*, 623 F.2d 224 (2nd Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*JCM, LTD. v. United States*, 210 F.3d 1357 (Fed.Cir. 2000) . . . . . . . . . . . . . . . . . . 5, 7-8

*Kitchen Fresh, Inc. v. NLRB*, 716 F.2d 351 (6th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . 8

*Lion Raisins, Inc. v. United States*, 416 F.3d 1356 (Fed.Cir. 2005) . . . . . . . . . . . . . . . 5, 7

**Page**

**Cases (Continuation):**

*Lopez v. Heckler*, 725 F.2d 1489 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mary Thompson Hospital, Inc. v. NLRB*, 623 F.2d 224 (2nd Cir. 1980) . . . . . . . . . . . . . . 8

*Mayburg v. Heckler*, 574 F. Supp. 922 (D. Mass. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Murray v. United States*, 817 F.2d 1580 (Fed.Cir.1987), *cert denied*,
489 U.S. 1055 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*National Railroad Passenger Corp. v. United States*, 431 F.3d 374
(D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 9, 10

*Office Max, Inc. v. United States*, 2005 WL. 2861031 (6th Cir. 2005) . . . . . . . . 5, 7, 9, 10

*PPG Industries, Inc. v. NLRB*, 716 F.2d 351 (6th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . 8

*Parsons ex rel. Linmar Prop. Management Trust v. United States*,
65 Fed. Cl. 638 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pines Residential Treatment Center v. United States*, 64 Fed. Cl. 307 (2005),
*aff'd*, 2006 WL 932402 (Fed.Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Polaski v. Heckler*, 588 F. Supp. 1004 (D. Minn. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Riggle v. United States*, 95 A.F.T.R.2d 2005-2183 (Fed.Cir. 2005) . . . . . . . . . . . . . . . . 14

*Rivera v. Heckler*, 568 F. Supp. 235 (D. N.J. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rogers v. United States*, 2002 WL. (Fed.Cl. 2002), *aff'd*, 91 A.F.T.R. 2d
2003-1071 (Fed.Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 9

*Shore v. United States*, 9 F.3d 1524 (Fed.Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

*Skillo v. United States*, 68 Fed. Cl. 734 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 14

*Stacey Manufacturing Co. v. Committee*, 237 F.2d 606 (6th Cir. 1956) . . . . . . . . . . . . . . 8

**Page**

**Cases (Continuation):**

*State of Idaho Potato Committee v. G & T Packaging, Inc.*,
425 F.3d 708 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Steiberger v. Heckler*, 615 F. Supp., 1315 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . 9

*Stern v. Comm.*, 242 F.2d 322 (6th Cir. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Telecare Corp. v. Leavitt*, 409 F.3d 1345 (Fed.Cir. 2005),
*cert denied*, 126 S.Ct. 2935, 165 L.Ed.2d 862 (2006) . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Thompson Multimedia, Inc. v. United States*, 219 F. Supp. 2d 1322
(Ct. Int'l. Trade 2002), *aff'd*, 304 Fed.3d 1355 (Fed.Cir. 2003),
*cert denied*, 541 U.S. 1040 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*U.S. Shoe Corp. v. United States*, 523 U.S. 360 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*U.S. Shoe Corp. v. United States*, 296 F.3d 1378 (Fed.Cir. 2002),
*cert denied*, 538 U.S. 1056 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 3, 4

*United States v. Mendoza*, 464 U.S. 154 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*United States v. Ptasynski*, 462 U.S. 74 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Sperry Corp.*, 493 U.S. 52 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*Vareda. LTDA v. United States*, 271 F.3d 1367 (Fed.Cir. 2001) . . . . . . . . . . . . . . . . . . 5, 7

*Wilson v. United States*, 405 F.3d 1002 (Fed.Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 5, 7

**Statutes:**

Internal Revue Code of 1986 (26 U.S.C.):

§ 4251 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

§ 6012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§ 6213 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§ 6225 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Page**

**Statutes (Continuation:**

§ 6246 . . . . . . . . . . 9

§ 6330 . . . . . . . . . . 9

§ 6672 . . . . . . . . . . 9

§ 7421 . . . . . . . . . . 9, 10

§ 7422 . . . . . . . . . . 5, 6, 7, 9, 12

§ 7426 . . . . . . . . . . 9

§ 7436 . . . . . . . . . . 9

**Miscellaneous:**

IRS Notice 2005-79, 2005 WL 2671273 . . . . . . . . . . 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1272 T

(Judge Susan G. Braden)

LINDA ROSENBERG,

Plaintiff

v.

UNITED STATES,

Defendant

DEFENDANT'S REPLY BRIEF

Pursuant to RCFC 56, defendant, the United States, submits the following reply to the plaintiff's opposition to defendant's motion to dismiss.

I. COLLECTION OF THE EXCISE TAX IS NOT A TAKING

A. The excise tax does not constitute a taking.

The plaintiff argues that the IRS collection of the telecommunications tax provided in 26 U.S.C. § 4251, with respect to long distance service for which the per call charge is not based on time and distance, was a taking, and its claim for recovery of that tax is within the Court's Tucker Act jurisdiction. (P. Opposition 14-16.) To the contrary, the collection of a tax by the Government is not a taking for purposes of jurisdiction in this Court. *United States Shoe Corporation v. United States*, 296 F.3d 1378, 1383 (Fed.Cir. 2002); *First Atlas Funding Corp. v.*

*United States*, 23 Cl.Ct. 137, 141 (1991), *aff'd*, 954 F.2d 733 (Fed.Cir. 1992); *Skillo v. United States*, 68 Fed.Cl. 734, 743 (2005). The imposition of an obligation to pay money, such as a tax, "does not give rise to a claim under the Takings Clause of the Fifth Amendment." *Commonwealth Edison Company v. United States*, 271 F.3d 1327, 1340 (Fed.Cir. 2001) (en banc), *cert denied*, 535 U.S. 1096 (2002). *See also, United States v. Sperry Corp.*, 493 U.S. 52, n. 9 (1989); *Atlas Corp. v. United States*, 895 F.2d 745, 756 (Fed.Cir. 1990), *cert. denied*, 498 U.S. 811 (1990). "Regulatory actions requiring the payment of money are not takings." *Commonwealth Edison*, 271 F.3d at 1339.

The plaintiff has not cited any jurisprudence holding that the assessment and collection of an internal revenue tax was a Fifth Amendment taking. The plaintiff relies solely on dicta in the 1916 Supreme Court decision in *Brushaber v. Union Pacific R.R.*, 240 U.S. 1, 24-25 (1916), and a quote attributed to *Berzon v. Comm.*, 63 T.C. 601 (1975). (P. Opposition at 16. ) The Supreme Court in *Brushaber* upheld the constitutionality of the 1913 income tax. In dicta the Supreme Court noted that there might be a situation where a tax, "was so arbitrary as to constrain the conclusion that it was not the exertion of taxation but a confiscation of property," so that it would constitute a Fifth Amendment taking. 240 U.S. at 24. However, the plaintiff has not referred this Court to any instance where the dicta in *Brushaber* has been applied to a taxing statute in the 90 years since that decision was issued. The only case in the Federal Circuit discussing *Brushaber* is *United States Shoe Corp. v. United States*, 296 F.3d 1378, 1384 (Fed.Cir. 2002), in which the court held that the dicta was inapplicable to the Harbor Maintenance Tax, which previously had been held unconstitutional.

The quote plaintiff attributes to *Berzon,* that a taxing statute would violate the due process clause if "the statute classifies taxpayers in a manner that is arbitrary and capricious," does not appear anywhere in that decision. (P. Opposition at 16.) *Berzon* has nothing to do with due process or takings, but involved a question of the value of restricted stock. In any event, the language quoted in the plaintiff's opposition only refers to a violation of due process, not a taking. It is well established that this Court has no jurisdiction over claims based on a violation of the due process clause. *Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987), *cert denied*, 489 U.S. 1055 (1989)*; Brown v. United States*, 35 Fed.Cl. 258, 266 (1996), *aff'd*, 105 F.3d 621 (Fed.Cir. 1997); *Shore v. United States*, 9 F.3d 1524, 1526 (Fed.Cir. 1993); *Rogers v. United States*, 2002 WL 850053at 3 (Fed.Cl. 2002), *aff'd*, 91 A.F.T.R. 2d 2003-1071 (Fed.Cir. 2003).

The jurisprudence in the Federal Circuit is directly contrary to the plaintiff's contentions that collection of a tax can be a taking for purposes of Tucker Act jurisdiction. This was made clear in *U.S. Shoe.* The Supreme Court in *U.S. Shoe Corp. v. United States*, 523 U.S. 360, 363 (1998), found the Harbor Maintenance Tax (hereinafter, "HMT") to be unconstitutional under the export clause of the Constitution. In *U.S. Shoe* in the Federal Circuit, the taxpayer was seeking recovery of interest with respect to the amount of HMT refunded to it. The Federal Circuit held that the export clause did not provide for recovery of prejudgment interest. The only way interest could be recovered by the taxpayer in *U.S. Shoe* was if the collection of the tax constituted a taking or an illegal exaction. *U.S. Shoe*, 296 F.3d at 1383. The Federal Circuit concluded that the collection of the HMT was not a taking or an illegal exaction, even though the tax was found by the Supreme Court to be unconstitutional. *Id*.

The Federal Circuit rejected the same argument advanced by the plaintiff here, holding (296 F.3d at 1384):

> U.S. Shoe argues that the Harbor Maintenance Tax was a taking in violation of the Fifth Amendment because it was an unlawful exaction of its property. We do not agree. The government's act of taxation here was not a *per se* taking of private property. *United States v. Sperry Corp.*, 493 U.S. 52, n. 9 (1989) (considering and rejecting the view that money is private property that can be physically occupied by the government: "unlike real or personal property, money is fungible."). Nor is the tax a regulator taking: "[R]egulatory actions requiring the payment of money are not takings." *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1339 (Fed.Cir. 2001) (en banc) (relying on the reasoning of five justices in *Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998); *Atlas Corp. v. United States*, 895 F.2d 745, 756 (Fed.Cir. 1990) ("Requiring money to be spent is not a taking of property.").

The Federal Circuit also expressly rejected the plaintiff's argument that collection of the HMT was, "so arbitrary that it was an egregious violation of due process, and, therefore, a taking" under the dicta in *Brushaber*. *U.S. Shoe*, 296 F.3d at 1384. The Federal Circuit held that a tax statute can be considered arbitrary, so as to constitute a taking, only if "its purpose was unascertainable or nefarious." *U.S. Shoe*. The plaintiff has not set forth anything to indicate that Congress had no ascertainable purpose in enacting § 4251, or had a nefarious purpose in doing so. None of the circuit courts that have reviewed the application of § 4251 to the telephone services in issue, have held that the statute was so arbitrary that it was not the exertion of a tax. In fact, those courts construed the language of the statute to reach the conclusion that the tax did not apply to long distance telephone service for which the per call charge was based only on the duration of the call. *American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005); *Office Max, Inc. v. United States*, 2005 WL 2861031 (6th Cir. 2005); *National Railroad Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005).

B. This Court's Takings Jurisdiction is preempted by § 7422.

Even if collection of the tax could be considered to be a taking, this Court is precluded from exercising Tucker Act jurisdiction by the fact that Congress has provided "a specific and comprehensive scheme for administrative and judicial review." *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1372 (Fed.Cir. 2005); *see also*, *Folden v. United States*, 379 F.3d 1344, 1357 (Fed.Cir. 2004), *cert denied*, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); *Vareda. LTDA v. United States*, 271 F.3d 1367, 1375 (Fed.Cir. 2001); *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1348 (Fed.Cir. 2005), *cert denied*, 126 S.Ct. 1021, 165 L.Ed. 862 (2006); *JCM, LTD. v. United States*, 210 F.3d 1357, 1359 (Fed.Cir. 2000). The same conclusion applies to claims based on an illegal exaction. *Wilson v. United States*, 405 F.3d 1002, 1009-10 (Fed.Cir. 2005); *Pines Residential Treatment Center v. United States*, 64 Fed.Cl. 307, 314-15 (2005), *aff'd*, 2006 WL 932402 (Fed.Cir. 2006).

The Federal Circuit in *Folden* made it clear that when Congress has provided an administrative remedy, that action preempts this Court's Tucker Act jurisdiction, holding (379 F.3d at 1357):

> We have explained that "[w]hen such a 'specific and comprehensive scheme for administrative and judicial review is provided by Congress, the Court of Federal Claims' Tucker Act Jurisdiction over the subject matter covered by the scheme is preempted." (Citations omitted)

See also, *Hammitt v. United States*, 69 Fed.Cl. 165, 168 (2005); *Forrest Products Northwest, Inc. v. United States*, 62 Fed.Cl. 109, 122 (2004). Only where Congress has not provided specified procedures for review of a claim, can that claim be entertained under the Tucker Act. *Wilson*; *Pines Residential*.

Congress has provided a specific scheme for administrative review of actions seeking a

recovery of taxes, including the tax provided in § 4251 at issue here. Section 7422 (a) provides:

> NO SUIT PRIOR TO FILING CLAIM FOR REFUND. – No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

This Court has expressly held that it has no jurisdiction over a suit involving recovery of an internal revenue tax unless the taxpayer has first complied with the requirements of § 7422. *Brown v. United States*, 35 Fed.Cl. 258, 266 (1996), *aff'd*, 105 F.3d 621 (Fed.Cir. 1997); *Shore v. United States*, 9 F.3d 1524, 1526 (Fed.Cir. 1993); *Rogers v. United States*, 2002 WL 850053at 3 (Fed.Cl. 2002), *aff'd*, 91 A.F.T.R. 2d 2003-1071 (Fed.Cir. 2003). Therefore, even if the collection of the excise tax at issue here were erroneously considered a takings or an illegal exaction, this Court's jurisdiction over that claim would be preempted by the plaintiff's admitted failure to comply with § 7422(a).

The plaintiff cites *Cyprus Amax Coal Co. v. United States*, 369 F.3d 1369 (Fed.Cir. 2000), as holding that complying with § 7422 is not required before the plaintiff can proceed with a takings claim in this Court. (P. Opposition at 27-28.) However, that case does not support that contention. *Cyprus Amax* held that if a taxing statute violated the export clause of the constitution, a taxpayer had two separate causes of actions it could bring in this Court, one based on the export clause and one for a tax refund. If the taxpayer decided to proceed under the export clause, the filing of a claim for refund before filing suit was not necessary.[1] 368 F.3d at

[1]In *Clintwood Elkhorn Mining Co. v. United States*, Fed.cir. Nos. 04-51255-5156, two cases related to *Cyprus Amax*, the Government has moved the Federal Circuit to reconsider its decision in *Cyprus Amax*. That motion is currently pending in the Federal Circuit.

1374-75. *Cyprus Amax* did not address this Court's takings jurisdiction. Since the Federal Circuit issued its decision in *Cyprus Amax*, it has issued no fewer than seven decisions expressly holding that the Court's takings and Tucker Act jurisdiction is preempted when Congress has provided a specific administrative remedy. *Lion Raisins; Folden*; *Vareda*; *Telecare*; *JCM; Wilson*; *Pines Residential*.

C. There was no illegal exaction here.

At the outset it should be noted that the Federal Circuit has expressly held that this Court has no jurisdiction over any illegal exaction claim related to the collection of an internal revenue tax unless the taxpayer first files a claim for refund as required by § 7422. *Wilson*; *Telecare*. In any event, it is clear that the collection of the excise tax at issue here was not illegal. The plaintiff argues that the IRS acted illegally by continuing to collect the excise tax after the issuance of the adverse decisions in *American Bankers*, *Office Max*, and *National Railroad*. (P. Opposition 21-25, 33-34.) However, the plaintiff fails to note that the Government is pursuing its appeal rights in these cases, and appeals related to the § 4251 issue are pending in the Second, Third and Federal Circuits.

Essentially, the plaintiff is arguing that the Government should be precluded from litigation the application of § 4251 to the telecommunications services in issue in the appeals pending the Second, third and Federal Circuits because of the adverse decisions in the Eleventh, Sixth and D.C. Circuits. That argument was expressly rejected by the Supreme Court in *United States v. Mendoza*, 464 U.S. 154, 160 (1983). The Court there held that the Government was free to litigate an issue in another court after losing it in one court. In fact, the Supreme Court explained that continued litigation of an issue in multiple courts was beneficial for the resolution

of important issues of law. 464 U.S. 160-61. See also, *State of Idaho Potato Comm. v. G & T Packaging, Inc.*, 425 F.3d 708, 713-4 (9th Cir. 2005); *Boston Edison Company v. United States*, 64 Fed.Cl. 167, 185 (2005).

The actions of the Courts of Appeals for the Second, Third and Federal Circuits regarding the Government's appeals are contrary to the plaintiff's conclusion that the § 4251 issue has already been decided by the courts and the Government's continued litigation of that issue is arbitrary and illegal. (P. Opposition at 23-25.) The appeals have proceeded normally; all three appeals have been briefed, argued, and are awaiting decision. The plaintiffs have cited to no authority that the IRS is not entitled to continue to collect a tax while appeals regarding that tax are still pending in three U.S. Courts of Appeal.

None of the cases cited by the plaintiff on pages 22-25 of its opposition regarding the inappropriateness of non-acquiescence notices relates to the IRS or to the situation present in this case. The cases cited by the plaintiff fall into two categories. First, are those cases which hold that the Tax Court and National Labor Relations Board are bound to follow the decisions of the circuit court to which an appeal of the case before it would lie. *Stacey Mfg. Co. v. Comm.*, 237 F.2d 606, 606 (6th Cir. 1956); *Stern v. Comm.*, 2452 F.2d 322 (6th Cir. 1956); *Allegheny Gen. Hosp. v. NLRB*, 608 F.2d 965 (3rd Cir. 1979); *Mary Thompson Hosp., Inc. v. NLRB*, 623 F.2d 224 (2nd Cir. 1980); *Ithaca College v. NLRB*, 623 F.2d 224 (2nd Cir. 1980); *PPG Industries, Inc. v. NLRB*, 716 f.2d 351 (6th Cir. 1983); *Kitchen Fresh, Inc. v. NLRB*, 716 f.2d 351 (6th Cir. 1983). That is no different than the fact this Court is bound by the decisions of the Federal Circuit. Those cases have nothing to do with the right of the Government to continue litigating an issue or the right of the IRS to continue collecting a tax while appeals are pending.

The second group of cases plaintiff cites all arise out of a decision by the Secretary of Health and Human Services not to follow several Circuit Court decisions regarding the interpretation of Social Security disability provisions. *Lopez v. Heckler*, 725 F.2d 1489 (9th Cir. 1984); *Steiberger v. Heckler*, 615 F.Supp., 1315 (S.D.N.Y. 1985); *Holden v. Heckler*, 584 F. Supp. 463 (N.D. Ohio 1984); *Polaski v. Heckler*, 588 F.Supp. 1004 (D. Minn. 1984); *Rivera v. Heckler*, 568 F.Supp. 235 (D. N.J. 1983); *Mayburg v. Heckler*, 574 F.Supp. 922 (D. Mass. 1983). Those cases do not apply here. First, the HHS cases were in the District Court and involved the District Court's equity and injunction jurisdiction. This Court does not have general equity or injunction jurisdiction. Second, in the HHS cases, the Government was not currently pursuing litigation in other courts on the issue involved. In those cases the Secretary of HHS, rather than pursuing litigation in other courts, merely stated that the agency would not comply with the decisions of several circuit courts.

There is also no indication in the HHS cases of a specific mandate from Congress that no suit can be filed in any court until an administrative claim is filed, like that set forth in § 7422. Further, Congress had not specifically precluded the courts from enjoining administrative actions of the Secretary of HHS, as they have done with regard to actions of the IRS. In this case, Congress has specifically prohibited the courts from taking any action to enjoin the assessment and collection of a tax by the IRS. The Anti-Injunction Act, § 7421(a), states that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was

assessed."[2] In the area of taxation Congress, in enacting §§ 7421 and 7422, has expressly precluded the type of court actions involved in the HHS cases cited by the plaintiff. The anti-injunction act precludes this Court from considering challenges to the assessment and collection of a tax without the taxpayer first having filed a claim for refund. *Skillo*; *Rogers*; *Brown*.

The plaintiff asserts that the IRS' continued collection of the excise tax provided in 26 U.S.C. § 4251 is a Fifth Amendment's taking and an illegal exaction because that action is in contravention of the recent circuit court decisions in *American Bankers*, *Office Max*, and *National Railroad*. (P. Opposition at 14-15.) The plaintiff contends the collection of the tax after the issuance of those decisions was "arbitrary and capricious," "unlawful," and an "illegal exaction." (P. Opposition at 15, 16, 19, 32.) However, the first of those circuit court decisions, *American Bankers*, did not become final until July 9, 2005. Under the plaintiff's analysis, the IRS's collection of the excise tax prior to July 9, 2005, could not be considered a taking or an illegal exaction because that action was not contrary to any final circuit court decision. But, as confirmed by the Supreme Court in *Mendoza*, the defendant is entitled to pursue its appeal rights in other circuits after that decision, which it is doing. Therefore, IRS collection activities after July 9, 2005, also would not constitute a taking or illegal exaction.

## II. THERE IS NO UNIFORMITY CLAUSE VIOLATION HERE

[2]Section 7421(a) notes several exceptions to the general rule that no action can be brought to restrain the collection of a tax. Those exceptions are provided in §§ 6012(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6672(c), 7426(a) and (b)(1) and 7436. None of those sections are applicable to this case.

The plaintiff asserts the telecommunications excise tax in § 4251 violates the uniformity clause because the three taxpayers who were parties to the decisions in *American Bankers*, *Office Max*, and *National Railroad* are entitled to refunds of the excise taxes they paid. (P. Opposition at 30.) The plaintiff does not allege that she is being singled out for special treatment; she does not dispute that the IRS continues to collect the tax from all other taxpayers subject to the excise tax while the appeals are pending. The lack uniformity addressed by the plaintiff is not the result of anything in the statute passed by Congress, but the different treatment of three taxpayers arises because the decisions in their cases have become final. The IRS is entitled to and is continuing to collect the tax from others and to litigate liability for the § 4251 tax in other courts, as authorized by the Supreme Court in *Mendoza*. Since the uniformity clause only relates to the taxing power of Congress, and not to the actions of the Executive Branch administering the tax, there can be no violation of the uniformity clause in this case.

The uniformity clause appears in Article I of the Constitution, which governs the power of Congress. The powers of the Executive Branch are the subject of Article II of the Constitution. The uniformity clause states (Constitution, Article I, § 8, Clause 1):

> The Congress shall have power to lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debt and provide for the common Defense and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States.

It is not disputed that § 4251 imposes s tax uniformly across the United States. The plaintiff does not dispute that for the almost 40 years the tax was in effect prior to the *American Bankers* decision, that statute applied uniformly to all individuals who acquired long distance service. It is clear that § 4251 does not violate the uniformity clause. The disparate treatment plaintiff complains of relates solely to the decision of the IRS to continue collecting the tax while its

appeals are pending. The actions of the IRS, a part of the Executive Branch, in administering a taxing statute cannot constitute a violation of the limitation on Congress's taxing power set forth in the uniformity clause in Article I of the Constitution.

The uniformity clause is a limitation on the power of Congress to impose indirect taxes. *United States v. Ptasynski*, 462 U.S. 74, 80 (1983); *Blanchette v. Connecticut General Ins. Corp.*, 419 U.S. 102, 159 (1974). The purpose of the uniformity clause was to prevent Congress from using its taxing power to the disadvantage of a particular state or states. *Banner v. United States*, 428 F.3d 303, 310 (D.C. Cir. 2005). A court can invalidate a taxing statute under the uniformity clause "only where it finds that Congress' purpose was to promote regional favoritism or discrimination." *Thompson Multimedia, Inc. v. United States*, 219 F.Supp.2d 1322, 1326 (Ct. Int'l. Trade 2002), *aff'd*, 304 F.3d 1355 (Fed.Cir. 2003), *cert denied*. 541 U.S. 1040 (2004); *see also, CF Industries, Inc. v. United States*, 2002 WL 31662265 (Ct. Int'l. Trade 2002). A statute violates the uniformity only where there is evidence of "deliberate favoritism or discrimination" by Congress. *Thompson Multimedia*, 219 F. Supp. 2d at 1329-30. This stringent standard explains why there has never been a taxing statute found to be in violation of the uniformity clause. *Thompson Multimedia*, 219 F.Supp.2d at 1325. In this case there is no evidence, or even an allegation, that Congress deliberately favored a state or states in passing § 4251. Therefore, there can be no uniformity clause violation in this case.

The non-uniformity complained of here relates solely to the decision of the IRS to continue to collecting the tax in § 4251, while its appeals regarding that section are pending. Under the plaintiff's reasoning, every time a court rules against the Government in a particular case and the decision becomes final, the taxing statute involved immediately become non-

uniform, and constitutionally invalid, since the taxpayer in that case would not be liable for the tax. This argument is directly contrary to the decision of the Supreme Court in *Mendoza*, which specifically approved of the Government continuing to litigate actions after an adverse decision in one or more courts. *State of Idaho*; *Boston Edison*. In any event, the actions by the Executive Branch, through the IRS, in administering a statute in accordance with Article II of the Constitution cannot give rise to a violation of the limitation placed on Congress's taxing power in the uniformity clause in Article I of the Constitution.

The plaintiff's argument also leads to an absurd result. If the plaintiff is correct, then once *American Bankers* was decided, § 4251 became unconstitutional, even though that statute was still the subject of appeals in three other circuit courts. If the Government were to prevail on any of its appeals, and that decision were to be affirmed by the Supreme Court, then under the plaintiff's analysis § 4251 would automatically become constitutional again. Clearly the uniformity clause of the Constitution cannot apply in such a transient manner and the plaintiff has not cited any authority to indicate that it does. Either the statute is unconstitutional as drafter or not. Since no evidence has been presented to show that § 4251 is non-uniform as passed by Congress there can be no uniformity clause violation in this case.

## III. THE REQUIREMENTS OF § 7422 HAVE NOT BEEN WAIVED

Plaintiff's final argument is that she is not required to file a claim for refund because the IRS notice of non-acquiescence, Notice 2005-79, 2005 WL 2671273 waived the requirement for such a claim. However, contrary to the plaintiff's assertion, Notice 2005-79 specifically instructs taxpayer who want a refund of the § 4251 tax to file a claim for refund. The plaintiff's assertion that the IRS will disallow such claims is also incorrect. (P. Opposition at 38.) The

Notice expressly states that the IRS will hold any claims filed in abeyance pending resolution of the pending appeals. It is reasonable to assume that if the Government fails to prevail on those appeals, the IRS would allow the claims. The IRS has not given any indication otherwise.

The plaintiff cites several cases for the proposition that the IRS can waive the requirement in § 7422 that a claim for refund must be filed before a suit for a recovery of a tax can be brought. (P. Opposition 38-39.) However, all of the cases cited by the plaintiff involved the question of whether the taxpayer filed a proper informal claim for refund before filing the action. In fact, those cases all affirm the proposition that a claim for refund must be filed before filing suit. The issue in those cases was whether claims filed were sufficient under § 7422, not whether the IRS could waive the requirement that some sort of claim be filed. None of those cases involved a situation present here, where no refund claim, formal or informal, was filed with the IRS prior to the filing of this case. Given that failure, this Court clearly lacks jurisdiction to consider the claims raised in the complaint in the above-captioned case. *Skillo*, *Hunsaker v. United States*, 66 Fed.Cl. 129, 132-33 (2005); *Parsons ex rel. Linmar Prop. Mgmt. Trust v. United States*, 65 Fed.Cl. 638, 641 (2005); *Riggle v. United States*, 95 A.F.T.R.2d 2005-2183 (Fed.Cir. 2005); *Rogers*.

CONCLUSION

For the reasons set forth above, the defendant respectfully requests that the Court dismiss

the claims set forth in Counts I, II, and III with prejudice and dismiss the claim set forth in Count IV without prejudice.[3]

Respectfully submitted,

s/Benjamin C. King, Jr.
BENJAMIN C. KING, JR.
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6506

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief
Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

s/Steven I. Frahm
Of Counsel

April 27, 2006

[3]The plaintiff's opposition did not raise any argument regarding the claim set forth in Count III, that the IRS violated an informal contract it entered into with the plaintiff. The plaintiff appears to have changed that claim to a claim for an illegal exaction. (P. Opposition at 32.) The plaintiff's illegal exaction claim is addressed by the defendant in its discussion of the Court's takings and Tucker Act jurisdiction.