Richard F. Scruggs (MS Bar # 6582)
Sidney A. Backstrom (MS Bar # 99890)
Scruggs Law Firm, P.A.
P.O. Box 1136
120A Courthouse Square
Oxford, MS 38655
Phone: (662) 281-1212
Fax: (662) 281-1312
E-mail: dickscruggs@scruggsfirm.com
E-mail: sbackstrom@scruggsfirm.com

R. Gaylord Smith (CA Bar #72726)
Ernest Slome (CA Bar #122419)
Lewis Brisbois Bisgaard & Smith
550 West C Street, 8th Floor
San Diego, CA 92101
Phone: (619) 233-1006
Fax: (619) 233-8627
E-mail: smith@lbbslaw.com

[and other counsel as appearing on signature block]

For Plaintiffs OSCAR GURROLA and ROSALVA GURROLA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR GURROLA and ROSALVA GURROLA,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, and AT&T, VERIZON COMMUNICATIONS, INC., CINGULAR WIRELESS, LLC, AND CELLCO PARTNERSHIP, dba VERIZON WIRELESS,<br><br>Defendants. | **CASE NO.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**[JURY TRIAL DEMANDED]** |

## INTRODUCTION

The Plaintiffs, on behalf of themselves and all others similarly situated, file this class action complaint seeking declaratory relief, injunctive relief, money damages, and a refund of federal communication excise taxes against Defendants UNITED STATES OF AMERICA, AT&T, formerly known as SBC Communications, Inc. (AT&T), VERIZON COMMUNICATIONS, INC.

(Verizon), CINGULAR WIRELESS, LLC (Cingular), CELLCO PARTNERSHIP (Verizon Wireless).

Over the last six years, the Internal Revenue Service (IRS) has improperly collected more than $26 billion in federal excise "taxes" on telecommunications services.

On May 25, 2006, facing class action litigation and an imminent ruling on summary judgment, the IRS conceded that its legal position was meritless, but announced that it would return **only half** of the money it had illegally collected over the relevant time frame. IRS Notice 2006-50. Moreover, the IRS, after conceding that the "tax" is unlawful, has instructed the Telecom Defendants to continue to collect this illegal "tax" until July 31, 2006.

This Complaint is brought to require the return of one-hundred percent of the "taxes" illegally imposed over the last six years, to enjoin the further collection of such "taxes" and to request other equitable and declaratory relief that is not available in other forum. Plaintiffs, for their Complaint, allege the following:

1. Internal Revenue Service (IRS) is authorized by the United States Congress to collect taxes due and owing to the United States. 26 U.S.C. 6201, *et. seq*.

2. As a creature of statute, the IRS may not collect taxes that have not been authorized by Congress. Indeed, the IRS is not entitled to create or levy taxes on its own initiative. Moreover, pursuant to the principle of judicial supremacy, the IRS is subject to the orders and findings of the federal judiciary.

3. Pursuant to 26 U.S.C. 4252, a federal communications excise tax is only applicable to telecommunications services that are either billed on the basis of both time and distance or provide unlimited local calls.

4. Congress has unambiguously stated, and five U.S. Courts of Appeals and six U.S. District Courts have unanimously held, that long distance telephone services which are not billed on both a time and distance basis or provide unlimited local calls, are not subject to the 3% tax. *American Bankers Insurance Group v. United States*, 408 F.3d 1328 (11th Cir. 2005) (reversing dismissal and awarding judgment for plaintiffs); *Office Max, Inc. v. United States*, 309 F.Supp. 2d 904 (N.D. Ohio 2004) aff'd 2005 WL 286 1031 (6th Cir. 2005) (affirming summary judgment for

plaintiffs); *National Railroad Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005) (affirming summary judgment for plaintiffs); *Fortis, Inc. v. United States*,-F.3d-, 2006 WL 1140124 (2nd Cir. April 27, 2006) (Fortis) (affirming summary judgment for plaintiffs); *Reese Bros., Inc. v. United States*,-F.3d-, 2006, WL 1228908 (3rd Cir. May 9, 2006) (Reese Bros.) (affirming summary judgment for plaintiffs); *Honeywell Intl., Inc. v. United States*, 64 Fed. Cl. 188 (Fed. Cl. 2005) (Honeywell) (awarding summary judgment for plaintiffs); *America Online, Inc. v. United States*, 64 Fed. Cl. 571 (Fed. Cl. 2005) (AOL) (awarding summary judgment for plaintiffs); *Hewlett Packard Co. v. United States*, 2005 WL 1865419 (N.D. Cal. August 5, 2005) (HP) (awarding summary judgment for plaintiffs); *PNC Bank, N.A. v. United States*, Case No. 2:04CV1570 (W.D. Pa. May 16, 2006) (awarding summary judgment for plaintiffs); and *Service Master Co. v. United States*, Case No. 05-C-3141 (N.D. Ill. May 16, 2006)(awarding summary judgment for plaintiffs).

5. These courts have all held that there is no federal communications excise tax on telecommunications services that are not billed on the basis of distance. Such a tax simply does not exist for such services. Accordingly, Plaintiffs and the Class are entitled to a return of all such "taxes" which were imposed over the last six years.

**THE PARTIES**

6. Plaintiffs are Oscar Gurrola, a private investigator, and Rosalva Gurrola, a housewife, both residing in Areleta, California. Plaintiff Oscar Gurrola purchases of telecommunication services from Cingular, and Plaintiff Rosalva Gurrola is a purchaser of telecommuniocation services from AT&T.

7. Plaintiffs and the Class are individuals and businesses resident in California, who purchased telecommunications services within the last six years, which: 1) did not provide unlimited access to a local exchange; and/or 2) were not billed on the basis of time and distance, yet were nevertheless charged and paid the purported 3% tax. Excluded from the Class are any employees of the IRS and the United States District Court for the Central District of California. Also excluded from the Class are any persons who have opted in as Class members in the action entitled *Rosenberg v. United States of America*, Case No. 05-1272-T, pending in the United States Court of Federal Claims.

8. Plaintiffs and the Class paid Federal Excise Tax on such telecommunications services and have not received a refund of such taxes.

9. Defendant IRS is the United States of America.

10. Defendant AT&T is a provider of long-distance services.

11. Defendant Cingular is a wholly-owned subsidiary of AT&T, providing wireless and long-distance services.

12. Defendant Verizon is a provider of long-distance services.

13. Defendant Verizon Wireless is a provider of wireless and long-distance services, which is majority owned and controlled by defendant Verizon.

14. Defendants AT&T, Cingular, Verizon and Verizon Wireless provide telecommunications services directly, or, in some cases, through related subsidiaries. These defendants are collectively identified as the "Telecom Defendants".

15. The Telecom Defendants calculate, bill and collect the 3% Tax despite knowing that such "tax" is not lawful, authorized or proper.

**JURISDICTION AND VENUE**

16. Jurisdiction is conferred on this Court by 28 U.S.C. § 1346; 28 U.S.C. § 1331; 28 U.S.C. § 1332 (d); 28 U.S.C. § 2201; and 5 U.S.C. § 702.

17. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1402.

18. Pursuant to the Little Tucker Act, the Federal Government has waived sovereign immunity.

**FACTS**

**A. <u>Federal Communications Excise Tax</u>**

19. The first Federal Communications Excise Tax was enacted in 1898, twenty-two years after Alexander Graham Bell's invention of the telephone. In 1965, Congress enacted the Excise Tax Reduction Act repealing most excise taxes and immediately reducing the telephone excise tax from ten percent to three percent. 79 Stat. at 145, Pub.L. No. 89-44.

20. The 1965 Act retained three categories of taxable services: "local telephone service," "toll telephone service" and "teletypewriter exchange service." As to toll telephone

service, originally defined in the 1958 legislation as "a telephone or radio telephone message or conversation for which (1) there is a toll charge, and (2) the charge is paid within the United States," Congress enacted the following definition, which is unchanged to this day:

> (A) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and
>
> (B) the charge is paid within the United States, and
>
> (C) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

79 Stat. at 146, Pub.L. No. 89-44; 26 U.S.C. § 4252(b).

21. When Congress enacted this legislation (and for many years before and after its passage), the United States had only one provider of long-distance service: AT&T. *See, e.g., Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1333 (11th Cir.2005). In the 1965 Act, Congress sought to limit the excise tax to the services as AT&T then provided them.

22. AT&T's long distance service at that time charged long distance telephone services on the basis of the elapsed time of each individual call, multiplied by a rate determined through the use of distance mileage bands or for "Wide Area Telephone Service," commonly referred to as WATS, with a periodic charge for unlimited access within a specified area outside of local service. At the time, AT&T's service, which Congress sought to define as taxable toll service, did in fact utilize rates that varied by both elapsed transmission time and distance. Congress could have amended the language in 1965 to include broad terms able to adapt to technological changes; instead, Congress specifically defined "toll telephone service" with an eye toward the tax expiring four years later.

23. By 1969, Congress was seeking to modify and narrow the definition, and to phase this excise tax out entirely by 1969. *See America Online*, 64 Fed.Cl. at 578 (citing Trans-Lux Corp., 696 F.2d at 966). It never got around to do it. Subsequently, after the break up of AT&T, the telecom industry changed the way it charged for long distance service, and ceased charging based upon both elapsed time and distance, thereby rendering the excise tax statute inapplicable to the new form of charging for long distance service.

24. Consequently, the Court of Claims held, forty years later, "if the statutory language no longer fits the infrastructure of the industry, the IRS needs to ask for congressional action to bring the statute in line with today's reality. It cannot create an ambiguity that does not exist or misinterpret the plain meaning of statutory language to bend an old law toward a new direction." *America Online*, 64 Fed.Cl. at 578 (quoting *Nat'l R.R.*, 338 F.Supp.2d at 27-28).

25. Numerous courts have agreed with the Court of Claims and have concluded that the defined scope of the tax is "clear and unambiguous." *See America Online*, 64 Fed.Cl. at 577-78 ("Section 4252(b)(1) unambiguously requires that a toll charge vary in amount according to both the distance and duration of calls."); *Honeywell Int'l, Inc. v. United States*, 64 Fed.Cl. at 199 (finding § 4252(b)(1)'s phrase "distance and elapsed transmission time" unambiguous and noting that "and" can be construed in certain contexts cumulatively, but finding the clearly conjunctive use in § 4252(b)(1) "'supported by the fact that both distance and time were . . . factors in determining charges for toll telephone service at the time of the 1965 amendments[;] in this context, it is only logical to conclude that when Congress wrote the phrase, . . . it meant for the word "and" to be read conjunctively.'") (quoting *Office Max*, 309 F.Supp.2d at 995); *Nat'l R.R. Passenger Corp.*, 338 F.Supp.2d at 27-28 (finding phrase unambiguous; "and" intended conjunctively); *Fortis, Inc.* 2004 WL 2085528, at *6 (same), *Reese Bros., Inc. v. United States*, 2004 WL 2901579, slip op. at *7 (same). "The Court must presume that Congress meant what it said when it tailored the definition of taxable 'toll telephone service' to include distance and time requirements, particularly in light of the overall goal of the Act to reduce and restrict the application of federal excise taxes." *Office Max*, 309 F.Supp.2d at 1000; *see also Honeywell Int'l, Inc.*, 64 Fed.Cl. at 199-200; *America Online*, 64 Fed.Cl. at 578. "While it may have been short-sighted of Congress to define

'toll telephone service' to specifically address the charging scheme used by AT&T in 1965, . . . '[i]t is beyond [the court's] province to rescue Congress from its drafting errors.'" *Honeywell Int'l, Inc.*, 64 Fed. Cl. at 199 (first alteration in original) (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 542, 124 S.Ct. 1023, 1034, 157 L.Ed.2d 1024 (2004) (internal marks and citation omitted)).

**B. Courts Have Unanimously Ruled Against the IRS**

26. Five United States Courts of Appeal have ruled against the IRS. *American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005); *Office Max, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004) aff'd 2005 WL 2861031 (6th Cir. 2005); *National Railroad Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005); *Fortis Inc. v. United States*, - F.3d - 2006 WL 1140124 (2nd Cir. April 27, 2006); *Reese Bros., Inc. v. United States*, -F.3d, 2006 WL1228908 (3rd Cir. May 9, 2006). None have ruled for the IRS.

27. Every other United States District Court which has considered the issue has granted summary judgment against the IRS and in favor of taxpayers. *Honeywell Int'l, Inc. v. United States*, 64 Fed. Cl. 188 (Fed. C1. 2005); *America Online, Inc v. United States*, 64 Fed. C1. 571 (Fed. C1. 2005); *Hewlett-Packard Co. v. United States*, 2005 WL 1865419 (N.D. Cal. August 5, 2005); *PNC Bank, N.A. v. United States*, Case No. 2:04CV1570 (W.D. Pa. May 16, 2006)(awarding summary judgment for plaintiffs); and *Service Master Co. v. United States*, Case No. 05-C-3141 (N.D. Ill. May 16, 2006) (awarding summary judgment for plaintiffs).

**C. IRS Refused to Follow the Decisions of the Judiciary**

28. Although the judiciary unanimously concluded that the IRS is unlawfully collecting the Excise Tax, the IRS announced that it would not follow the decisions of the courts.

29. In Notice 2005-79, the IRS announced that "government's recent loss in *American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005), rev'g 308 F. Supp. 2d 1360 (S.D. Fla. 2004), has caused some to question the continued applicability of the communications excise tax imposed by § 4251 of the Internal Revenue Code."

30. Notice 2005 -79 did not address the government's similar recent loss at the Sixth Circuit in *Office Max, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004) aff'd 2005 WL

2861031 (6th Cir. 2005), or its more recent losses in the D.C. Circuit, the Second Circuit, and the Third Circuit.

31. In *American Bankers Insurance Group*, the IRS could have sought a definitive answer from the Supreme Court but did not. The IRS stated that the "government did not seek review by the United States Supreme Court in American Bankers Insurance Group. Nevertheless, the government will continue to litigate this important issue. The government is prosecuting appeals in five different circuits." *Id.*

32. Although the judicial branch determined that the IRS is not permitted to assess the tax against such communications services, the IRS further directed that "this notice confirms that the Service will continue to assess and collect the tax under § 4251 on all taxable communications services, including communications services similar to those at issue in the cases." *Id.*

33. Even though the *American Bankers Insurance Group* decision is the law in the Eleventh Circuit, and the IRS chose not to appeal the *American Bankers Insurance Group* Court's decision, the IRS has ordered that "Collectors should continue to collect the tax, including from taxpayers within the jurisdiction of the United States Court of Appeals for the Eleventh Circuit." *Id.*

34. The IRS further demanded under penalty of law that taxpayers "are required to pay the tax to a collecting agent (the person receiving the payment on which tax is imposed), and collecting agents are required to pay over the tax to the United States Treasury and to file the required returns.

35. The IRS also refused to seek certiorari as to any of the adverse decisions of the United States Courts of Appeal, thereby frustrating any judicial solution short of a class action or injunction.

/ / /

/ / /

/ / /

**D. <u>IRS Unilaterally Reverses Its Non-Acquiescence, Agrees to Stop Collecting the FET Only After July 31, 2006, And Only Agrees To Return Only Half of Its Profits From Its Unlawful Activity</u>.**

36. As a result of the IRS' unlawful activity, a class action complaint was filed in the United States Court of Federal Claims. (*Rosenberg v. United States of America*, Case No. 05-1272-T.)

37. Recognizing that all previous Federal Excise Tax cases had been decided on summary judgment in favor of the taxpayer, the *Rosenberg* plaintiff filed a cross-motion for summary judgment and moved for class certification.

38. Briefing on plaintiff's cross-motion for summary judgment was closed by the end of May 2006.

39. Recognizing that every federal circuit had ruled against it, and that it was in imminent danger of losing a federal class action, the IRS on May 25, 2006 formally rescinded its Notice 2005-79, and conceded that its actions were unlawful. Notice 2006-50.

40. The IRS further declared that it would eventually, but not immediately, follow the orders of the judiciary. *Id.*

41. However, the IRS announced that it would continue to violate the law until July 31, 2006. The IRS unlawfully instructed to the Telecom Defendants to continue to violate the law until that time. *Id.*

42. The IRS further declared that it would limit its return of ill-gotten gains to only the last three years, rather than the last six years, as permitted by Federal Law.

43. Because telecommunications bills are stored electronically, the names of most injured parties and the amounts owed are readily ascertainable.

44. However, under the procedure announced in Notice 2006-50, none of the Defendants will take steps on their own initiative to run a simple database query to identify the injured plaintiffs, calculate their injuries and return their improperly assessed "taxes."

45. Instead, the IRS will keep the amounts paid by any plaintiff who does not become aware of the availability of a refund and/or does not affirmatively request the remittance of this tax.

46. Moreover, the IRS' proposal creates a different standard and procedure for business taxpayers than for individual taxpayers.

47. As a result, the IRS expects to keep the entirety of illegal exaction for years 2000, 2001, and 2002, while returning only a fraction of the funds collected for years 2003 through 2006.

48. Meanwhile, it expects to continue to illegally collect this tax through July 31, 2006 and then use this illegal exaction to pay for its refund claims.

## E. IRS Preemptively Denied, or in the Alternative Rendered Futile, Any Administrative Remedy

49. Pursuant to 26 U.S.C. 7422, taxpayers seeking a refund are generally required to file an administrative request or otherwise exhaust administrative remedies. If the IRS fails to grant the refund within six-months, taxpayers are entitled to file claims in court.

50. Here, this requirement has been waived by, *inter alia*, Notice 2005-79, because the IRS has announced that it will not approve any refund requests and will not even begin to process or consider refund requests for the foreseeable future. Taxpayers, including the Plaintiffs class, are entitled to rely upon the representations of the IRS. The IRS further announced warned that refund claims "will not be processed" while there are pending cases in other United States Courts of Appeals." *Id.*

51. Notice 2006-50 also constitutes a denial of all administrative requests because it purports to state that no request will even be considered within six months as required by the law and that taxpayers must wait until they file their 2006 taxes in 2007 to claim their refunds.

52. In short, the IRS has declared that it will continue to retain the taxpayers' money for longer than is permitted by the law.

53. Because Notices 2005-79 and 2006-50 establish that refund requests will not be approved within six months, any such efforts to file for refunds are futile. Therefore, the IRS has prospectively denied all requests for refund of the 3% tax.

## F. Non-Uniform Imposition of Federal Excise Tax

54. The IRS has declared that it will continue to impose excise taxes on some taxpayers at least through July 31, 2006. Notice 2005-79; Notice 2006-50.

55. However, on information and belief, there are multiple corporate taxpayers which will no longer pay the tax and/or will have received refunds of such tax. *See American Bankers*

*Insurance Group, OfficeMax, Fortis, Reese, Conrail, AOL, Honeywell, Hewlett-Packard, PNC Bank N.A. supra*. These cases are concluded and the IRS will provide refunds of taxes for years prior to 2003.

56. Here, Plaintiffs and the Class for years prior to 2003, and subsequent to 2003, paid for telecommunications services that are similar and/or identical to those services at issue in the cases cited above and for which taxpayers will be granted refunds under Notice 2006-50.

57. Plaintiffs and the Class are similarly-situated to the corporate plaintiffs in the cases decided above.

58. Although Plaintiffs and the Class purchased identical services, and are similarly-situated to the corporate plaintiffs, they paid federal excise taxes and have not received refunds of such tax on service for which the corporate plaintiffs have not paid, will not pay or will receive refunds.

59. The IRS imposed, assessed, collected, and will refund, the federal communications excise tax in a manner that is not uniform throughout the United States.

**G. <u>The Telecom Defendants</u>**

60. The Telecom Defendants are aware that Federal Courts have unanimously held that the purported 3% tax is not a lawful tax.

61. Without authorization by Congress to collect a tax, neither the IRS, nor the Telecom Defendants, have a right to exact these funds from customers.

62. Nonetheless, the Telecom Defendants, knowing that this collection is illegal, continue to collect the 3% tax without disclosing to their customers the unanimous judicial authority striking down this tax, or informing their customers of the right to obtain refunds. As a heavily regulated industry, telecommunications companies are sometimes tempted to please regulators at the expense of customers. The practice of collecting an unlawful tax without disclosure to customers of the unlawful nature of this tax is one of the unfair business practices alleged in this complaint.

63. The Telecom Defendants, knowing that the 3% Tax is not a tax, also continue to falsely represent on their bills to customers that this amount is in fact a "tax", when it is not.

64. The Telecom Defendants collect this money from customers and remit it on a periodic basis to the IRS. Once the 3% tax is remitted to the IRS, there is no adequate remedy at law which would make Plaintiffs and the Class whole.

65. Thus, injunctive relief is necessary to halt this unlawful collection of money from customers, and to require that these sums be paid into court until final adjudication of the merits of these claims.

**CLASS ALLEGATIONS**

66. Plaintiffs brings this class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of a class consisting of all California residents who, within the last six years, paid federal communications excise tax on telecommunications services which: 1) did not provide unlimited access to a local exchange; and 2) were not billed on the basis of time and distance and who have not requested a refund of such tax. Excluded from the class are defendants' legal representatives; employees of the IRS; or the United States District Court for the Southern District of California and any judicial officer assigned to this case and his or her immediate family. Also excluded from the class are persons who have opted-in as class members in the action entitled *Rosenberg v. United States* pending in the United States Court of Federal Claims, Case No. 05-1272T. Also excluded from the class are persons who have requested or received a full refund of the federal communications excise tax.

67. Plaintiffs, Oscar Gurrola and Rosalva Gurrola, are members of the Class they seek to represent.

68. The Class consists of millions of individuals and business entities and therefore are so numerous that joinder is impracticable.

69. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all of the Class sustained damages as a result of Defendant's collection of 3% tax in violation of the law and in violation of findings and orders of the judiciary.

70. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether the telecommunications services purchased by Plaintiffs and the Class provided unlimited access to a local telephone exchange or were billed on the basis of both time and distance;

b. Whether the IRS has, in violation of the Fifth Amendment to the United States Constitution, taken possession of private property belonging to Plaintiffs and the Class and used it for public purposes without providing any compensation to Plaintiffss;

c. Whether the Defendants classification of services and taxpayers is so arbitrary and capricious such that its collection of the 3% Tax from subscribers did not constitute the exertion of taxation but a confiscation of property;

d. Whether the IRS's actions were so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the conclusion that such actions were not the exertion of taxation but a confiscation of property;

e. Whether, in violation of Article I, to the United States Constitution, the IRS has collected and continues to collect the 3% Tax in a manner that is not uniform through the United States;

f. Whether the IRS has received money, directly or in effect, from an illegal action;

g. Whether the Defendants have been unjustly enriched at the Plaintiffs' and the Class' expense;

h. Whether the Telecom Defendants have committed unfair business practices in failing to disclose the unlawful of the tax, continuing to represent the tax as a lawful tax on customers' bills, continuing to collect the "tax" without seeking a judicial determination of the lawfulness of this tax, and assisting the IRS in its unlawful conduct.

i. Whether Defendants should be enjoined from continuing its unlawful conduct;

j. Whether Defendants are liable to the Plaintiffs and the Class in this action, as alleged in the Complaint; and

k. Whether an Order should be entered declaring the assessment and collection of the tax as being unlawful.

71. All common questions can be resolved through the same factual occurrences as specifically and/or generally alleged herein.

72. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.

73. Plaintiffs have no claims antagonistic to those of the Class.

74. Plaintiffs have retained competent and experienced counsel in complex class actions and telecommunications litigation. Counsel is committed to the vigorous prosecution of this action.

75. A Class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

76. The expense and burden of litigation would substantially impair the ability of the Class Members to pursue individual cases in order to initiate their rights.

77. In the absence of a class action, the Defendants will retain the benefits of their wrongdoing.

78. Class certification pursuant to Rule 23(b)(3) is appropriate because the common issues of fact and law alleged herein are common to the Class and predominate over any questions affecting only individual members, thereby rendering the class action superior to all other available methods for the fair and efficient adjudication of this controversy.

79. Class certification is also appropriate pursuant to Rule 23(b)(2) because, as set forth in the Complaint, Defendant has acted and/or refused to act on grounds generally applicable to the Plaintiffs and the Class; thereby warranting appropriate injunctive and/or declaratory relief.

**UNIQUE CIRCUMSTANCES REQUIRING CLASS CERTIFICATION**

80. It is well-established that it is the province of the courts to "state what the law is," and that all persons are subject to the law as determined by the courts.

81. Citizens are required to obey the decisions of the judiciary, including the decisions of the lower courts.

82. However, under the non-acquiescence doctrine, the IRS has claimed, and continues to claim, that it is bound by only rulings of the United States Supreme Court, and it is obligated to follow lower court tax rulings only with respect to the party involved in the particular suit, and can disregard these rulings as precedent.

83. Under the IRS' assertion of its alleged non-acquiescence doctrine, and pursuant to Notice 2005-79, the IRS has ignored the decisions of the courts, has continued to unlawfully collect the excise tax, and can force each taxpayer to individually litigate his right to a refund.

84. Class certification is the most efficient means to prevent the IRS and the Telecom Defendants from continuing to unlawfully collect this tax and requiring each individual taxpayer to file a separate lawsuit, waste taxpayer resources, and risk inconsistent verdicts.

85. Without class certification, the IRS can require piecemeal litigation for past collected taxes and can continue to unlawfully collect these taxes into the future.

**COUNT I**
**(Against the United States)**

86. The Plaintiffs and the Class hereby incorporate their allegations in the above paragraphs as if fully rewritten.

87. In violation of the Fifth Amendment to the United States Constitution, the United States government has taken and continues to threaten to take possession of private property belonging to Plaintiffs and the Class without providing compensation to Plaintiffs or the Class.

88. The IRS' classification of services and taxpayers is arbitrary and capricious such that its imposition and collection of the purported 3% Tax from Plaintiffs and the Class did not constitute the exertion of taxation but a confiscation of property.

89. The IRS' actions were so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the conclusion that such actions were not the exertion of taxation but a confiscation of property.

90. At all times, the United States was aware that the property in question belonged to Plaintiffs and the Class.

**COUNT II**
**(Against the United States)**

91. The Plaintiffs and the Class hereby incorporate their allegations in the above paragraphs as if fully rewritten.

92. Article I, § 8 of the U.S. Constitution delegates to Congress the power "to lay and collect Taxes, Duties, Imposts and Excises, . . . but all Duties, Imposts and Excises shall be uniform through the United States."

93. In violation of Article I, to the United States Constitution, the IRS has collected and continues to collect the 3% Tax from Plaintiffs and the Class in a manner that is not uniform through the United States.

94. Plaintiffs and the Class have suffered damages from the non-uniform collection of the 3% Tax in an amount to be proven at trial.

**COUNT III**
**(Against the United States)**

95. The Plaintiffs and the Class hereby incorporate their allegations in the above paragraphs as if fully rewritten.

96. An illegal exaction claim is stated when the United States receives money, directly or in effect, from illegal action, or as federal courts have explained, whenever the United States has the plaintiffs' money.

97. Under applicable laws and regulations, property belonging to Plaintiffs and the Class were unlawfully exacted because the IRS acted, *inter alia*, in violation of 26 U.S.C. 4252, in violation of the orders of the judiciary, and in violation of the Constitutional provisions cited herein.

98. The IRS has an implied contract with Plaintiffs and the Class to follow the orders of the judiciary and not collect excise taxes in violation of the orders of the judicial branch of government.

**COUNT IV**
**(Against the United States)**

99. The Plaintiffs and the Class hereby incorporate their allegations in the above paragraphs as if fully rewritten.

100. By reason of the foregoing, Plaintiffs and the Class have overpaid their Federal excise tax for all relevant time periods.

101. Plaintiffs and the Class have paid all such tax in full.

102. Defendant has refused to refund the Federal excise tax as required by law.

103. In the alternative, Defendant has waived the requirements of a prior administrative request by rendering futile all possible current requests for the refund the overpayments.

104. Plaintiffs and the Class request refunds for the 3% Tax improperly paid for the last six years. These payments were made at the time of purchase of the telecommunications service, at the location of the vendor, and were remitted to Defendant in Washington, D.C. The name and address of the Plaintiffs are set forth above. The names and addresses of the class members will be determined through discovery. No refund claims have been filed for the reasons explained in this Complaint.

**COUNT V**
**(Against the United States)**

105 Plaintiffs and the Class hereby incorporate their allegations in the above paragraphs as if fully rewritten.

106. The "tax" assessed and collected by the IRS is not a tax authorized by the law.

107. Five United States Courts of Appeal have ruled against the IRS and in numerous other cases, United States District Courts have ruled against the IRS and in favor of taxpayers.

108. It is clear that under no circumstances could the IRS ultimately prevail.

109. Equity requires that an injunction issue precluding the IRS from collecting the illegal tax because otherwise, Plaintiffs and the Class will suffer irreparable injury.

**COUNT VI**
**(Against All Defendants)**

110. Plaintiffs and the Class hereby incorporate the allegations in the above-paragraphs as if fully rewritten.

111. Plaintiffs and the Class have conferred benefits on defendants, which defendants have unjustly retained without privilege to do so, and which in right, justice and equity, belong to Plaintiffs and the Class, specifically, Plaintiffs and the Class have paid in excess of 20 billion dollars to Defendants through the 3% Tax. The Defendants have benefitted from the collection of these taxes by retaining the use of this money for certain periods of time, or, in the case of Defendant IRS, keeping the money entirely.

112. Defendants' unjust enrichment has occurred at the expense of, and detriment to, Plaintiffs and the Class.

**COUNT VII**
**(Against All Defendants)**

113. The Plaintiffs and the Class hereby incorporate the allegations in the above-paragraphs as if fully rewritten.

114. Defendants wrongfully, purposefully, intentionally and without privilege or justification violated Federal Law and acted in an otherwise tortious manner.

115. As a direct and proximate result of Defendants' unlawful and tortious conduct, Defendants acquired benefits and Plaintiffs and the Class suffered damages in an amount to be determined at trial.

116. Defendants have not disgorged their ill-gotten gains.

117. Plaintiffs and the Class are entitled to restitution of the 3% Tax.

118. Defendants acted maliciously, willfully, and with a conscious disregard for the rights of Plaintiffs and the Class, thereby entitling Plaintiffs and the Class to punitive and/or exemplary damages in an amount to be determined at trial.

**COUNT VIII**
**(Against Telecom Defendants)**

119. The Plaintiffs and the Class hereby incorporate their allegations in the above paragraph as if fully rewritten.

120. Pursuant to 26 U.S.C. 6415 (c), taxpayers are entitled to a refund of excise tax and from "any person required under Section 4251, 4261, or 4271" to collect a tax. The agent must refund to the taxpayer, any "over-collection of such tax".

121. The Telecom Defendants have "over-collected" the 3% Tax from Plaintiffs and the Class. This complaint constitutes "proper application" for the refund of such tax and accordingly, the Plaintiffs and the Class are entitled to a full refund of the 3% Tax from the Telecom Defendants.

**COUNT IX**
**(Against Telecom Defendants)**

122. The Plaintiffs and the Class hereby incorporate their allegations in the above paragraphs as if fully rewritten.

123. The Telecom Defendants have collected the 3% Tax while knowing that the collection of this 3% Tax was in violation of the law.

124. Defendants are in a class of entities meant to be regulated by the requirements of California Business & Professions Code § 17200, *et seq*. Plaintiffs are in the class of California residents meant to be protected by the provisions of California Business & Professions Code § 17200, *et seq*.

125. The Telecom Defendants knowingly violated California Business & Professions Code § 17200, *et seq.* by intentionally, as a deceptive business practice, collecting the 3% Tax from Plaintiffs and the Class, knowing that this collection is illegal and by continuing to falsely represent the Plaintiffs and the Class on their bills that the 3% Tax is a tax, knowing that it is not a tax.

126. The conduct of the Telecom Defendants as set forth above and in unjustly enriching themselves at the expense of Plaintiffs, and converting the property of the Plaintiffs and the Class, and in violating the law, constitutes a violation of Business & Professions Code § 17200.

**COUNT X**
**(Against Telecom Defendants)**

127. The Plaintiffs and the Class hereby incorporate their allegations in the above paragraphs as if fully rewritten.

128. The Telecom Defendants collection of the tax, including taxes which have not been paid to the Telecom Defendants to the IRS, has deprived Plaintiffs and the Class of their rightful property interest in the monies collected and constitutes conversion of the property of Plaintiffs and the Class.

/ / /

**COUNT XI**
**(Against All Defendants)**

129. The Plaintiffs and the Class hereby incorporate their allegations in the above paragraphs as if fully rewritten.

130. Section 47 U.S.C. 201 (b) requires that "all charges, practices, classifications, and regulations, for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification or regulation that is unjust or unreasonable is declared to be unlawful".

131. The Federal Truth-In-Billing Regulations require that "charges contained on telephone bills must be accompanied by a brief, clear, non-misleading, plain language description of the service or services rendered. The description must be sufficiently clear in presentation and specific enough in content so that customers can accurately assess that the services for which they are billed correspond to those that they have requested and received and that the costs assessed for those services conform to their understanding of the price charged. 47 C.F.R. 64.2401 (b).

132. Federal law explicitly prohibits "cramming" or the assessment of unauthorized or ambiguous charges on a customer's bill.

133. The Defendants' practices as described herein constitute unauthorized cramming, violate the FCC's Truth-In-Billing Regulations and constitute violations of 47 U.S.C. 201.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class pray for judgment against defendants as follows:

a. An Order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. An Order temporarily, preliminary and permanently enjoining and restraining the IRS from continuing to assess and collect a 3% Tax on telecommunications services that are not billed on the basis of both time and distance or provide unlimited local calls and an Order requiring payment into Court of all such unlawfully collected taxes pending final determination of this action;

c. Ordering the IRS to refund to Plaintiffs and the Class all taxes erroneously or illegally assessed and collected as an alleged tax on toll telephone services charged on a basis other than by time and distance;

d. An Order permanently enjoining and restraining the IRS from assessing and collecting the unlawful tax;

e An Order temporarily, preliminarily and permanently enjoining and restraining the Telecom Defendants from collecting unlawful Federal excise taxes that are not billed on the basis of both time and distance or provide unlimited local calls; further enjoining the Telecom Defendants from remitting any and all collections of such tax to the IRS, and ordering payment into Court of all such unlawfully collected taxes pending final determination of this action;

f. An Order requiring the Telecom Defendants to pay to Plaintiffs and the Class, the amount of the unlawful tax collected, but not yet remitted, to the IRS;

g. Awarding Plaintiffs and the Class monetary damages in an amount to be determined at trial;

h. Awarding punitive and/or exemplary damages in an amount to be determined at trial;

i. Pre-judgment interest to the fullest extent allowed by law;

j. The costs of bringing this action, including the payment of reasonable attorneys fees; and

k. Such other or further relief as this Court deems proper.

Dated: June 1, 2006

By: ______________________________

R. Gaylord Smith (CA Bar #72726)
Lewis Brisbois Bisgaard & Smith
550 West C Street, 8th Floor
San Diego, CA 92101
Phone: (619) 233-1006
Fax: (619) 233-8627
E-mail: smith@lbbslaw.com

Mark Griffin (OH Bar #0064141)
Law Offices of Mark Griffin
175 Honeybelle Oval
Orange, Ohio 44022
Phone: (216) 346-7376
Fax: (216) 861-6679
E-mail: telecomlaw@hotmail.com

Randy J. Hart (OH Bar #0046793)
200 Public Square
Suite 3300
Cleveland, Ohio 44113
Phone: (216) 978-9150
Fax: (216) 241-2824
E-mail: csuosu@msn.com

Richard F. Scruggs (MS Bar # 6582)
Sidney A. Backstrom (MS Bar # 99890)
Scruggs Law Firm, P.A.
P.O. Box 1136
120A Courthouse Square
Oxford, MS 38655
Phone: (662) 281 1212
Fax: (662) 281 1312
Email: dickscruggs@scruggsfirm.com
Email: sbackstrom@scruggsfirm.com

R. Eric Kennedy, Esq. (OH Bar #0006174)
Daniel P. Goetz, Esq. (OH Bar #0065549)
Weisman, Kennedy & Berris Co., L.P.A
1600 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115
Phone: (216) 781-1111
Fax: (216) 781-6747
Email: ekennedy@weismanlaw.com
Email: dgoetz@weismanlaw.com

**DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury on all claims in the complaint.

Dated: June 1, 2006

By: ______________________________

R. Gaylord Smith (CA Bar #72726)
Lewis Brisbois Bisgaard & Smith
550 West C Street, 8th Floor
San Diego, CA 92101
Phone: (619) 233-1006
Fax: (619) 233-8627
E-mail: smith@lbbslaw.com

Richard F. Scruggs (MS Bar # 6582)
Sidney A. Backstrom (MS Bar # 99890)
Scruggs Law Firm, P.A.
P.O. Box 1136
120A Courthouse Square
Oxford, MS 38655
Phone: (662) 281 1212
Fax: (662) 281 1312

Email: dickscruggs@scruggsfirm.com
Email: sbackstrom@scruggsfirm.com

Mark Griffin (OH Bar #0064141)
Law Offices of Mark Griffin
175 Honeybelle Oval
Orange, Ohio 44022
Phone: (216) 346-7376
Fax: (216) 861-6679
E-mail: telecomlaw@hotmail.com

Randy J. Hart (OH Bar #0046793)
200 Public Square
Suite 3300
Cleveland, Ohio 44113
Phone: (216) 978-9150
Fax: (216) 241-2824
E-mail: csuosu@msn.com

R. Eric Kennedy, Esq. (OH Bar #0006174)
Daniel P. Goetz, Esq. (OH Bar #0065549)
Weisman, Kennedy & Berris Co., L.P.A
1600 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115
Phone: (216) 781-1111
Fax: (216) 781-6747
Email: ekennedy@weismanlaw.com
Email: dgoetz@weismanlaw.com